**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA, LTD., et al., <br><br> Plaintiffs, <br><br> v. <br><br> FEDERAL DEPOSIT INSURANCE CORPORATION, et al., <br><br> Defendants. |

Civil Action No. 14-953-GK

**PLAINTIFFS' SECOND NOTICE OF SUPPLEMENTAL SUPPORT**

Plaintiffs respectfully submit this notice to alert the Court to the report on the "Federal Deposit Insurance Corporation's Involvement in 'Operation Choke Point' " that the U.S. House of Representatives' Committee on Oversight and Government Reform issued on December 8, 2014.[1] The Committee has uncovered substantial evidence that Defendants intentionally injured Plaintiffs and other responsible, law-abiding payday lenders both by coercing banks to terminate their relationships with payday lenders and by depriving them of their reputational interests without due process of law.[2] The Report also reveals that Defendants have acted in a manner that is arbitrary and capricious and contrary to law. The Report thus provides additional evidence

---

[1] STAFF OF H. COMM. ON OVERSIGHT AND GOV'T REFORM, 113TH CONG., FEDERAL DEPOSIT INSURANCE CORPORATION'S INVOLVEMENT IN "OPERATION CHOKE POINT" (Comm. Print Dec. 8, 2014) [hereinafter "REP."], *available at* www.oversight.house.gov/wp-content/uploads/2014/12/Staff-Report-FDIC-and-Operation-Choke-Point-12-8-2014.pdf. A copy of the report is filed herewith as Ex. A.

[2] The evidence upon which the report was based was released in an appendix to the report that is attached hereto as Ex. B and may also be found at www.oversight.house.gov/wp-content/uploads/2014/12/Appendix-1.pdf.

supporting both Plaintiffs' standing arguments and their arguments on the merits, establishes that a number of the assertions that Defendant FDIC has made to this Court are inaccurate, and leaves no doubt that Plaintiffs' motion for jurisdictional discovery should be granted.

While Defendant FDIC has maintained before this Court that payday lenders were not the "object" of its actions, FDIC Reply Br. at 4, Doc. 46, the Report discloses evidence demonstrating that Defendant's actions were directed squarely at Plaintiffs and were intended to cut off their access to banking services. The evidence makes clear that Defendant FDIC was preoccupied with how "large nationwide banks are facilitating payday lending"[3] and that its actions culminated from its officials' search for actions to "take against banks that facilitate payday lending,"[4] for "a way to stop our banks from facilitating payday lending,"[5] and for mechanisms for leveraging the FDIC's statutory authority over banks to "get at payday lending."[6] Defendant FDIC ultimately "attempted to use FDIC's supervisory authority to prohibit the practice" of payday lending. REP. at 8. Defendants decided to coerce, to threaten, *id.* at 13, and to "effectively order[ ] banks to terminate all relationships with the industry," *id.* at 1. And Defendants' regulatory campaign against payday lenders and other disfavored industries has had its intended result: the Report finds the evidence "incontrovertible" that "[a]s a consequence of

---

[3] Email from Surge Sen, Section Chief, Div. of Consumer & Depositor Prot., FDIC, to Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, Legal Div., FDIC (Mar. 8, 2013, 9:11 AM), FDICHOGR00006055.

[4] Email from Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC, to two Counsel in Legal Div., FDIC (Mar. 8, 2013, 9:32 AM), FDICHOGR00006907, *quoted in* REP. at 9.

[5] Email from Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC to James L. Anderson, Ass't Gen. Counsel, Consumer Section, Consumer, Enforcement/Employment, Insurance, and Legislation Branch, FDIC (Feb. 22, 2013, 11:13 AM), FDICHOGR00006907, *quoted in* REP. at 8.

[6] Email from Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC, to Counsel in Legal Div., FDIC (Mar. 8, 2013 9:32 AM), FDICHOGR00006907, *quoted in* REP. at 9.

Operation Choke Point, banks are indiscriminately terminating relationships with legal and legitimate merchants across a variety of business lines." *Id.* at 2.

Evidence uncovered by the Committee likewise refutes Defendant FDIC's claim in this Court that any banks that terminated relationships with payday lenders as a result of the FDIC's blacklist of high-risk industries did not act in accordance with the FDIC's intentions, but rather based on a "misperception that the listed examples of merchant categories were prohibited or discouraged." FDIC Br. in Support of Defs.' MTD at 9, Doc. 17-1. The Report makes clear that there was no "misperception," finding that high-level agency officials, including even Chairman Gruenberg, intended for the blacklist to be understood and applied precisely as it has been understood and applied: as a list of industries, including especially payday lending, of which the FDIC disapproves and with which banks are to cease doing business. This supposedly informal guidance was subjected to "months-long internal deliberations and multi-tiered review," REP. at 4, a review that involved then-acting Chairman Gruenberg, *id.* at 5, and that entailed extensive strategizing by FDIC officials about how best to publicize the list and make sure that the banks "got the message" about payday lenders.[7] And although the FDIC claims in this Court that its guidance left banks free to "make their own decisions," FDIC Reply Br. at 6, and to pass "their own judgments about which third-party relationships may give rise to reputation risks," *id.* at 14, the FDIC in fact "stripped" from the final version of the blacklist "language advising banks to manage each relationship 'according to its own facts and circumstances,' as well as the language recognizing that merchants in the named categories may be legitimate." REP. at 6-7. Indeed, the

---

[7] The report details how this official "attempted the extremely unusual step of including the list on the FIL's cover page, in an effort to 'grab some attention.' " REP. at 5, quoting Email from a Senior Examination Specialist, Div. of Depositor and Consumer Prot., FDIC, to the Chief, Cyber-Fraud and Financial Crimes Section, Div. of Risk Management Supervision, FDIC (Nov. 15, 2011, 9:46 AM), FDICHOGR00002173. The official was concerned about "putting anything later in the document as the reader may not get the message." *Id*. at 5-6.

