UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ADVANCE AMERICA, CASH
ADVANCE CENTERS, INC.,
et al.
      Plaintiffs,

v.                               Civil Action No. 14-953 GK)

FEDERAL DEPOSIT INSURANCE
CORPORATION, et al.

      Defendants.

## MEMORANDUM OPINION

Two motions are before this Court. The first motion is Federal Defendants' Motion to Dismiss Check Into Cash, Inc. ("Check Into Cash"), NCP Finance Limited Partnership and NCP Finance Ohio, LLC ("NCP Finance"), PH Financial Services, LLC ("PH Financial"), Northstate Check Exchange, and Richard Naumann ("collectively New Plaintiffs") for lack of subject matter jurisdiction or for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. [Dkt. No. 152]. The second motion is Federal Defendants' Motion for Summary Judgment against Advance America. [Dkt. No. 101-1].

After consideration of the Motions, all dispositive briefing, and the entire record herein, and for the reasons stated below, the Federal Defendants' Motions are denied as to all Plaintiffs except PH Financial.

### I.    BACKGROUND

On June 5, 2014, CFSA and Advance America (collectively "Original Plaintiffs") commenced this lawsuit. Complaint [Dkt. No. 1]. The Original Plaintiffs alleged that the Federal Defendants—the Federal Deposit Insurance Corporation ("the FDIC"), the Board of Governors of

the Federal Reserve System, and both the Office of the Comptroller of the Currency and Thomas J. Curry, in his official capacity as the Comptroller of the Currency ("the OCC")—participated in "Operation Choke Point," a campaign allegedly initiated by the United States Department of Justice to force banks to terminate their business relationships with payday lenders. See generally First Amended Complaint ("FAC") [Dkt. No. 12].

The Original Plaintiffs brought two distinct categories of claims against the Federal Defendants. First, they alleged that certain actions taken by the Federal Defendants as part of Operation Chokepoint violated the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*. FAC ¶¶ 80-108, 116-44, 152-77. Second, they alleged that Operation Chokepoint violated the due process rights of CFSA's members, one of which is Advance America. FAC ¶¶ 109-115, 145-51, 178-84.

On September 25, 2015, in response to Motions to Dismiss brought by the Federal Defendants, the Court dismissed all of the Original Plaintiffs' APA claims. CFSA v. FDIC, 132 F. Supp. 3d 98, 105-107 (D.D.C. 2015) ("CFSA I"). However, the Court concluded that the Original Plaintiffs had stated a claim for denial of due process and had standing to pursue that claim. Subsequently, the Federal Defendants brought a new Motion to Dismiss, arguing that CFSA lacked standing to pursue the remaining due process claims on behalf of its members. [Dkt. No. 73]. On December 19, 2016, the Court granted the Federal Defendants' Motion, thereby dismissing CFSA as a party to this lawsuit. CFSA v. FDIC, No. 14 Civ. 953, 2016 WL 7376847 (D.D.C. Dec. 19, 2016) ("CFSA II"). That left Advance America as the only party to this lawsuit.

Prior to the entry of the decision in CFSA II, Advance America filed a Motion for Preliminary Injunction. [Dkt. No. 87]. While the Motion for Preliminary Injunction was pending, the New Plaintiffs were added to the Complaint. See Order Granting Plaintiffs' Motion for Leave to File Third Amended Complaint [Dkt. No. 120]; also Third Amended Complaint ("TAC") [Dkt. No. 124]. These New Plaintiffs filed their own Motion for a Preliminary Injunction, advancing virtually the same arguments as Advance America. [Dkt. No. 107]. The Court denied both Motions for Preliminary Injunction, based in large part on the Court's conclusion that the Plaintiffs are unlikely to succeed on the merits because they are likely not to be able to show they have been or will be deprived of their right to hold a bank account or that they have been or will be broadly precluded from the payday lending industry. See Un-Sealed Memorandum Opinion at 8-13 [Dkt. No. 134] ("CFSA III").

As already noted, two new Motions are now before the Court. First, is the Government's Motion to Dismiss, arguing that the New Plaintiffs should be dismissed for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted or, in the alternative, for summary judgment. Corrected Motion to Dismiss [Dkt. No. 152].[1] Second, is the Government's Motion for Summary Judgment against Advanced America, arguing that the Court should award summary judgment to the Federal Defendants on Advance America's remaining due process claims. Motion for Summary Judgment on Counts IV, VIII, and XII of the Second Amended Complaint ("Motion for Summary Judgment") [Dkt. No. 101-1].

