UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ADVANCE AMERICA, CASH ADVANCE CENTERS INC., et al., | ) ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION |
| v. | ) ) ) | Case No. 14-953 (TNM) |
| FEDERAL DEPOSIT INSURANCE CORPORATION, et al., | ) ) ) ) | |
| Defendants. | ) ) | |

**FEDERAL DEPOSIT INSURANCE CORPORATION'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF THE THIRD AMENDED COMPLAINT**

Throughout this lawsuit by three payday lenders against the Federal Deposit Insurance Corporation ("FDIC") and Office of the Comptroller of the Currency ("OCC"), Plaintiffs have claimed that they are being threatened with exclusion from the banking system and destruction of their businesses, that Defendants are responsible for the loss of their bank accounts, and that their reputational liberty interests are being threatened, requiring an injunction. None of that is true, and the FDIC is entitled to summary judgment.

First, Plaintiffs lack standing to sue. To the limited extent they have suffered any harm from losing their deposit accounts, they cannot show that the FDIC caused that harm by inducing banks to terminate the accounts, as no banks have attributed those terminations to the FDIC. Thus, Plaintiffs cannot carry their heavy burden of proving that Defendants are responsible for third parties' harmful acts. For the same reason, their limited harms are not redressable by this Court, as nothing in the record indicates that relief available from this Court would cause the terminating banks to reestablish those relationships.

1

Second, the harms Plaintiffs claim to fear have never materialized, even though Plaintiffs have been warning about them for more than four years. Plaintiffs have access to the banking system, just as they always have. The two lead Plaintiffs, Advance America, Cash Advance Centers ("AA") and Check Into Cash ("CIC"), *each* have ███████████ accounts, and the third Plaintiff, Northstate Check Exchange, both holds several bank accounts and maintains (for its payday lending business) the equivalent of a bank account at an investment firm. None of these banks has indicated an intent to terminate Plaintiffs' accounts (nor has the investment firm). Nor have Plaintiffs lost their payday lending businesses: they remain profitable, and the only costs AA and CIC can identify as resulting from their lost accounts amount to approximately █% of their overall budgets (Northstate identifies no additional costs at all).

Third, as indicated in the standing discussion, Plaintiffs cannot prevail on causation. The record is devoid of admissible testimony or sworn statements from banks pointing to the FDIC (or the OCC) as the source of a deposit account termination decision. Plaintiffs chose not to seek such testimony or statements during the discovery period, despite the Court's clear warnings that they cannot prove their case without that evidence. And even if the hearsay evidence in the discovery record were admissible, that would not help Plaintiffs, as none of it points to the FDIC.

Fourth, the FDIC has not stigmatized Plaintiffs. No evidence in the record indicates that the FDIC has ever disparaged Plaintiffs at any time, or that any of the banks that terminated Plaintiffs' accounts did so because their opinions of Plaintiffs had been altered. And even if there were stigmatizing statements about payday lenders in general, that would not give rise to a due process violation, which requires targeted, individualized acts, not actions affecting an entire class.

Plaintiffs are not entitled to injunctive relief in any event. Injunctive relief requires

imminent, irreparable harm, and Plaintiffs can point to no evidence that they are facing *any* kind of future harm, let alone imminent harm. Again, Plaintiffs' long history of continued access to the banking system and profitable businesses negates any inference that they will be harmed in the future, and simply speculating about future harm does not entitle a plaintiff to injunctive relief.

Finally, while the Court need not consider the FDIC's actual policies on banks' relationships with payday lenders to enter summary judgment for the FDIC here, Plaintiffs' characterizations are baseless. The FDIC neither prohibits nor discourages banks from maintaining accounts for payday lenders, provided that the banks manage the associated risks properly. The FDIC has made that policy clear on numerous occasions for more than five years now—i.e., *before* this suit was filed—and Plaintiffs' reliance on documents dating from 2013 and prior has no bearing on the question of what the FDIC's policy is *now*. Plaintiffs' continued robust health, and continued profitability, simply reinforces what is already obvious: there is no regulatory "campaign" against payday lenders.

A supporting memorandum is attached.

>Respectfully submitted,
>
>COLLEEN J. BOLES
>Assistant General Counsel
>BARBARA KATRON
>Senior Counsel
>_____/s/_____
>DUNCAN N. STEVENS D.C. Bar No. 473550
>ANDREW J. DOBER D.C. Bar No. 489638
>Counsel
>Federal Deposit Insurance Corporation
>3501 N. Fairfax Drive, D-7028
>Arlington, VA 22226
>dstevens@fdic.gov
>(703) 562-2402 (phone)
>(703) 562-2477 (fax)

JUSTIN V. SHUR (D.C. Bar No. 973855)
MoloLamken LLP
600 New Hampshire Ave. NW
Washington, DC 20037
jshur@mololamken.com
(202) 556-2000 (phone)
(202) 556-2001 (fax)

Attorneys for Federal Deposit Insurance Corporation

October 12, 2018