FDIC has subsequently mandated that its blacklist be incorporated into several Memoranda of Understanding and Consent Orders as a list of "prohibited businesses." REP. at 7. Notably, in acting against payday lenders on an industry-wide basis, the FDIC appears to have disregarded legal counsel's concerns that banks could not properly be sanctioned for facilitating payday lenders absent "fraud or other misconduct by the payday lenders."[8]

While Defendant FDIC claims that it acted solely "to promote and safeguard [bank's] safety and soundness," FDIC Reply Br. at 4, the Report makes clear that Defendants' actions were motivated instead by the personal biases and prejudices of agency officials against the payday lending industry. In particular, the Committee concluded from the evidence "that senior policymakers in FDIC headquarters oppose payday lending on personal grounds," REP. at 8, and that FDIC personnel regard payday lending as "a particularly ugly practice"[9] and "unsavory."[10] Indeed, one senior FDIC official admitted that he "literally can not stand pay day lending" and "sincerely" and "passionate[ly]" believes that payday lenders "are abusive, fundamentally wrong, hurt people, and do not deserve to be in any way associated with banking."[11] The Report concludes that FDIC's regulatory campaign against payday lenders reflects not legitimate concerns for the safety and soundness of financial institutions, but rather "emotional intensity" and "personal moral judgments," REP. at 15, and has thus been "entirely outside of FDIC's

---

[8] REP. at 9, quoting Email from Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC, to James L. Anderson, Ass't Gen. Counsel, Consumer Section, Consumer, Enforcement/Employment, Insurance, & Legislation Branch, FDIC (Feb. 22, 2013 11:13 AM), FDICHOGR00006907.

[9] Email from a Counsel, Legal Div., FDIC, to Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC (Mar. 9, 2013, 2:53 PM), FDICHOGR00005178.

[10] Email from a Counsel, Legal Div., FDIC, to Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC (Aug. 28, 2013, 9:32 AM), FDICHOGR00007424.

[11] Email from Thomas J. Dujenski, Regional Dir., Atlanta Region, FDIC, to Mark Pearce, Dir., Div. of Consumer Prot., FDIC (Nov. 26, 2012, 4:47 PM), FDICHOGR00006585, *quoted in* REP. at 14.

mandate," *id.* at 10.[12] The Report vividly supports Plaintiffs' contentions, therefore, that Defendants' actions have been arbitrary and capricious and contrary to law.

Finally, the Report also demonstrates that Defendants have deliberately sought to injure Plaintiffs' reputational interests without affording them the due process required by the Constitution:

> Personal animus towards payday lending is apparent throughout documents produced to the Committee. In one egregious example, the DCP's Deputy Director for Policy & Research insisted that Chairman Gruenberg's letters to Congress and talking points always mention pornography when discussing payday lending, in an effort to convey a "good picture regarding the unsavory nature of the businesses at issue."[13]

This FDIC official insisted on repeatedly associating payday lending with pornography—despite legal counsel's concern that the agency would seem to be passing moral judgments on the industry—because he felt "strongly that including payday lenders in the same circle as pornographers and on-line gambling businesses will ultimately help with the messaging on this issue."[14]

The Report, especially when read in conjunction with the February 15, 2013, letter of FDIC Regional Director M. Anthony Lowe to a depository institution subject to Defendant FDIC's supervisory authority (to which Plaintiffs drew the Court's attention in their notice of

---

[12] An FDIC spokesman has acknowledged that "[s]ome of the pushback from the Hill is that it is not up to the FDIC [to] decide what is moral and immoral, but rather what type of lending is legal." Email from David Barr, Ass't Dir., Office of Public Affairs, FDIC, to Mark Pearce, Dir., Div. of Depositor and Consumer Prot., FDIC (Sept. 13, 2013, 10:38 AM), FDICHOGR00005240.

[13] REP. at 10, quoting Email from a Counsel, Legal Div., FDIC, to Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC (Aug. 28, 2013, 9:32 AM), FDICHOGR00007424.

[14] Rep. at 11, quoting Email from a Counsel, Legal Div., FDIC, to Marguerite Sagatelian, Senior Counsel, Consumer Enforcement Unit, FDIC (Aug. 28, 2013 9:32 AM), FDICHOGR00007424.

supplemental support of October 21, 2014,) amply establishes that jurisdictional discovery in this case is warranted. Along with the accompanying appendix of FDIC documents, the Report provides a glimpse behind the curtain of secrecy that the agencies have drawn over Operation Choke Point and permits the Court to see some of the ways in which the Defendants have actively and deliberately abused their statutory authority by depriving Plaintiffs of their banking relationships, of their good names, and of their constitutional rights. The Court should not permit Defendants to thwart judicial review by concealing the internal agency materials that document their unlawful participation in "Operation Choke Point."

Date:   December 12, 2014

Respectfully submitted,

s/ Charles J. Cooper
Charles J. Cooper (Bar No. 248070)
David H. Thompson (Bar No. 450503)
Howard C. Nielson, Jr. (Bar No. 473018)
Harold S. Reeves (Bar No. 459022)
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
ccooper@cooperkirk.com