---

[1] The Federal Defendants filed a Motion to Dismiss, [Dkt. No. 138], which was then superseded by the Corrected Motion to Dismiss.

The New Plaintiffs filed an Opposition to the Corrected Motion to Dismiss ("Opposition to the Corrected Motion"), [Dkt. No. 153], and the Federal Defendants filed a Reply to the Corrected Motion to Dismiss ("Reply to the Corrected Motion to Dismiss"), [Dkt. No. 156]. Similarly, Advance America filed an Opposition to the Motion for Summary Judgment, [Dkt. No. 112], and the Federal Defendants filed a Reply to the Motion for Summary Judgment, [Dkt. No. 116]. Accordingly, both Motions are now ripe.

## II. ANALYSIS

### A. Standing Arguments:

#### 1. Standard of Review

As courts of limited jurisdiction, federal courts possess only those powers specifically granted to them by Congress or directly by the United States Constitution. Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377 (1994). The plaintiff bears the burden of establishing by a preponderance of the evidence that the Court has subject matter jurisdiction to hear the case. See Shuler v. United States, 531 F.3d 930, 932 (D.C. Cir. 2008). In deciding whether to grant a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), the court must "accept all of the factual allegations in [the] complaint as true." Jerome Stevens Pharmaceuticals, Inc. v. Food & Drug Admin., 402 F.3d 1249, 1253-54 (D.C. Cir. 2005) (quoting United States v. Gaubert, 499 U.S. 315, 327 (1991)). The Court may also consider matters outside the pleadings, and may rest its decision on its own resolution of disputed facts. See Herbert v. Nat'l Acad. of Sci., 974 F.2d 192, 197 (D.C. Cir. 1992).

"[T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact ... which is (a) concrete and particularized, and (b)

actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of ... Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992) (internal quotation marks, citations, and footnote omitted).

### 2. New Plaintiffs: Lack of Standing & Ripeness

The Federal Defendants argue that the New Plaintiffs lack standing because "[their] conclusory allegations regarding the potential for future loss of access to the banking system, and a future preclusion from the payday lending industry, do not set forth a 'real and immediate' threat of injury." Corrected Motion to Dismiss at 22. These are quite similar to the arguments that the Federal Defendants raised in their Motions to Dismiss the claims made by Advance America. See [Dkt. Nos. 16, 17, 18] (arguing that Advance America's allegations of harm were unduly speculative).

Just as the Court previously rejected those arguments with respect to Advance America, the Court now rejects them with respect to the New Plaintiffs. The New Plaintiffs allege that they have previously lost bank accounts as a result of the actions of Federal Defendants, and that they will continue to do so if those actions continue unabated. TAC ¶¶ 128, 135, 142. Those allegations are sufficient to demonstrate the injury in fact, causation, and redressability necessary to establish New Plaintiffs' standing. See CFSA I, 132 F. Supp. 3d at 109-15.

Additionally, the Federal Defendants argue that this case is not ripe because "there are too many 'ifs' in the [New Plaintiffs'] asserted causal chain," because it "require[s] the inference that Defendants will cause banks to terminate New Plaintiffs' accounts in the future, that New Plaintiffs will be unable to replace those accounts, that other aspects of their business will be insufficient to

keep them afloat, and that they will go out of business as a result." Corrected Motion to Dismiss at 23. In essence, the Federal Defendants attempt to recycle their argument regarding the causation prong of standing as a ripeness argument.

Just as the Court rejects Federal Defendants' arguments regarding causation in the standing analysis, the Court rejects that argument with respect to ripeness. The Court considers New Plaintiffs' allegations—that banks regulated by Federal Defendants are terminating relationships with payday lenders as a result of Operation Chokepoint—sufficiently plausible and concrete. Therefore, the New Plaintiffs' claims are suitable for judicial review and are ripe.

### 3. Standing of Advance America

The Federal Defendants also contend that Advance America lacks standing because only one remedy is available to Advance America—a name-clearing hearing—and Advance America does not seek that remedy in its Second Amended Complaint. Mot. for Summ. Judgment at 3-5. However, the Plaintiffs have filed a Third Amended Complaint which requests "such other and further relief as this Court deems just and proper," TAC ¶ 146.b, which encompasses Plaintiffs' request for a name-clearing hearing. Opposition to Motion for Summary Judgment at 10. If granted, such a hearing could result in the restoration of banking relationships or a cessation of continued terminations by bringing Plaintiffs out from under a cloud of regulatory scrutiny. That is sufficient to satisfy the standing requirement. See CFSA I, 132 F. Supp. 3d at 115.[2]

---

[2] Moreover, the Court has previously indicated its willingness to consider remedies other than a mere name-clearing hearing. See CFSA I, 132 F. Supp. 3d at 115. The cases cited by Federal Defendants hold only that a name-clearing hearing is the sole available remedy in cases involving the termination of at-will government employees, and thus do not control the resolution of this case. Because the availability of a name-clearing hearing is a sufficient remedy to redress Advance America's claims, the Court need not decide today what other elements in its broad remedial toolkit

## B. Failure to State a Claim

### 1. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits dismissal upon the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A claim is facially plausible when the pleaded facts "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully," but it is not a "probability requirement." Id.

At the Rule 12(b)(6) stage, the court accepts all of the complaint's factual allegations as true and draws all reasonable inferences from those facts in plaintiff's favor. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). However, the court does not accept "inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint." Id. (internal quotation marks and citations omitted). Similarly, the court need not accept plaintiff's legal conclusions simply because they are "cast in the form of factual allegations." Id. (internal quotation marks and citations omitted). "Threadbare recitals of a cause of action's elements,

---

are available. See Center for Food Safety v. Salazar, 900 F. Supp. 2d 1, 6 (D.D.C. 2012) ("Courts of equity have broad discretion in shaping remedies.").

supported by mere conclusory statements," are insufficient to survive a motion to dismiss. Iqbal, 556 U.S. at 678.

### 2. Analysis with Respect to All New Plaintiffs

The Federal Defendants raise three arguments as to why the New Plaintiffs have failed to state a claim upon which relief can be granted. First, they contend that the New Plaintiffs failed to plausibly allege a deprivation of a liberty interest, by either establishing that they have already been effectively cut off from the banking system or broadly precluded from the payday lending industry, as required by this Court in CFSA III. See Corrected Motion to Dismiss at 9-14 (citing CFSA III, at 8-9, 14-15]). Second, the Federal Defendants contend that the New Plaintiffs fail to plausibly allege that they will be effectively cut off from the banking system or broadly precluded from the payday lending industry in the future if Operation Chokepoint continues unabated. Corrected Motion to Dismiss at 13-14. Third and finally, they argue that the New Plaintiffs do not plausibly allege that Federal Defendants made stigmatizing statements about them. Id. at 15-20.

Federal Defendants begin by arguing that the New Plaintiffs have failed to plausibly allege that they have already been effectively cut off from the banking system or broadly precluded from the payday lending industry. That may be true but, ultimately, beside the point. The crux of the New Plaintiffs' allegations is that these harms will occur in the future if Operation Chokepoint is allowed to continue.

The Federal Defendants argue that the New Plaintiffs' allegations of future harm are simply too uncertain to be plausible. Corrected Motion to Dismiss at 13-14. The Court disagrees. It is undisputed that the New Plaintiffs have already lost bank accounts, see Corrected Motion to Dismiss at 4, and Plaintiffs have alleged sufficient facts to plausibly tie these losses to the actions

of Federal Defendants under the auspices of Operation Chokepoint. If those loses continue, it is certainly plausible that the New Plaintiffs will effectively be cut off from the banking system and/or put out of business. That is sufficient to state a claim.

Finally, Federal Defendants argue that the New Plaintiffs have not alleged that the Federal Defendants made statements that could plausibly demonstrate a due process violation. For example, they argue that the statements identified by the New Plaintiffs are not stigmatizing. Corrected Motion to Dismiss at 15-18. Instead, Federal Defendants contend that these statements at best constitute "pressure" on regulated banks, and that mere pressure is insufficient to support New Plaintiffs' due process claims. Id. Additionally, Federal Defendants contend that the alleged statements are not directed at individual Plaintiffs but are instead "general statements of policy about the payday lending industry" as a whole, and therefore, that such general statements cannot give rise to a due process claim. Corrected Motion to Dismiss at 20; see also id. 20-22.

At this early stage of the litigation, such arguments are unpersuasive. Federal Defendants have raised these arguments before, and the Court has so far declined to resolve them. See CFSA III, 19-24, n.6. That is because New Plaintiffs' allegations contain a variety of statements: some that can be labeled stigmatizing, and others that can be labeled as mere pressure; some that were made to regulated banks, and some that were made wholly within the agency; some that appear to be about individual banks, and others that apply generally to the payday lending industry as a whole. It is incorrect to categorically say that New Plaintiffs' allegations are simply evidence of pressure or consist entirely of generalizations about the industry. Ultimately, the Court finds that the totality of the statements presented make it plausible that Federal Defendants stigmatized New Plaintiffs, resulting in a deprivation of a liberty interest.

It is true that in ruling on the Preliminary Injunction, the Court held that the New Plaintiffs were unlikely to prevail on the merits. CFSA III at 24. In doing so, the Court noted that the Plaintiffs' allegations of disparaging statements made by the Federal Defendants were not likely to establish the existence of a wide-ranging campaign by Federal Defendants against payday lenders, see id., highlighting many of the same issues the Federal Defendants have raised in their Corrected Motion to Dismiss.

The Court reaches two different conclusions in deciding these two Motions because of the different standards employed when reviewing a motion for preliminary injunction—"likelihood of success on the merits"—and when reviewing a motion to dismiss—"plausibility." The plausibility requirement is not a probability requirement. Iqbal, 556 U.S. at 678. Instead, factual allegations need only "be enough to raise a right to relief above the speculative level." Bell A. Corp. v. Twombly, 550 U.S. 544, 555 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Bell A. Corp. v. Twombly, 550 U.S. 544, 556 (2007). Because the New Plaintiffs allegations are sufficiently plausible, though just barely, the Federal Defendants' Corrected Motion to Dismiss must be denied.

### 3. Analysis with Respect to PH Financial Services

Finally, Federal Defendants argue that PH Financial Services should be dismissed because it has failed to state a claim. They note that the crux of the Plaintiffs' argument is that Operation Chokepoint has stigmatized payday lenders, resulting in the termination of their bank accounts. However, PH Financial is not a payday lender, a fact to which Plaintiffs admit.

The Court agrees that PH Financial should be dismissed for failure to state a claim. The underlying theory of the Plaintiffs' due process claim is that the Federal Defendants have stigmatized payday lenders. But if PH Financial is not a payday lender, then it is simply implausible, even under the facts alleged by Plaintiffs, that Federal Defendants stigmatized PH Financial, and it cannot state a claim for which relief can be granted.

### C. Summary Judgment

#### 1. Standard of Review

Summary judgment may be granted only if the pleadings, the discovery materials, and affidavits on file show that there is no genuine issue as to <u>any</u> material fact and that the moving party is entitled to judgment as a matter of law. See Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006); Fed. R. Civ. P. 56(c). "A dispute over a material fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Arrington, 473 F.3d at 333 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the case under the substantive governing law. Id. The burden is on the moving party to demonstrate the absence of any genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

In reviewing the evidence on a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party and draws all inferences in her favor. Johnson v. Perez, 823 F.3d 701, 705 (D.C. Cir. 2016). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." Barnett v. PA Consulting Grp. Inc., 715 F.3d 354, 358 (D.C. Cir. 2013) (internal quotation marks and citation omitted). Accordingly, the Court's role is "not [to]

determine the truth of the matter, but instead [to] decide only whether there is a genuine issue for trial." Id.

## 2. Analysis

Federal Defendants have moved for Summary Judgment against Advanced America, Check Into Cash, and NCP Finance, arguing that given the undisputed material facts, these Plaintiffs cannot show that they have suffered a deprivation of liberty without due process. Federal Defendants muster a litany of undisputed evidence demonstrating that these Plaintiffs' continue to access the banking system and remain quite profitable. Therefore, Federal Defendants argue that these Plaintiffs cannot prove their due process claims as a matter of law.

However compelling this evidence may appear to be, it is nonetheless insufficient to grant summary judgment to Federal Defendants. The crux of Plaintiffs' argument is that if Operation Chokepoint continues unabated, they *will* be effectively cut off from the banking system or broadly precluded from the payday lending industry *in the future*.[3] The fact that Federal Defendants can definitively prove that those harms have *yet* to befall Plaintiffs does not refute this claim. Without knowing more fully Plaintiffs' past ability to access the banking system, how that ability has changed, and whether those changes were the result of Federal Defendants' actions, the Court is unable to definitively say that Plaintiffs will not be effectively cut off from the banking system. Similarly, the undisputed material facts identified by Federal Defendants do not enable the Court

---

[3] Plaintiffs also claim that the earlier termination of some of their bank accounts constitutes an independent due process violation, by denying them the right to bank in common with the general public. The Court rejected this argument in CFSA III. See CFSA III at 8-9. The termination of some banking relationships or some bank accounts does not constitute a change in legal status necessary to give rise to a due process violation. Instead, Plaintiffs must be cut off from so many bank accounts that they are effectively cut off from the banking system.

to definitively conclude that Plaintiffs will not be put out of business by continued regulatory pressure from Federal Defendants.

In addition, Federal Defendants argue that Check Into Cash and NCP Finance have not been broadly precluded from pursuing their chosen line of business because they are able to pursue other lines of business. This argument has no merit. These Plaintiffs may well have other lines of business that they are able to pursue should the Federal Defendants force the closure of their payday lending operations. However, the Due Process Clause protects one's right to pursue a livelihood of one's choice. See Greene v. McElroy, 360 U.S. 474, 492 (1959) (the Fifth Amendment protects the ability "to follow a *chosen* profession free from unreasonable governmental interference" (emphasis added)). The ability to pursue a different livelihood is no substitute – i.e., it would be of little consolation to an attorney, driven from his practice by improper governmental stigma, that McDonalds is still hiring. See Opposition to Corrected Motion to Dismiss at 32.

The cases cited by Federal Defendants are distinguishable. All involve instances in which the plaintiff was barred from conducting business with the government, but remained free to continue in her chosen profession by transacting with other individuals and entities outside the government program. See e.g. Martin Marietta Materials, Inc. v. Kansas Dep't of Transp., 810 F.3d 1161 (10th Cir. 2016) (limestone supplier who was removed from list of approved suppliers to the state was free to continue selling limestone on open market); Bank of Jackson County v. Cherry, 980 F.2d 1362 (11th Cir. 1993) (bank that was excluded from Farmers Home Administration program was free to continue banking). The bright-line rule, distinguishing between the ability to sell one's services to the government versus one's ability to sell one's

–13–

services at all, does little to support Federal Defendants' argument that the Due Process Clause tolerates the destruction of an entire line of Plaintiffs' business, so long as there are other lines of business they can pursue. See Corrected Motion to Dismiss at 29.

Because the Court cannot say as a matter of law that Plaintiffs have no right to relief, the Motion for Summary Judgment will be denied.

**D. Request to Strike Paragraphs from the Third Amended Complaint**

The Federal Defendants' request that Court strike Paragraphs 80-88, 92-93, 96, and 103-106 from the Third Amended Complaint. The Court previously ordered Plaintiffs to "omit references to absent CFSA members who are not Plaintiffs" when it granted Plaintiffs' leave to file a Third Amended Complaint. Order of February 3, 2017, at 2 [Dkt. No. 120]. Nonetheless, these paragraphs contain references to CFSA members who are not Plaintiffs.

The Order of February 3, 2017, reflected the Court's prior holding that resolution of the due process claims would turn on individualized evidence of whether any given Plaintiff had been effectively cut off from the banking system or broadly precluded from the payday lending industry. CFSA II, 2016 WL 7376847 at *4-5. Consequently, evidence about CFSA members who were not parties to the case is unlikely to be very probative as to the level of injury suffered by Plaintiffs.

At the same time, Plaintiffs' underlying theory is that Federal Defendants engaged in a wide-ranging campaign to put payday lenders out of business. Evidence that the Federal Defendants stigmatized other payday lenders might bolster Plaintiffs' contention that such a campaign exists, and therefore, that Federal Defendants stigmatized them as well.

For that reason, the Court will deny Federal Defendants' request to strike these paragraphs.

## III. CONCLUSION

For the foregoing reasons, Federal Defendants' Corrected Motion to Dismiss is granted, in part, with respect to the claims brought by PH Financial, and denied, in part, as to the claims of all other Plaintiffs and as to the request to strike, and Federal Defendants' Motion for Summary Judgment is denied.

July 5, 2017

*Gladys Kessler*
Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF