# EXHIBIT 57

 Citizens Bank™

Friday, October 10, 2014

ADVANCE AMERICA
135 N CHURCH ST
SPARTANBURG, SC 29306-5138

Re: Account(s

Dear Sir/Madam

We pride ourselves on providing legendary service. Because of this, Citizens Bank routinely reviews customer accounts. Recently, we reviewed the above referenced account(s) and have concluded that we no longer are able to maintain our banking relationship with you.

Effective immediately, all the deposit accounts listed above with Citizens Bank are closed. We will be mailing you a cashier's check for any remaining balance(s). This check will be mailed to you at the address indicated in our records at the close of business on Oct 27, 2014.

For your security, do not write checks against your checking account(s) as they will be returned unpaid.

If you currently utilize our night depository service, this closing letter will also serve as notification for the termination of your Night Depository Contract. If you have any questions, please contact the Warwick S&S Branch at 4017324016. We appreciate your interest in Citizens Bank.

Citizens Bank

**MEMBER FDIC**

# EXHIBIT 58



usbank
All of us serving you
EXHIBIT
29
Rudolph 5-9-18

November 1, 2016

VIA E-MAIL AND OVERNIGHT DELIVERY

Advance America Cash Advance Center Inc.
135 N. Church St.
Spartanburg, South Carolina 29306-5138
Attention: J. Christian Rudolph, Treasurer

Re: Notice of account closure and new account management

Dear Mr. Rudolph:

In accordance with your Deposit Account Terms and Conditions ("Account Terms") and U.S. Bank Services Terms and Conditions ("TM Terms"), please be advised that U.S. Bank has elected to close all accounts with Advance America Cash Advance Center Inc. as referenced in the attached Exhibit A.

To provide ample time for you to obtain alternative banking services, and make this process as convenient for you as possible, the effective date of closing will be January 31, 2017. Accordingly, unless you choose to close your accounts prior to that time, effective January 31, 2017, your accounts will automatically close and the related treasury management services will cease. Please be aware that when your accounts are closed, you will no longer be able to conduct any transactions using these accounts, including making deposits into the accounts or payments out of the accounts. Any/all outstanding checks presented against the accounts after closure will be returned as unpaid. All SinglePoint treasury management products and services including ACH batch processing will cease on the January 31, 2017 closure date.

You may close your accounts prior January 31, 2017 by notifying me in writing. The collected balances in your accounts, after satisfying any outstanding service or other outstanding obligations that may be due us, if any, will be available as provided in the Account Terms. Alternatively, if we do not hear from you prior to January 31, 2017, we will mail any remaining balances to you in accordance with the Account Terms. U.S.

Bank reserves all rights available to it under the Account Terms, the TM Terms or otherwise.

Please be advised that the existing commercial banking relationship for Advance America Cash Advance Center Inc. has been transferred to my attention within U.S. Bank's Special Assets Group for management. My contact information follows:

One U.S. Bank Plaza, SL-MO-T7CP
St. Louis, MO 63101
Direct phone: (314) 418-8503
E-mail: roger.p.gross@usbank.com

All correspondence or contact related to the commercial banking relationship should be directed to my attention.

Finally, all requests for new accounts or additional or modified treasury management products or services (whether pending or otherwise) will not be considered. This notice is provided to you so that you may begin making other arrangements.

If you have any questions concerning this letter, please do not hesitate to contact me.

Sincerely,

Vice President

**Exhibit A**

Protected

AA004996

# EXHIBIT 59

**Subject:**
**From:** crudolph@advanceamerica.net
**Date:** Sun, 13 Nov 2016 23:09:49 -0500
**To:** jrustin@advanceamerica.net, Patrick O'Shaughnessy <po'shaughnessy@advanceamerica.net>

---

I would bet the investigation related to US Bank's relationship with Scott Tucker and its AML controls was the trigger to exit the entire payday lending industry.

U.S. attorney's office has requested information on bank's anti-money-laundering controls

By *Rachel Louise Ensign*
Updated Aug. 5, 2016 4:46 p.m. ET

U.S. Bancorp disclosed in a securities filing Friday that it is the subject of an investigation into its relationship with indicted race-car driver Scott Tucker.

The bank said the Manhattan U.S. attorney's office is investigating its relationship with Mr. Tucker and has asked for information on aspects of the lender's anti-money-laundering controls, which are supposed to spot and prevent nefarious account activity.

While U.S. Bank had previously disclosed it was cooperating with an investigation of Mr. Tucker, it hadn't mentioned the scrutiny of its own internal controls.

In February, Mr. Tucker, a businessman-turned-race-car driver, and his lawyer were charged with overcharging customers hundreds of millions of dollars in undisclosed fees in one of the largest federal criminal payday-lending cases ever. Mr. Tucker had bank accounts with U.S. Bank, the Minneapolis lender has said.

The disclosure adds to anti-money-laundering issues at U.S. Bank. In October, it entered into a consent order with the Office of the Comptroller of the Currency over issues with its controls.

Under anti-money-laundering laws, banks can be penalized for failing to spot suspicious activity running through customer accounts. The size of such penalties have increased dramatically in recent years.

For instance, in 2014, J.P. Morgan Chase & Co. paid a $1.7 billion penalty for failing to file a certain kind of anti-money-laundering report to U.S. authorities on Bernard Madoff, who was convicted of orchestrating an infamous Ponzi scheme. Meanwhile, HSBC Holdings PLC in 2012 agreed to pay a $1.9 billion penalty to settle allegations that included inadequate anti-money-laundering controls.

In its recent disclosure, U.S. Bank didn't specify the size of any potential penalty. The bank added $110 million to legal and regulatory reserves in the second quarter, but didn't link this to any specific cases.

**Write to** Rachel Louise Ensign at rachel.ensign@wsj.com

Thanks,

Christian Rudolph

# EXHIBIT 60

# FILED UNDER SEAL

# EXHIBIT 61

# FILED UNDER SEAL

# EXHIBIT 62

# FILED UNDER SEAL

# EXHIBIT 63

# FILED UNDER SEAL

# EXHIBIT 64

# CHECK INTO CASH[1]
# ANTI-MONEY LAUNDERING
# AND
# MONEY SERVICES BUSINESS
# COMPLIANCE PROGRAM

Last revised: February 13, 2017

[1]This program covers Check into Cash, Inc. and its various subsidiaries and affiliates, as applicable.

**CHECK INTO CASH**
**ANTI-MONEY LAUNDERING**
**AND**
**MONEY SERVICES BUSINESS**
**COMPLIANCE PROGRAM**

TABLE OF CONTENTS

INTRODUCTION ....................3

THE FOUR PART COMPLIANCE PROGRAM....................7

PART ONE:
POLICIES, PROCEDURES AND CONTROLS....................8

A. Verify Customer Identity....................8
B. Know Your Employees....................8
C. Standard Record Keeping.................... 9
D. Currency Transaction Reporting....................10
E. Suspicious Activity Reporting.................... 13
F. Record Keeping - Monetary Instruments (Money Orders and Traveler's Checks).................... 17
G. Record Keeping - Wire Transfers.................... 18
H. Prepaid Access (including Gift Card Purchases) – Information and Record Keeping.................... 19
I. Check Cashing – Information and Record Keeping ....................20
J. Bill Payment – Information and Record Keeping ....................20
K. Registration and Renewal.................... 21

PART TWO:
APPOINTMENT OF THE COMPLIANCE OFFICER....................23

PART THREE:
EMPLOYEE COMPLIANCE TRAINING PROGRAM.................... 25

PART FOUR:
INDEPENDENT AUDIT PROGRAM....................27

A. Audit Personnel....................27
B. Audit Procedures....................27

OFFICE OF FOREIGN ASSETS CONTROL (OFAC)....................28

# INTRODUCTION

In recent years, Congress has passed and amended several laws to address money laundering, terrorist financing and other illegal financial activity. A couple of the most significant laws in this area are the Bank Secrecy Act of 1970 and the USA PATRIOT Act of 2001.

The Bank Secrecy Act (BSA) and its regulations are designed to fight money laundering and other financial crimes by, among other things, creating an audit trail for large currency transactions; establishing reporting standards and requirements for transactions greater than $10,000 (CTR reporting); verifying the identity of customers and keeping records of customer transactions; and imposing civil and criminal penalties for noncompliance with BSA reporting requirements.

The recordkeeping and reporting requirements apply to several entities including Money Services Businesses (MSBs).

An MSB is defined as a financial institution that:

1. Issues, sells or redeems (cashes) money orders in an amount greater than $1000 for any person on any day,
2. Issues, sells or redeems (cashes) travelers checks in an amount greater than $1000 for any person on any day,
3. Engages in money transmission (no minimum dollar threshold per person per day),
4. Cashes checks (or monetary instruments, or a combination of both) in an amount greater than $1000 for any person on any day,
5. Exchanges currency in an amount greater than $1000 for any person on any day,
6. Is a provider of "prepaid access" or is a "seller" of prepaid access

A "provider" of prepaid access is the participant within a "prepaid program" that agrees to serve as the principal conduit for access to information from its fellow program participants. The participants in each prepaid access program must determine a single participant within the prepaid program to serve as the provider of prepaid access.

A "prepaid program" is an arrangement under which one or more persons acting together provide(s) "prepaid access."

"Prepaid access" is access to funds or the value of funds that have been paid in advance and can be retrieved or transferred at some point in the future through an electronic device or vehicle, such as a card, code, electronic serial number, mobile identification number, or personal identification number. For example, the term "prepaid access device" applies to the **reloadable card** that is sold in our centers.

The provider of the prepaid access program in which we participate, based upon a number of facts and circumstances, has been determined by the participants. The provider has registered with FinCEN. Check into Cash is not the provider.

The provider must adhere to certain obligations regarding prepaid access including having an AML program with procedures to establish the identity of the person who obtains prepaid access, filing Suspicious Activity Reports, and recordkeeping policies that would assist in reconstructing prepaid access activation, loads, reloads, purchases, withdrawals, transfers or other prepaid related transactions.

A "seller" of prepaid access is any person that receives funds or the value of funds in exchange for an initial loading or subsequent loading of prepaid access if that person: (1) sells prepaid access offered under a prepaid program that can be used before verification of customer identification; or (2) sells prepaid access to funds that exceed $10,000 to any person during any one day. Check into Cash serves as an agent for prepaid access devices.

Centers where the reloadable cards are sold are <u>not</u> considered **"sellers"** of prepaid access devices. The reason is that the cards cannot be used prior to verification of customer identification. Additionally, policies and procedures have been reasonably adapted to prevent sales of prepaid access to funds that exceed $10,000 to any person during any one day.

We have always encouraged voluntary filing of Suspicious Activity Reports for prepaid access and will continue to do so.

Check into Cash offers products and services which fall into one or more of these categories and therefore, we must be registered as an MSB.

The BSA and supporting regulations require that MSBs:

1. Register with the Financial Crimes Enforcement Network (FinCEN). FinCEN administers and issues regulations pursuant to the BSA,
2. File Suspicious Activity Reports. MSBs are required to file SARs if they serve as money transmitters, are sellers/redeemers of money orders or are providers or "sellers" of prepaid access. While it is currently not required by law that check cashers submit SARs, Check into Cash, pursuant to company policy, voluntarily submits SARs for these transactions,
3. File Currency Transaction Reports. MSBs must file CTRs on transactions involving more than $10,000, in either cash-in or cash-out transactions, conducted by, through or to the MSB on any one day by or on behalf of the same person,
4. Maintain a Money Instrument Log (for Money Orders). MSBs must maintain certain information on the sale of money orders from $3,000 to $10,000 (inclusive of the amount of any fees),
5. Maintain Information Regarding Funds Transfers. MSBs must maintain

certain information for funds transfers (sending and receiving) in amounts of $3,000 or more. This information is automatically requested by the money transmitter and bill payment entities for whom we serve as agent and the equipment will prompt you for this information. In some cases, the $3,000 threshold may be lowered per that entity's policies and procedures,

6. Maintain Customer Information Regarding Prepaid Access. Providers and "sellers" must maintain certain information on the sale of prepaid access.
7. Follow Record Retention Requirements. All MSB records must be retained for 5 years and must be readily available upon request by the applicable examiner.

The PATRIOT Act and supporting regulations require that all check cashers and other Money Services Businesses (MSBs) must establish their own internal anti-money laundering programs. The law requires that such programs must include "at a minimum":

(i) the development of internal policies, procedures, and controls,
(ii) the designation of an anti-money laundering compliance officer within the company,
(iii) an ongoing employee training program, and
(iv) an independent audit function to test the program.

An effective anti-money laundering program is one that is reasonably designed to prevent an MSB from being used to facilitate money laundering and the financing of terrorist activities. 31 CFR 1022.210(a).

Individuals who are involved in an illegal activity try to hide the source of funds for this illegal activity by placing them carefully into the mainstream financial system. Therefore, it is very important for employees of MSBs to know where funds originate, to be aware of the illegal activities associated with placement of the funds, and to be able to spot money laundering and other schemes. Individuals engaging in illegal activity do not want to be detected or draw attention to themselves so they try to avoid reporting and recordkeeping requirements. Employees dealing with individuals at the center level have the best information and perspective for determining whether to proceed with a transaction. Employees must use good judgment in consultation with a supervisor where appropriate to determine if a transaction should be completed.

One way that individuals attempt to avoid such requirements is by structuring transactions. Structuring may occur on same day transactions or consecutive day transactions. Also be aware that individuals may try to structure transactions by engaging different employees to assist with the transactions.

You should take very seriously the requirements of this Check into Cash Compliance Program and your responsibilities under this Compliance Program. State and federal regulators conducting Title 31 audits will examine Check into Cash to ensure that this Compliance Program is in place and functioning correctly. A failure to comply may result in serious criminal and/or civil penalties for the company, and could also result in

serious consequences for employees that do not meet the requirements of the law and this Compliance Program.

## THE FOUR PART COMPLIANCE SYSTEM

As noted above, the mandatory compliance system under Section 352 of the USA PATRIOT Act must, at a minimum, incorporate the following:

1) Internal policies, procedures, and controls designed to ensure compliance with all applicable anti-money laundering laws and regulations;

2) Appointment of a compliance officer who will be responsible for compliance with all applicable Bank Secrecy Act laws and regulations as well as all money laundering issues;

3) Adoption of a formal and ongoing compliance training program for all new and existing employees; and

4) Performance of a regular, independent audit of the program to ensure compliance and test the efficacy of the program.

Each of these requirements is covered in the following four sections.

PART ONE

POLICIES, PROCEDURES AND CONTROLS

A. Verify Customer Identity:

Protection against financial crime starts with an awareness of your customer -- and ensuring that he is, in fact, who he says he is. Customer identity verification is an important part of an effective compliance program and it is crucial in helping to detect suspicious activity in a timely manner, reducing operation losses due to fraud, forged endorsements, bad checks, etc.

All employees must be carefully trained in, and must follow, the following procedures and controls:

1) All employees must follow company procedure with respect to reviewing, verifying and maintaining copies of customer identification. In the event of any questions regarding a particular customer ID, consult with your District Manager. Your District Manager may, in turn, consult with the company's Compliance Officer or Deputy Compliance Officer.

2) All employees must follow procedures regarding specific identification requirements for wire transfer, money order transactions and prepaid access transactions (see information that follows).

3) Endorsements on checks and other financial instruments should be compared with signatures appearing on the customer's ID.

4) All employees must follow company procedure with respect to accepting a customer's application or request for a transaction and inputting that customer's information into the company's computer system and customer files.

B. Know Your Employees:

Ensuring the identity and integrity of our employees is an indispensable part of this Compliance Program. The company will:

1) Request criminal background checks for all new employees that may handle cash or process customer transactions.

2) Request consumer credit/judgment searches for all prospective employees that may handle cash or process customer transactions.

3) Maintain a file on all employees, including any background information and references. Employee records are confidential and shall be maintained in a secure area, accessible only by persons who have a legitimate business need to access these files.

C. Standard Record Keeping:

Accurate and thorough record keeping is critical. All transactions are to be recorded, including checks cashed, money orders purchased, wire transfers received or sent, bill payments, prepaid access purchases and reloads, etc. A record is required of, among other things, the date, type of instrument purchased, cashed, sent, or received, and the amount of the transaction. Where applicable, you must properly enter all requested information into the company's computer systems for every transaction in order to help us maintain these critical records.

- Customer records are to be maintained in an orderly fashion in a secure area.

- Records are to be readily accessible for production to federal and state examiners.

1) Copies of Currency Transaction Reports ("CTRs") must be maintained for a period of five (5) years from the date of filing. 31 CFR 1010.306(a)(2).

2) Detailed identification and a separate log/file is required for the sale of monetary instruments (money orders and traveler's checks) involving currency from $3,000 through $10,000 (including fees). This information must be kept for a period of five (5) years. 31 CFR 1010.415.

3) Detailed identification is required for wire transfers of $3,000 or more. 31 CFR 1010.410(f) ($1,000 or more for transactions in Arizona and Oklahoma).

4) Detailed information regarding sales of prepaid access must be entered into the computer, especially regarding the customer's identity (to include name, address, date of birth, identification number – for U.S. persons this is the customer's Social Security number or tax ID number; for

non-U.S. persons, this number is the number from a valid, unexpired government-issued photo ID such as a passport, voter ID card, Green Card, Matricula Consular card, military card, drivers' license or any other valid, unexpired government issued photo ID).

5) Tax and supporting accounting records are to be maintained for a period of at least three (3) years as required by Internal Revenue Code regulations. IRC Reg. 1.446-1(a)(4).

6) The Treasury Department may issue Geographic Targeting Orders ("GTOs"), requiring financial institutions in an area to keep additional records beyond the time specified by the Bank Secrecy Act. The targeting order may specify the form in which check cashers are to keep the specified records, and the length of time they are to keep them. 31 CFR 1010.410.

D. Currency Transaction Reporting:

All currency (cash) transactions over $10,000 conducted by or on behalf of the same person during the same business day must be reported by filing a Currency Transaction Report ("CTR"). You must contact your District Manager if you need to file a CTR.

- The applicable statute provides: "Each financial institution ... shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000." 31 CFR 1010.311

1) The Treasury Department classifies transactions as either cash-in or cash-out. Cash-in transactions include such currency transactions as accepting money from customers when buying money orders, receiving money from customer when sending wire transfers, receiving money from customers for prepaid access purchases, and exchanging currency for currency. Cash-out transactions include giving customers money when cashing checks, disbursing wire transfer proceeds in currency, and exchanging currency for currency.

2) <u>Cash-in transactions are counted separately from cash-out transactions</u>. Thus, a person must have over $10,000 in <u>either</u> cash-in transactions <u>or</u> cash-out transactions in order for a CTR to be required. For example,

A customer comes to the center to pay several bills and gives us more than $10,000 (cash-in).

A customer cashes a check and receives more than $10,000 (cash-out).

A customer sends or receives a wire or wires that total more than $10,000 (excluding the fee) (send/cash-in; receive/cash-out).

If a customer cashes 2 payroll checks ($6,400 and $4,200), then you must file a CTR for the aggregated amount of the cash given to and received by the customer. If a customer cashes a check for $6,000 (cash-out) and later sends a wire transfer in the amount of $5,000 (cash-in), then no CTR is required.

3) Aggregated transactions which, when added together, amount to more than $10,000 in currency, performed by or on behalf of a person during one business day must be reported on a CTR.

For example, a customer sends $6,250 by wire transfer to a friend in Minnesota. Later that day, the customer returns and sends $4,000 to someone in Los Angeles. A CTR is required for the aggregate amount of these two transactions sent by the same customer in the same day.

For example, a customer sends a wire transfer, purchases money orders and gives cash to place on a prepaid access device and the aggregate amount of cash received from this customer for all transactions is greater than $10,000, then a CTR is required.

4) If "structuring" (i.e., an attempt to evade CTR filing thresholds by breaking up transactions) is suspected, the customer should be questioned as to the number, nature and dollar amount of transactions performed that business day. Please note that such activity may require completion of a Suspicious Activity Report (see below).

5) "Currency" means the coin and paper money of the United States or of any other country. Coin and paper money that circulates and is customarily used and accepted as a medium of exchange in the country of issuance qualifies as currency. 31 CFR 1010.100 (m).

6) A currency transaction is any transaction involving the physical transfer of currency from one person to another. 31 CFR 1010.100 (bbb)(2).

7) The federal regulations define a "person" as an individual, a corporation, a partnership, a trust or estate, a joint stock company, an association, a syndicate, joint venture, or other unincorporated organization or group, and all entities cognizable as legal persons. 31 CFR 1010.100(mm).

8) The CTR must be complete and accurate. All required customer information should be obtained from the customer before you complete the transaction. If the customer cannot or will not provide responsive and complete information, the transaction should not be completed. Please note that if the customer cannot or will not provide responsive and complete information, consider whether circumstances warrant a SAR.

9) Copies of all CTR information are to be kept on file for five (5) years.

10) The Compliance Officer or Deputy Compliance Officer will review all CTRs for accuracy and completeness before filing them, and may call you if they have any questions about the CTR or the transaction.

11) After reviewing them, the Compliance Officer or Deputy Compliance Officer will submit all CTRs.

12) The Compliance Officer or Deputy Compliance Officer shall ensure that a file is created for each reportable transaction, which file shall include the CTR. The files shall be stored by the Compliance Officer or Deputy Compliance Officer in a secure location, for a minimum of five (5) years. The files may be electronic.

13) If you are asked by anyone other than a company representative for access to CTRs, you must take special care to verify that a requestor of information is, in fact, a representative of FinCEN, or an appropriate law enforcement or supervisory agency. Should someone come to your center requesting a copy of a CTR or supporting documentation for a CTR, immediately contact the Compliance Officer. The Compliance Officer will verify the

identity of the requestor with his or her field office and will request identification. Do not supply any documents until you hear from the Compliance Officer.

| Remember: Multiple transactions must be treated as a single transaction if you have knowledge that they are by the same person and result in either cash-in or cash-out totaling more than $10,000 during any one business day. 31 CFR 1010.313(b) |
|---|

E. Suspicious Activity Reporting:

With the exception of check cashing transactions (see subparagraph 2 below regarding voluntary filing), you must report transactions that are $2,000 or more and suspected of involving money laundering or other crimes. Any suspicious transaction that is $2,000 or more is to be reported by filing a Suspicious Activity Report (SAR). You must **not** inform the customer that the company may file a SAR. Doing so could be a violation of the law.

SARs are not required in connection with check cashing transactions although check cashers are permitted to file SARs. However, a check casher who also conducts business as a seller of money orders or traveler's checks, is a seller of prepaid access or acts as an agent for a money transmitter (such as Western Union), **must** file SARs in connection with those transactions where they appear suspicious and are $2,000 or more.

1) SARs must be filed by: (a) issuers, sellers or redeemers of money orders; (b) issuers, sellers or redeemers traveler's checks; (c) money transmitters and their transmitting agents; and (d) providers and sellers of prepaid access.

2) Even where the filing of a SAR is not mandatory, the regulations permit the voluntary filing of SARs by any MSB. This serves as an important self-protection for a check casher, who can hardly be deemed to be "turning a blind eye" to possible money laundering if the check casher has filed a SAR.

3) The SAR must be filed within 30 days after the date of the initial detection of the suspicious activity. Subsequent filings every 90 days should be made if the suspicious activity continues.

While SARs currently are not required by law to be filed by check cashers, or retailers of prepaid access who are not "sellers," Check into Cash requires its employees to file SARs on suspicious activity involving these transactions.

4) If you become actually aware (as opposed to just suspicious) of a violation of law that requires immediate attention, such as ongoing money laundering schemes or terrorist activity, you must immediately notify your District Manager. Your District Manager will immediately contact by telephone appropriate law enforcement authorities, and will also inform the company's Compliance Officer or Deputy Compliance Officer. In addition, you must still file a SAR, following the procedures set forth in this section.

> Note: FinCEN has established a Financial Institutions Hotline, 866-556-3974, for financial institutions to voluntarily report transactions that may relate to terrorist financing or other terrorist activity.

5) A suspicious transaction must be reported if it is conducted or attempted and involves funds -- or an aggregate of funds or other assets -- of $2,000 or more.

6) A transaction may be considered suspicious if it:

a) Involves funds derived from illegal activity or is intended to disguise the source, ownership, or control of funds or assets derived from illegal activity as part of a plan to evade federal law or reporting requirements; or

b) Is designed, whether through structuring or other means, to evade the Bank Secrecy Act reporting requirements (e.g., a customer terminates a transaction to avoid BSA requirements); or

c) Serves no legitimate purpose, and our company knows of no reasonable explanation for the transaction (i.e., when asked, the customer cannot provide a reasonable explanation).

For example, a customer wants to wire $3,250 to a person in Washington. Because the transaction is at least $3,000, you ask for identification and additional information. The customer wants to know why he must give you this information. You explain that it is a BSA requirement regarding wire transfers. The customer changes the amount

of the wire to $2,500 (to avoid ID requirements). The next day the customer returns and sends $750 to the same person. A SAR should be completed.

For example, a customer requests to purchase money orders in an amount totaling $2,999 and the next day returns to purchase an additional $1,000 money order. A SAR should be completed due to this structuring scenario. The customer appears to be avoiding the additional ID information requirement for money order purchases of $3,000 or more.

7) Watch for "red flags" that may signal a transaction is suspicious. These "red flags" should trigger some questions such as: Is the amount of the transaction unusually large for the typical customer? Does the customer make the same or similar transactions more frequently than normal? Does the transaction seem unusual for this customer?

"Red flags" can include, but are not limited to:

(a) Customer uses a fake ID or multiple IDs on different occasions (name, address, ID number may be different);
(b) Two or more customers use the same or similar ID;
(c) Customer changes transaction after discovering he/she must show ID;
(d) Customer conducts transactions so that they fall just below the amounts required for BSA reporting or recordkeeping;
(e) Customer changes pattern of transactions;
(f) Customer's dollar amount of activity is not consistent with customer's business, occupation or level of income;
(g) Two or more customers seem to be working together to break one transaction into two or more; and
(h) You know or have reason to know that the funds are derived from illegal activity.

8) The SAR should contain a description of the transaction, the nature of the suspicious activity (e.g., structuring), the identity of the parties involved, a detailed explanation of who benefited from the transaction, and the monetary amounts involved. The SAR should also describe all supporting documentation, including forms of identification of the suspect(s) involved, copies of all monetary instruments involved, account numbers and information, and all money transmission information.

9) <u>When filing a SAR it is very important that you complete all information requested in the SAR form including, but not limited to, Social Security number, date of birth and occupation.</u>

10) All supporting documentation must be maintained for a period of at least five (5) years from the date of the transaction.

| Note: It is illegal for our company or any employee to inform any person or party to a suspicious transaction that our company has reported, or intends to report, a suspicious transaction. The obvious reason for nondisclosure is to allow law enforcement an opportunity to investigate and apprehend money launderers. |
|---|

10) It is illegal to engage in "willful blindness," i.e., to process or facilitate a transaction or ongoing scheme that you know, or reasonably should know, involves money laundering or other illegal conduct.

11) If we file a SAR in good faith, we are protected from civil liability for any disclosures contained in the report, and for any failure to disclose to interested parties that a report was filed. Filing an intentionally false SAR, however, may result in both civil and criminal liability.

12) The Compliance Officer or Deputy Compliance Officer will review all SARs for accuracy and completeness prior to filing, and may call you if they have any questions about the SAR or the transaction.

13) After reviewing them, the Compliance Officer or Deputy Compliance Officer will submit SARs.

14) The Compliance Officer or Deputy Compliance Officer shall ensure that a file is created for each reportable transaction, which file shall include the SAR. The files shall be stored by the Compliance Officer or Deputy Compliance Officer in a secure location, for a minimum of five (5) years. This file may be electronic.

15) If you are asked by anyone other than a company representative for access to SARs, you must take special care to verify that a requestor of information is, in fact, a representative of FinCEN, or an appropriate law enforcement or supervisory agency. Should someone come to your center requesting a copy of a SAR or supporting documentation for a SAR, immediately contact the

Compliance Officer. The Compliance Officer will verify the identity of the requestor with his or her field office and will request identification. Do not supply any documents until you hear from the Compliance Officer.

F. Record Keeping - Monetary Instruments (Money Orders and Traveler's Checks):

- BSA regulations require the company to obtain, record, and maintain certain identification in connection with the sale of monetary instruments to the same person during the same business day for currency from $3,000 through $10,000 (including fees). [Note that in Arizona, a state law requires this for amounts from $1,000 through $10,000.] Monetary instruments include money orders and traveler's checks, or a combination of both. You must combine multiple purchases by the same customer during the same day.

- You must verify the identity of the customer by carefully examining the customer's valid, government issued photo ID with customer's name and address. Look at and handle the ID to verify authenticity. The identification must be the same type normally accepted by the company for cashing checks.

1. Obtain and/or record the following information:

   - Date of the transaction
   - Total number of instruments sold
   - Serial number of each instrument (For traveler's checks you may enter the numbers in a "From # _____ to # ______" format
   - Amount(s) of each instrument
   - Customer's name and address
   - Customer's Social Security Number (or Alien ID or Passport number and issuing country)
   - Customer's date of birth
   - Customer's ID (type, number, issuer)

For Arizona, obtain the customer's signature and indicate your full name.

| Note: The regulations require certain information from the customer before completing a sale of the monetary instruments. If the customer cannot or will not produce the information or the documents presented appear fake, then the transaction must not be completed. Consider whether a SAR should be submitted. |
|---|

2. We must keep the above records for a period of five (5) years from the date of the transaction. We must also make the records available to State and Federal examiners in connection with banking department or federal Title 31 examinations.

G. Record Keeping - Wire Transfers:

Generally, for wire transfers of $1,000 or more, the following is required:

- Verify the identity of the customer by examining a currently valid, government issued photo ID with the customer's name and preferably, address. Look at and handle the ID to verify authenticity. The identification must be the same type normally accepted by the company for cashing checks.
- Record customer's name and address
- Record the ID type, number and state/country of issuance.
- If the transaction is a "send", obtain the receiver's name.

In addition to any applicable CTR requirement, the BSA requires that in connection with any wire transactions of $3,000 or more (send or receives), the company must:

- Verify the customer's identity by examining a currently valid government issued photo ID.
- Record customer's name and address
- Record ID type, number and state/country of issuance
- Record the customer's Social Security number (if customer does not have a Social Security number, record the Alien ID or Passport number)
- If the transaction is a "send", obtain receiver's name
- Record customer's date of birth
- Record customer's occupation

**NOTE:** This information must be obtained for wire transfers of $1,000 or more in Arizona and Oklahoma.

| Remember: For all send or receive wire transfers of $3,000 or more ($1,000 in Arizona and Oklahoma), you must verify the identity of the sender/receiver by examining a valid government issued photo ID. You must also record the name, address, Social Security Number, the ID number and type, state or country of issuance of the ID, and the date of birth and occupation. |
|---|

H. Prepaid Access – Information and Record Keeping

We must obtain certain information from a customer prior to a purchase of a prepaid access device at our centers. The computer system will prompt you for this information which will include the customer's name, address, date of birth and identification number. You must also obtain the customer's valid, unexpired government issued photo ID. If the customer will not give this information to you, do not proceed with the transaction, contact the Compliance Officer immediately and consider whether a SAR should be filed. After collecting the information, use it to verify the customer's identity, and then record the following information in the computer system: Type of ID, Issuer, ID Number, Issue Date and Expiration Date.

Information regarding prepaid access transactions must be retained for a period of five (5) years from the date of the sale of the prepaid access device.

Purchase of Gift Cards

Some of our centers are authorized to purchase gift cards, e-Cards/paper cards and merchandise credit from customers for resale online. When a gift card is purchased from a customer, we electronically submit the gift card information to the third party vendor, who resells the gift card to shoppers at a discount. Gift cards must have a $20.00 minimum balance.

There is a risk of fraud with gift card purchases so we have implemented the following policies and procedures to reduce this risk:

- Employees must identify the seller with a government or state-issued photo ID and a valid secondary form of ID used only to validate the name on the government or state-issued photo ID
- Employees must ask the seller: Where was the gift card purchased? How long have you had the card? Why are you selling the card?
- Employees must examine the gift card: Does it look like any of the information has been modified? Does the gift card have an expiration date?

The gift card purchase system has fraud and velocity limits built into it and they vary by customer.

At the end of the business day, you must verify all of the gift cards purchased for that day and then once verified, you must shred all gift cards you have purchased.

Keep the gift card receipt indefinitely.

File a Suspicious Activity Report if you have any doubts about the presentation of gift cards at the center.

I. Check Cashing – Information and Record Keeping

We must obtain certain information from a customer prior to the customer cashing a check. This includes obtaining a non-expired, government issued photo ID from the person cashing the check in order to assist in verifying the customer's identity. The customer's information is to be placed in the third party check verification software. Employees are the first line of defense in ascertaining whether a check looks suspicious and/or whether the customer's behavior indicates suspicious activity with regards to the check cashing transaction.

SARs are not required in connection with check cashing transactions although check cashers are permitted to file SARs. It is Check into Cash policy and practice to require its employees to file SARs on suspicious activity involving these transactions in the amount of $2,000 or more.

Check cashing transactions that involve disbursed amounts to the customer in excess of $10,000 must be reported using the Currency Transaction Report.

Information regarding check cashing transactions must be retained according to state check cashing retention periods or the corporate retention period if there is no state check cashing statute. These retention periods are listed in the Company's Document Management Policy as amended from time to time.

J. Bill Payment – Information and Record Keeping

In some centers, customers may pay national and local billers through Western Union bill pay. Check into Cash receives only cash for bill payment transactions. We retain no paperwork on these transactions except for a duplicate signed customer receipt for daily paperwork reconciliation purposes. Keep this receipt indefinitely.

Should employees encounter suspicious activity with regards to bill payment transactions, file a SAR on amounts involving $2,000 or more.

Bill pay transactions that involve amounts received from customers in excess of $10,000 must be reported using the Currency Transaction Report.

K. Registration and Renewal:

As part of the Department of Treasury's increased efforts to combat money laundering and other financial crimes, all money service businesses (MSBs) including check cashers are required to be registered with the Department of Treasury.

The Compliance Officer or Deputy Compliance Officer shall cause the completed form to be submitted.

Failure to register may result in a civil penalty of up to $5,000 for each violation. Failure to comply may also subject a person to criminal penalties including imprisonment of five (5) years and additional fines.

The company's Compliance Officer shall be responsible for ensuring that the proper registration is timely made and renewed.

WHO MUST REGISTER?

Federal regulations require that all MSBs, whether or not licensed in any state, must register with the Department of Treasury. Covered MSBs include (1) check cashers, (2) sellers or redeemers of traveler's checks or money orders, (3) issuers of traveler's checks, or money orders, (4) money transmitters, (5) currency dealers or exchangers, and (6) providers and "sellers" of prepaid access. However, "sellers," as agent MSBs, do not have to register as MSBs.

1) Registration must be completed by an owner or designated individual who controls the business.

2) Only main offices need register; each branch office is not required to file a separate registration form.

3) Newly formed MSBs must register within 180 days after the new business is established.

RENEWAL AND RE-REGISTRATION

Registration must be renewed every two (2) years by completing and refiling the form.

Additionally, re-registration is required any time where there is: (1) a transfer of more than 10 percent of ownership or control of the business; (2)

a change in ownership or control that requires re-registration under state law; or (3) a more than 50% increase in the number of the MSBs agents.

Registration Forms and information on MSB registration can be obtained from the Financial Crimes Enforcement Network (FinCEN) website at www.treas.gov\fincen.

PART TWO

APPOINTMENT OF THE COMPLIANCE OFFICER

Appointment of a Compliance Officer to assure day-to-day compliance is mandated by Section 352 of the PATRIOT Act. The company appoints its Deputy General Counsel, Leigh Anna Hollis, as its Compliance Officer. The company appoints its General Counsel, Gregory T.J. Madson, as its Deputy Compliance Officer. Ms. Hollis and Mr. Madson may be reached at 423-473-9493.

The Compliance Officer's and Deputy Compliance Officer's duties and responsibilities include the following:

1) Becoming and remaining knowledgeable of all pertinent anti-money laundering laws and regulations, including the following:

   a) CTR filing thresholds, requirements and record keeping;

   b) SAR filing thresholds, requirements and record keeping;

   c) Monetary instrument, and wire transmission information thresholds, requirements and record keeping;

   d) Prepaid access information requirements and recordkeeping; and

   e) MSB registration and registration renewal.

2) Establishing and maintaining internal procedures for the completion, filing and storage of all reports required under applicable anti-money laundering laws and regulations.

3) Instituting, and updating as necessary, anti-money laundering compliance training and education of all new and existing employees.

4) Instituting and maintaining the Company's anti-money laundering compliance program, and updating the program as necessary to reflect current requirements.

5) Ensuring periodic independent audits of the anti-money laundering program.

6) Maintaining, and updating as necessary, this Compliance Program.

7) Instituting, coordinating and reporting investigations of suspicious transactions.

8) Reviewing, and completing and filing as appropriate, a report of each suspicious transaction. A memorandum may be prepared to include discussion of the following points:

   a) A summary of the transaction;

   b) What made the transaction seem suspicious;

   c) Pertinent facts from any memorandum prepared by employees concerning the transaction or customer;

   d) The scope of any investigation conducted;

   e) The results of any investigation conducted;

   f) Whether or not the company filed a CTR or SAR; and

   g) If the company did not file a CTR or SAR, the reasons behind the decision.

9) Coordinating compliance with all government subpoenas, summons, law enforcement requests, examinations or other government requests relating to compliance issues, and assembling documents for audits by state and federal examiners.

| Note: In responding to a government subpoena, the Compliance Officer and Deputy Compliance Officer shall see that all documents requested in the subpoena or summons are located, number stamped, photocopied, and produced, in accordance with the advice of counsel. |
|---|

10) Maintaining a separate record of all documents requested by auditors or examiners, or in any subpoena or summons.

PART THREE

EMPLOYEE COMPLIANCE TRAINING PROGRAM

The front line in the war against money laundering and other financial crimes is a financial business's front desk. A comprehensive training program is critical to ensure that the company's employees are knowledgeable and in compliance with all pertinent laws and regulations, while accurately and efficiently serving our customers.

The company has adopted such a training program. Each operations employee (from CSR to Senior Vice President of Operations) that works in a state where Check into Cash conducts MSB activities, each internal auditor, and each home office employee likely to work with or encounter MSB activities, must complete the training program relevant to their position, and must repeat this training at least once every twelve (12) months. This training addresses:

- Identification of transactions which must be reported on a Currency Transaction Report (CTR) under the Bank Secrecy Act (BSA), including monetary levels, cash-in/cash-out transactions, and aggregated transactions.

- Instruction on completion of CTRs, filing deadlines, and instruction on the gathering of information that must be included on a CTR.

- Identification of and record keeping related to monetary instruments and wire transmissions, including applicable monetary levels and instruction on gathering required identification.

- Identification of and record keeping related to prepaid access sales, including instructions on gathering required identification.

- Identification of suspicious activities, including "structuring," use of "smurfs," and other financial crimes, which must be reported on a Suspicious Activity Report (SAR) under the BSA.

- Instruction on completion of SARs, including applicable monetary levels, filing deadlines, requirements barring against disclosure of a SAR filing to customers involved or others, and instruction on the gathering of information required on the SAR.

- Identification of ongoing suspicious activities requiring immediate reporting to law enforcement authorities.

- Identification and prevention of "identity theft," including procedures for confirming customer identification, and practices to ensure integrity of customer information and records.

- Record keeping and maintenance of supporting documentation required by BSA and related regulations.

PART FOUR

INDEPENDENT AUDIT PROGRAM

A compliance system is only as good as it works; and we don't know if it works unless we test it. The law requires that an independent audit of the company's Compliance Program be conducted on a regular basis to ensure that the program is working. Each Check into Cash center offering MSB services shall be examined for AML/MSB compliance no less often than annually, and as often as the Compliance Officer or company management deems necessary after considering the risk of any particular product or center.

A. Audit Personnel:

The independent audit function may be performed by the company's attorneys, public accounting firms, the company's internal auditors or an officer or employee of the Company, so long as the reviewer is not the Company's designated Compliance Officer, Deputy Compliance Officer or a member of the Operations team. Each independent audit shall be conducted by the company's internal auditors, unless the company's management chooses to engage outside auditors from time to time.

Each auditor shall (i) have a thorough knowledge of all relevant laws and regulations related to MSBs, AML and BSA compliance, (ii) shall have successfully completed or repeated the company's AML training program within the past twelve (12) months, and (iii) shall have a thorough knowledge of this Compliance Program and all other relevant company policies.

B. Audit Procedures:

The company's internal audit department has prepared an AML audit module. This module, which may be updated from time to time by the internal audit department, contains a checklist and audit worksheet that assists the auditors in testing the company's compliance with this Compliance Program and applicable law.

The Director of Internal Audit will periodically review the results of the independent audits with the Compliance Officer or Deputy Compliance Officer, and may recommend changes to company policy or this Compliance Program to further enhance this Compliance Program and the company's compliance with applicable law.

OFFICE OF FOREIGN ASSETS CONTROL (OFAC)

As part of the Company's compliance procedures, the Company maintains a separate OFAC Policies and Procedures document which is incorporated herein by reference.

# EXHIBIT 65

# FILED UNDER SEAL

# EXHIBIT 66



Bank of America
Merrill Lynch

October 30, 2013

Creditcorp
(All related subsidiaries)
201 Keith Street, Suite 80
Cleveland, TN 37311
Attention: Bill Lane

RE: Closure of your Bank of America Relationship

Dear Mr. Lane:

Pursuant to your recent conversation with your client manager, Bank of America (the "Bank") has determined that it wishes to close your relationship (accounts and services) in accordance with the deadlines outlined below.

**Deposit accounts:** When you opened your deposit accounts you signed a signature card and received a copy of the booklet which stated the terms and conditions under which your accounts with the Bank would operate. Both the signature card and the booklet provide that you or the Bank may close your accounts at any time, with or without notice.

I am writing to advise you that as of January 21, 2014, we are terminating all your treasury management services with us and closing your Bank accounts ending in the numbers listed on the attachment to this letter.

On and after that date, we will not honor any withdrawals, funds transfers, checks or other transactions with respect to the accounts with the exception of any checks as to which we are a holder in due course and which have not been posted against your accounts prior to the closure date.

It is your responsibility to contact any company that makes electronic debits or credits to your accounts to make other arrangements. In the meantime, we will pay checks and release funds against the accounts only upon our verification of sufficient collected and available funds in the accounts. Any checks or funds transfer requests that will result in a negative collected and available balance in the accounts will be returned.

Shortly after any account is closed, the Bank will send a check to the address of record for the remaining positive balance, unless you and the Bank agree on an alternative method of payment. Any checks or other funds transfer requests received after the closure date will be returned "Account Closed".



Bank of America
Merrill Lynch

October 30, 2013

Creditcorp
(All related subsidiaries)
201 Keith Street, Suite 80
Cleveland, TN 37311
Attention: Bill Lane

RE: Closure of your Bank of America Relationship

Continued

Your obligations under our account agreement, the Treasury Management Terms and Conditions, and any other agreement which arise prior to closure of the accounts will survive the closure.

We thank you for the opportunity to serve your business needs in the past.

Sincerely,

Account Closures Team
Special_Focus_Client_Closures@bankofamerica.com
980.388.1390

"Bank of America Merrill Lynch" is the marketing name for the global banking and global markets businesses of Bank of America Corporation. Lending, derivatives, and other commercial banking activities are performed globally by banking affiliates of Bank of America Corporation, including Bank of America, N.A., member FDIC. Securities, strategic advisory, and other investment banking activities are performed globally by investment banking affiliates of Bank of America Corporation ("Investment Banking Affiliates"), including, in the United States, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Professional Clearing Corp., both of which are registered broker-dealers and members of FINRA and SIPC, and, in other jurisdictions, by locally registered entities. Investment products offered by Investment Banking Affiliates: Are Not FDIC Insured *May Lose Value* Are Not Bank Guaranteed ©2012 Bank of America Corporation.

Bank of America Merrill Lynch

| Entity Name | Account Number |
|---|---|
| C I C Air Charters LLC | |
| Check Into Cash Inc | |
| Check Into Cash Inc | |
| Check Into Cash Inc | |
| Check Into Cash Inc | |
| Check Into Cash of Arizona Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of Colorado Inc | |
| Check Into Cash of Illinois LLC | |
| Check Into Cash of Iowa Inc | |
| Check Into Cash of Kentucky Inc | |
| Check Into Cash of Louisiana Inc | |
| Check Into Cash of Mississippi LLC | |
| Check Into Cash of Missouri Inc | |
| Check Into Cash of Missouri Inc | |
| Check Into Cash of South Carolina Inc | |
| Check Into Cash of South Carolina Inc | |
| Check Into Cash of Tennessee Inc | |
| Check Into Cash of Tennessee Inc | |
| Check Into Cash of Wisconsin LLC | |
| Check Into Cash of Alabama LLC | |
| Check Into Cash of Alabama LLC | |
| Check Into Cash of Florida LLC | |
| Check Into Cash of Idaho LLC | |
| Check Into Cash of Indiana LLC | |
| Check Into Cash of Kansas LLC | |
| Check Into Cash of Oklahoma LLC | |
| Check Into Cash of Oklahoma LLC | |
| Check Into Cash of Texas LLC | |
| Check Into Cash of Virginia LLC | |
| Check Into Cash of Virginia LLC | |
| UU Money Shops of South Carolina LLC | |

"Bank of America Merrill Lynch" is the marketing name for the global banking and global markets businesses of Bank of America Corporation. Lending, derivatives, and other commercial banking activities are performed globally by banking affiliates of Bank of America Corporation, including Bank of America, N.A., member FDIC. Securities, strategic advisory, and other investment banking activities are performed globally by investment banking affiliates of Bank of America Corporation ("Investment Banking Affiliates"), including, in the United States, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Professional Clearing Corp., both of which are registered broker-dealers and members of FINRA and SIPC, and, in other jurisdictions, by locally registered entities. Investment products offered by Investment Banking Affiliates: Are Not FDIC Insured *May Lose Value* Are Not Bank Guaranteed ©2012 Bank of America Corporation.

# EXHIBIT 67



**Check Into Cash, Inc.**
P.O. Box 550 • 201 Keith Street Suite 80
Cleveland, TN 37364-0550
(423) 473-9493 • FAX (423) 473-7286

October 31, 2013

Account Closures Team
Bank of America
101 S. Tryon Street
Charlotte, North Carolina 28255

Re: Letter dated October 30, 2013

To the Account Closures Team:

I am writing in regards to the letter we received from Bank of America dated October 30, 2013 (copy enclosed). To say that we are disappointed in Bank of America's decision to end our relationship is a gross understatement. The relationship between Check Into Cash, Inc ., our shareholders and Bank of America has existed for 20 years.

Over the years, our team has worked with the bank in a very professional and responsible manner and has paid Bank of America millions of dollars in fees and interest. We realize that banks are being sued in California for processing ACH's for unlicensed, arguably illegal, internet payday lenders. We are licensed in all states in which we conduct business. We find it sad that banks servicing these unlicensed companies may have contributed to your decision to cease doing business with those lenders that are state licensed, federally examined, legally compliant companies, such as Check Into Cash.

Our company has approximately 260 locations that use Bank of America banking centers. It has taken years to grow this business with the bank. It will take longer than 90 days to unwind it. In many markets where we use BofA branches, we do not have other banking relationships. We must begin reaching out to banks in an effort to open new accounts. In some markets, we may be forced to look at treasury options such as armored car services. All of this takes time. Multiply that by 260 locations.

While we do not agree with the decision the bank has made to end our relationship, we will work diligently to move our business and close our accounts. However, we ask that the bank recognize our 20 year relationship and the magnitude of what we are being asked to do. This is a daunting task. One for which we are not staffed to achieve within 90 days. We estimate that this project requires a minimum period of nine months to complete.

Over the past 20 years, the bank has promoted itself as our business partner. We hope that BofA will honor that partnership and provide a more reasonable period of time for us to move our treasury business. We will provide updates on our progress, but it will take time.

C.I.C.

You may contact me at 423 473-4062, if you want to discuss this matter.

Sincerely,

William S. Lane
Chief Financial Officer

cc: Mr. Tim McMahan
Mr. Eric Schwarzentraub
Ms. Nancy Chastain

# EXHIBIT 68



Bank of America
Merchant Services

<u>Via Federal Express</u>

February 11, 2014

Check Into Cash, Inc.
201 Keith Street, SW, Suite 80
Cleveland, TN 37311
Attn: Bill Lane

RE: <u>Intent Not To Renew the Master Services Agreement and Merchant Services Bankcard Addendum to Master Services Agreement</u>

Dear Mr. Lane:

This letter is concerning that certain Master Services Agreement and Merchant Services Bankcard Addendum to Master Services Agreement by and among Bank of America, N.A. ("Bank") and Banc of America Merchant Services, LLC ("BAMS") (collectively, "Servicers") and you, dated September 28, 2010 (the "Agreement"). The purpose of this letter is to advise you that Servicers do not intend to renew the Agreement upon expiration of the current term, which ends September 28, 2014.

We will be providing you with written termination notice at least ninety (90) days prior to the expiration of the current contract term. Though the Agreement doesn't expire until September, we wanted to provide you with ample notice so that you can begin planning transitioning your processing to an alternative provider.

We thank you for your business over the years and wish your organization continued success. If you have any questions related to the foregoing, please call me at [redacted]

Very truly yours,

[redacted]

Senior Credit Manager
Bank of America Merchant Services

Check Into Cash Inc Notice of Non Renewal 021114.docx

# EXHIBIT 69



**Check Into Cash, Inc.**
P.O. Box 550 • 201 Keith Street, SW Suite 80
Cleveland, TN 37364-0550
(423) 473-9493 • FAX (423) 473-7286

April 3, 2014

[REDACTED]
Bank of America
550 West Main Street
Suite 800
Knoxville, Tennessee 37902

Re: Letter dated October 31, 2013

Eric:

I am writing as a follow up to my letter dated October 31, 2013 regarding the closure of our accounts with Bank of America. In my letter, I stated that the effort to move our business from Bank of America would require a minimum of nine months. The bank extended the target closure date from January 21, 2014 to April 21, 2014, providing approximately five months to move the business.

After we received your original letter, we hired a full time employee to move the business. We have made significant progress. At the date of your letter, our company utilized 258 of your bank branches. We have submitted paperwork to other banks related to 242 of the locations. To date we have received paperwork back on 24 of the 242. As soon as the banks have coordinated with the local branch, we move to that bank.

We have obviously made progress in moving our business. However, once we submit the paperwork to the other banks, we can only move as quickly as they do. So at this point we are waiting on the other banks to process the paperwork and introduce us to the branch manager. Since we are waiting on banks for the remaining 218 locations (242 – 24), we need additional time beyond April 21, 2014.

Eric, please understand that it is not a matter of us allocating resources to move this along faster. We are waiting on the other banks. We are committed to moving our business away from Bank of America as quickly as possible. This has been a significant distraction to us and we are ready to move on. However, we are playing a waiting game at this point.

We request that the bank extend the termination date from April 21, 2014 to June 30, 2014. We will close accounts during that period as soon as we can. Regarding the 16 locations for which we have not submitted paperwork, we are making other arrangements, which will not slow down the move.

Please call me if you have any questions.

Sincerely,

Bill

William S. Lane
Chief Financial Officer

C.I.C.

# EXHIBIT 70



Bank of America
Merrill Lynch

April 3, 2014

Creditcorp
(All related subsidiaries)
201 Keith Street, Suite 80
Cleveland, TN 37311
Attention: Bill Lane, CFO

RE: Closure of your Bank of America Relationship

Dear Mr. Lane:

Bank of America (the "Bank") sent you a letter dated November 14, 2013, informing you that we are closing your Bank of America deposit accounts, effective April 21, 2014. You requested an extension of the closure of your Bank of America accounts numbered below. This letter is to notify you that the Bank has agreed to grant your request and will close the accounts listed below, effective June 30, 2014.

We thank you for the opportunity to serve your business needs in the past.

Sincerely,

Account Closures Team
Special_Focus_Client_Closures@BankofAmerica.com
980.388.1390

"Bank of America Merrill Lynch" is the marketing name for the global banking and global markets businesses of Bank of America Corporation. Lending, derivatives, and other commercial banking activities are performed globally by banking affiliates of Bank of America Corporation, including Bank of America, N.A., member FDIC. Securities, strategic advisory, and other investment banking activities are performed globally by investment banking affiliates of Bank of America Corporation ("Investment Banking Affiliates"), including, in the United States, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Professional Clearing Corp., both of which are registered broker-dealers and members of FINRA and SIPC, and, in other jurisdictions, by locally registered entities. Investment products offered by Investment Banking Affiliates: Are Not FDIC Insured *May Lose Value* Are Not Bank Guaranteed ©2012 Bank of America Corporation.

| **Entity Name** | **Account Number** |
| --- | --- |
| C I C Air Charters LLC | |
| Check Into Cash Inc | |
| Check Into Cash Inc | |
| Check Into Cash Inc | |
| Check Into Cash Inc | |
| Check Into Cash of Arizona Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of California Inc | |
| Check Into Cash of Colorado Inc | |
| Check Into Cash of Illinois LLC | |
| Check Into Cash of Iowa Inc | |
| Check Into Cash of Kentucky Inc | |
| Check Into Cash of Louisiana Inc | |
| Check Into Cash of Mississippi LLC | |
| Check Into Cash of Missouri Inc | |
| Check Into Cash of Missouri Inc | |
| Check Into Cash of South Carolina Inc | |
| Check Into Cash of South Carolina Inc | |
| Check Into Cash of Tennessee Inc | |
| Check Into Cash of Tennessee Inc | |
| Check Into Cash of Wisconsin LLC | |
| Check Into Cash of Alabama LLC | |
| Check Into Cash of Alabama LLC | |
| Check Into Cash of Florida LLC | |
| Check Into Cash of Idaho LLC | |
| Check Into Cash of Indiana LLC | |
| Check Into Cash of Kansas LLC | |
| Check Into Cash of Oklahoma LLC | |
| Check Into Cash of Oklahoma LLC | |
| Check Into Cash of Texas LLC | |
| Check Into Cash of Virginia LLC | |
| Check Into Cash of Virginia LLC | |
| UU Money Shops of South Carolina LLC | |

"Bank of America Merrill Lynch" is the marketing name for the global banking and global markets businesses of Bank of America Corporation. Lending, derivatives, and other commercial banking activities are performed globally by banking affiliates of Bank of America Corporation, including Bank of America, N.A., member FDIC. Securities, strategic advisory, and other investment banking activities are performed globally by investment banking affiliates of Bank of America Corporation ("Investment Banking Affiliates"), including, in the United States, Merrill Lynch, Pierce, Fenner & Smith Incorporated and Merrill Lynch Professional Clearing Corp., both of which are registered broker-dealers and members of FINRA and SIPC, and, in other jurisdictions, by locally registered entities. Investment products offered by Investment Banking Affiliates: Are Not FDIC Insured *May Lose Value* Are Not Bank Guaranteed ©2012 Bank of America Corporation.

# EXHIBIT 71



**Check Into Cash, Inc.**
P.O. Box 550 • 201 Keith Street SW Suite 80
Cleveland, TN 37364-0550
(423) 479-2400 • FAX (423) 559-1099

September 12, 2014

Bank of America Merchant Services
150 North College Street, 15th Floor
Charlotte, NC 28202

To Whom It May Concern:

Per your letter of termination, we have been deligently working to move our business relationship to another provider.

We have successfully migrated our banking relationship from Bank of America and have been working to move our merchant processing. We have over 1,000 locations for which we have been working to place our merchant processing.

During this transition, one of our key employees that was heading up this process has left the company further complicating us being able to meet your deadline of September 28, 2014.

While we are making progress in moving the merchant services to another processor, we can not say with certainty that we will be able to transition completely by the end of the month.

Therefore, I respectfully request an extension until October 31, 2014 so that we may successfully complete the process of migration to our new provider.

Sincerely,

William S Lane
Chief Financial Officer
Check into Cash, Inc.

C.I.C.

# EXHIBIT 72



Bank of America
Merchant Services

**Via Federal Express**

September 18, 2014

Check Into Cash, Inc.
201 Keith Street, SW, Suite 80
Cleveland, TN 37311
Attn: Bill Lane

RE: Termination of Master Services Agreement and Merchant Services Bankcard Addendum to Master Services Agreement

Dear Mr. Lane:

This letter is related to the Master Services Agreement and Merchant Services Bankcard Addendum to Master Services Agreement by and among Bank of America, N.A. and Banc of America Merchant Services, LLC (collectively, "Servicers") and you, dated September 28, 2010 (the "Agreement"). Specifically, our letter dated June 11, 2014, in which we provided notice of termination of the Agreement, effective September 28, 2014.

Further to our recent discussions, as of September 28, 2014, the Agreement will terminate with respect to all Check Into Cash, Inc. ("CIC") Merchant Identification Numbers ("MIDS") other than those set forth on the Schedule 1 attached hereto and incorporated herein by reference (the "Extended MIDS"). We will continue to provide CIC with services under the Agreement for the Extended MIDS until October 31, 2014. Therefore, the Agreement will be terminated, in its entirety, on October 31, 2014.

As agreed, CIC will continue to leave a designated deposit account open that we can continue to debit for trailing obligations that arise or accrue under the Agreement.

We thank you for your business over the years and wish your organization continued success. If you have any questions related to the foregoing, please call me at

Very truly yours,

Senior Credit Manager
Bank of America Merchant Services

Check Into Cash Inc Termination Follow Up 09-18-14.docx



Bank of America
Merchant Services

**SCHEDULE 1**
**EXTENDED MIDS**

Check Into Cash Inc Termination Follow Up 09-18-14.docx

CIC000392

# FILED UNDER SEAL

# EXHIBIT 73



March 27, 2014

Tim McMahan
Check Into Cash of Texas, Inc.
DBA Check Into Cash
201 Keith Street SW, Suite 80
Cleveland, TN 37311-5867

Re: Termination of Deposit and Treasury Services Relationship

Dear Mr. McMahan

Providing quality service to our clients has been one of the keys to our success at Capital One, National Association ("Capital One"). Toward that end, we are committed to understanding, and satisfying, the needs of our clients. Unfortunately, difficult decisions are sometimes necessary in order to accomplish these important goals. Capital One has made the decision to exit the business of providing commercial banking services to check cashers and related businesses. We consistently review business plans and initiatives across the company to ensure that they are aligned with our strategic goals and future plans. We took a range of factors into consideration and determined that this business no longer fits within the Bank's strategic priorities.
Based on the foregoing, please be advised that we are exercising our right, pursuant to our Rules Governing Deposit Accounts, to terminate your account relationship, effective July 30, 2014 (the "Termination Date").
Please make arrangements to close the accounts listed on the attached schedule (the "Accounts"), and have any direct deposits and/or automatic debits re-directed, by the Termination Date. If the Accounts are not closed by the Termination Date, we will close them and forward bank checks for the balance in each account to you.

Also, in conjunction with the above, we are hereby notifying you, pursuant to the Treasury Management Master Service Agreement ("MSA") between your company and Capital One, that the treasury services associated with the Accounts (as well as any personal accounts that may be linked to these services), each such service represented by a corresponding Addendum to the MSA, shall be terminated as of the Termination Date.

If you have any questions, please feel free to contact us.

or

Respectfully,
CAPITAL ONE, NATIONAL ASSOCIATION

Relationship Manager

# EXHIBIT 74



FIRSTMERIT BANK
Now part of The Huntington National Bank

10/11/2016

Check Into Cash Of Michigan Llc
P O Box 550
201 Keith St Sw, Ste. 80
Cleveland Tn 37364-0550

Regarding
Deposit Account(s) ending in: [redacted]

Dear Check Into Cash Of Michigan Llc

From time to time, we exit banking relationships with our customers based on select circumstances. We are writing to inform you that we will be closing the above-referenced deposit accounts(s) on 11/14/2016. We have decided to close your account because the business is in an industry in which we do not service, such as payday lenders.

Please note, on 11/4/2016 restrictions will be placed on your account(s) that will block any additional activity on these account(s), including ATM/Debit Card and internet banking transactions. Prior to this date, transaction(s) will be paid against the balance available for withdrawal. Please begin limiting your activity immediately. If you have any automatic payments to or from your account(s), we ask that you make different arrangements and discontinue those payments or if a courier makes deliveries to FirstMerit on your behalf, we ask that you discontinue those shipments.

The remaining balance in the account(s), if any, will be sent in the form of a cashier's check to the account statement address on file at the time of closing. Should your account(s) have a negative balance on the closing date, FirstMerit will pursue collection efforts. Collection attempts may include reporting the account(s) to ChexSystems, retaining a collection agency, or pursuing legal action.

For your benefit, please make the necessary arrangements at another financial institution for your future banking needs. Although this decision is final, you may have additional questions or concerns that you would like to discuss. If so, please feel free to call [redacted].

Sincerely,
FirstMerit Bank
Member FDIC

# FILED UNDER SEAL

# EXHIBIT 75

CHASE

November 12, 2013

Check Into Cash of Illinois LLC: [REDACTED]

Check Into Cash of Michigan [REDACTED]

Check Into Cash of Texas [REDACTED]

Creditcorp of Ohio LLC: [REDACTED]

Check Into Cash of Arizona Inc: [REDACTED]

Check Into Cash of Wisconsin LLC: [REDACTED]

Check Into Cash of Louisiana Inc: [REDACTED]

Check Into Cash of Oklahoma LLC: [REDACTED]

Check Into Cash of Indiana LLC: [REDACTED]

Check Into Cash of Ohio LLC: [REDACTED]

Check Into Cash of Kentucky LLC: [REDACTED]

c/o Check Into Cash

210 East Keith Street

Cleveland, TN 37311

ATTENTION: Bill Lane, CFO

Dear Bill:

This is to confirm our conversation on September 25, 2013 that, for the reasons discussed, JPMorgan Chase Bank, N.A. (the "Bank") wishes Check Into Cash and those entities that are affiliated with Check Into Cash, including without limitation Creditcorp of Ohio LLC, Check Into Cash of Illinois LLC, Check Into Cash of Michigan LLC, Check Into Cash of Texas LLC, Check Into Cash of Arizona LLC, Check Into Cash of Wisconsin LLC, Check Into Cash of Louisiana LLC, Check Into Cash of Oklahoma LLC, Check Into Cash of Indiana LLC, Check Into Cash of Ohio LLC and Check Into Cash of Kentucky LLC (collectively the "Company") to transfer their banking relationship to another financial institution and the Company agrees to effectuate such transfer.

Attached hereto as Exhibit A is a list of all of the affected Company accounts in Commercial Banking of which the Bank currently is aware (the "Accounts"). The Bank also provides certain services in connection with such Accounts (collectively the "Services"). In order to enable an orderly transition to occur, the Bank is willing to continue to maintain these Accounts and to provide the Services until February 12, 2014 (the "Account Termination Date"), subject to extension by written notice from the Bank to the Company. The Bank will continue to require the Company to: (i) observe all of the terms,

conditions and agreements governing the Accounts and the Services and (ii) maintain sufficient collected funds in each of the Accounts to cover all items and charges.

Notwithstanding the foregoing, the Bank reserves the right to ask questions, otherwise investigate and/or reject or otherwise decline to consummate any transaction involving the Accounts and the Services with which it is uncomfortable. The Bank is not required to cover overdrafts and the Bank will likely return checks and/or decline to consummate funds transfers or other transactions which will result in any such overdrafts.

Please be advised that the Accounts and the Services will be terminated and closed after 5:00pm ET on the Account Termination Date. Any items presented for payment on the Accounts and not paid by that date will be returned unpaid. Please:

- do not deposit checks to the Accounts within five (5) business days of the Account Termination Date or any earlier date that you close the Accounts.
- arrange to cause any Automated Clearing House (ACH) deposits or transfers to the Accounts to be terminated prior to the Account Termination Date.

If the Company wishes to avoid unnecessary disruption of its cash flow and business, it is essential that it act promptly to open accounts with another financial institution and transfer its business before such date.

If the Accounts have not yet been closed, then upon the Account Termination Date (or, if there has been recent activity in the account, as soon as reasonably possible following the Account Termination Date) the Bank will, at the Company's risk, mail to the Company at the address set forth above checks for the balance of the Company's Accounts, less any service charges assessed to the Accounts or other amounts outstanding such as any overdrafts.

Notwithstanding the Bank's intent to allow the Accounts to remain open and to provide the Services until the Account Termination Date, the Bank reserves the right to close the Accounts and terminate the Services at an earlier time consistent with the terms and conditions governing the Accounts and the Services. The closing of the Accounts and the termination of the Services shall not affect the Company's liabilities to the Bank arising prior to, or on, such closing or termination, all of which shall continue in full force and effect.

If you have any questions or comments, please feel free to call.

Very Truly Yours,

JPMORGAN CHASE BANK, N.A.

ITS: Senior Vice President

Exhibit A

Check Into Cash of Illinois [REDACTED]

Check Into Cash of Michigan [REDACTED]

Check Into Cash of Texas LLC: [REDACTED]

Creditcorp of Ohio LLC: [REDACTED]

Check Into Cash of Arizona Inc: [REDACTED]

Check Into Cash of Wisconsin [REDACTED]

Check Into Cash of Louisiana Inc: [REDACTED]

Check Into Cash of Oklahoma LLC: [REDACTED]

Check Into Cash of Indiana LLC: [REDACTED]

Check Into Cash of Ohio LLC: [REDACTED]

Check Into Cash of Kentucky LLC: [REDACTED]

# EXHIBIT 76

Our company had a significant treasury relationship with Chase for 16 years. On September 25, 2013, we were notified that the bank was terminating our relationship. The bank had regulatory issues and it was indicated that as a result of settling the matters, the bank agreed to exit relationships with companies in the small loan (payday) industry.

On December 21, 2016 at approximately 3:30 p.m., I called [redacted] with Chase, [redacted]. [redacted] was our former relationship manager at the bank. The purpose of my call was to see if there is an opportunity to revive our relationship with the bank, as a result of the recent presidential election. I mentioned that based on the bump in bank stock prices and increased value in bonds issued by small loan companies such as ours, the market and public clearly feel that regulation and regulatory pressure will decrease.

[redacted] was open to inquiring within the bank to see if the bank would be open to working with our company, due to anticipated changes in the political landscape. During the conversation, [redacted] mentioned that the decision to exit the relationship was not theirs (I understood to mean not the bank's). [redacted] also mentioned that when Chase exited doing business with our industry, it was also directed to exit business relationships with other companies that were in the firearms and student loan markets.

It seemed clear from our conversation, that [redacted] felt the perceived pro-business view of President-elect Trump made it worthwhile to inquire internally to see if the bank would be open to doing business with our company.

William S. Lane

Chief Financial Officer

Check Into Cash, Inc.

December 22, 2016

# EXHIBIT 77



CHECK INTO
CA$H
One Stop Money Shop

**Check Into Cash, Inc.**
P.O. Box 550 • 201 Keith Street, SW Suite 80
Cleveland, TN 37364-0550
(423) 473-9493 • FAX (423) 473-7286

November 19, 2013

Mr. Tom Reinhold
JPMorgan Chase & Co.
8044 Montgomery road
Mail Code OH3-4107
Cincinnati, Ohio 45236

Dear Tom:

I am writing in regards to the letter we received from JPMorgan Chase & Co. dated November 12, 2013 (copy enclosed). We are certainly disappointed in Chase's decision to end our relationship of 16 years.

Over the years, our team has worked with the bank in a very professional and responsible manner and has paid a significant amount of fees to Chase. We realize that online lenders have received negative press over the past several months for making what some have called illegal loans. That is not us. We are licensed in all states in which we conduct business. We find it sad that such lenders may have contributed to Chase's decision to cease doing business with those lenders that are state licensed, federally examined, legally compliant companies, such as Check Into Cash.

Our company has approximately 120 locations that use Chase's banking centers. It has taken years to grow this business with the bank. It will take longer than 90 days to unwind it. In many markets where we use Chase branches, we do not have other banking relationships. We must begin reaching out to banks in an effort to open new accounts. In some markets, we may be forced to look at treasury options such as armored car services. All of this takes time. Multiply that by 120 locations.

While we do not agree with the decision the bank has made to end our relationship, we will work diligently to move our business and close our accounts. We do appreciate the bank's willingness to consider extending the "Account Termination Date". We ask that the bank recognize our 16 year relationship and the magnitude of what we are being asked to do. This is a daunting task. One for which we are not staffed to achieve within 90 days. We estimate that this project requires a minimum period of nine months to complete.

Over the past 16 years, the bank has promoted itself as our business partner. We hope that Chase will honor that partnership and provide a more reasonable period of time for us to move our treasury business. We will provide updates on our progress, but it will take time.

You may contact me at 423 473-4062, if you want to discuss this matter.

Sincerely,

Bill

William S. Lane
Chief Financial Officer

cc: Mr. Tim McMahan Vice President Treasury
Mr. Greg Madson Chief Legal Officer

C.I.C.

# EXHIBIT 78



December 27, 2013

Check Into Cash of Illinois LLC: [REDACTED]

Check Into Cash of Michigan LLC: [REDACTED]

Check Into Cash of Texas LLC: [REDACTED]

Creditcorp of Ohio LLC: [REDACTED]

Check Into Cash of Arizona Inc: [REDACTED]

Check Into Cash of Wisconsin LLC: [REDACTED]

Check Into Cash of Louisiana Inc: [REDACTED]

Check Into Cash of Oklahoma LLC: [REDACTED]

Check Into Cash of Indiana LLC: [REDACTED]

Check Into Cash of Ohio [REDACTED]

Check Into Cash of Kentucky LLC: [REDACTED]

c/o Check Into Cash

201 East Keith Street

Cleveland, TN 37311

ATTENTION: Bill Lane, CFO

Dear Bill:

This is to confirm our conversation on September 25, 2013 that, for the reasons discussed, JPMorgan Chase Bank, N.A. (the "Bank") wishes Check Into Cash and those entities that are affiliated with Check Into Cash, including without limitation Creditcorp of Ohio LLC, Check Into Cash of Illinois LLC, Check Into Cash of Michigan LLC, Check Into Cash of Texas LLC, Check Into Cash of Arizona LLC, Check Into Cash of Wisconsin LLC, Check Into Cash of Louisiana LLC, Check Into Cash of Oklahoma LLC, Check Into Cash of Indiana LLC, Check Into Cash of Ohio LLC and Check Into Cash of Kentucky LLC (collectively the "Company") to transfer their banking relationship to another financial institution and the Company agrees to effectuate such transfer.

Attached hereto as Exhibit A is a list of all of the affected Company accounts in Commercial Banking of which the Bank currently is aware (the "Accounts"). The Bank also provides certain services in connection with such Accounts (collectively the "Services"). In order to enable an orderly transition to occur, the Bank is willing to continue to maintain these Accounts and to provide the Services until June 30, 2014 (the "Account Termination Date"), subject to extension by written notice from the Bank to the Company. The Bank will continue to require the Company to: (i) observe all of the terms, conditions and

agreements governing the Accounts and the Services and (ii) maintain sufficient collected funds in each of the Accounts to cover all items and charges.

Notwithstanding the foregoing, the Bank reserves the right to ask questions, otherwise investigate and/or reject or otherwise decline to consummate any transaction involving the Accounts and the Services with which it is uncomfortable. The Bank is not required to cover overdrafts and the Bank will likely return checks and/or decline to consummate funds transfers or other transactions which will result in any such overdrafts.

Please be advised that the Accounts and the Services will be terminated and closed after 5:00pm ET on the Account Termination Date. Any items presented for payment on the Accounts and not paid by that date will be returned unpaid. Please:

- do not deposit checks to the Accounts within five (5) business days of the Account Termination Date or any earlier date that you close the Accounts.
- arrange to cause any Automated Clearing House (ACH) deposits or transfers to the Accounts to be terminated prior to the Account Termination Date.

If the Company wishes to avoid unnecessary disruption of its cash flow and business, it is essential that it act promptly to open accounts with another financial institution and transfer its business before such date.

If the Accounts have not yet been closed, then upon the Account Termination Date (or, if there has been recent activity in the account, as soon as reasonably possible following the Account Termination Date) the Bank will, at the Company's risk, mail to the Company at the address set forth above checks for the balance of the Company's Accounts, less any service charges assessed to the Accounts or other amounts outstanding such as any overdrafts.

Notwithstanding the Bank's intent to allow the Accounts to remain open and to provide the Services until the Account Termination Date, the Bank reserves the right to close the Accounts and terminate the Services at an earlier time consistent with the terms and conditions governing the Accounts and the Services. The closing of the Accounts and the termination of the Services shall not affect the Company's liabilities to the Bank arising prior to, or on, such closing or termination, all of which shall continue in full force and effect.

If you have any questions or comments, please feel free to call.


Very Truly Yours,

JPMORGAN CHASE BANK, N.A.

Its: Senior Vice President

Exhibit A

Check Into Cash of Illinois LLC:[redacted]

Check Into Cash of Michigan LLC:[redacted]

Check Into Cash of Texas LLC:[redacted]

Creditcorp of Ohio LLC:[redacted]

Check Into Cash of Arizona Inc:[redacted]

Check Into Cash of Wisconsin [redacted]

Check Into Cash of Louisiana Inc:[redacted]

Check Into Cash of Oklahoma LLC:[redacted]

Check Into Cash of Indiana LLC:[redacted]

Check Into Cash of Ohio [redacted]

Check Into Cash of Kentucky [redacted]

# EXHIBIT 79



February 14, 2014

Check Into Cash of Illinois LLC: [REDACTED]

Check Into Cash of Michigan [REDACTED]

Check Into Cash of Texas [REDACTED]

Creditcorp of Ohio [REDACTED]

Check Into Cash of Arizona [REDACTED]

Check Into Cash of Wisconsin LLC: [REDACTED]

Check Into Cash of Louisiana Inc: [REDACTED]

Check Into Cash of Oklahoma [REDACTED]

Check Into Cash of Indiana LLC: [REDACTED]

Check Into Cash of Ohio LLC: [REDACTED]

Check Into Cash of Kentucky [REDACTED]

c/o Check Into Cash

201 East Keith Street

Cleveland, TN 37311

ATTENTION: Bill Lane, CFO

Dear Bill:

Reference is made to our letter dated December 27, 2013, a copy of which is attached hereto (the "Termination Letter"). Further reference is made to that certain Agreement for Deposits of Third Party Checks dated June 20, 2012, a copy of which also is attached hereto ("Agreement for Deposits"). All capitalized terms not otherwise defined herein have the meaning set forth in the Termination Letter.

Please be advised of the following:

- The Bank terminates immediately the Agreement for Deposits. Please immediately discontinue depositing into the Accounts checks payable to various payees.

JPMorgan Chase Bank, N.A. • Commercial Banking • OH3-4110, 8044 Montgomery Road, Suite 350, Cincinnati, OH 45236

Telephone: 513 985 5052 • Facsimile: 513 985 5025

- The Bank is further terminating all Accounts and Services effective 5:00 PM EST on February 21, 2014. Due to the Bank's belief that CIC is engaged in activities that are inconsistent with the Bank's policies, the Bank is no longer willing to maintain the Accounts and Services until June 30, 2014, as it had previously indicated in the Termination Letter.

All other terms and conditions of the Termination Letter remain applicable to all of the Accounts.

Very Truly Yours,

JPMORGAN CHASE BANK, N.A.

ITS: ________________

C:\Users\e013740\AppData\Local\Microsoft\Windows\Temporary Internet Files\Content.Outlook\8PLH4CP9\Accelerated Exit Letter 02142014.docx

# EXHIBIT 80



**Check Into Cash, Inc.**
P.O. Box 550 • 201 Keith Street, SW Suite 80
Cleveland, TN 37364-0550
(423) 473-9493 • FAX (423) 473-7286

**VIA EMAIL**

February 19, 2014

[redacted]
JPMorgan Chase & Co.
8044 Montgomery road
Mail Code OH3-4107
Cincinnati, Ohio 45236

Dear Tom:

I am writing in regards to your letter dated February 14, 2014, regarding Chase accelerating the termination of our various bank accounts to February 21, 2014 (copy enclosed). This letter was sent to us after hours on Friday. With Monday being a bank holiday, you gave us only four banking days' notice to deal with this extremely distressing situation. As you yourself volunteered when we spoke on Saturday after my repeated calls, Chase fully recognizes that its actions will have a detrimental impact on our business.

We have been discussing an orderly plan to close our Chase accounts over a reasonable timeframe since at least last September. In your letter to us of December 27, 2013, you memorialized our agreement that we would close all of our Chase accounts not later than June 30, 2014. We have been diligently working towards that agreed timeline. As you were already aware, moving a significant number of accounts to new banks takes a great deal of time and effort. As you were already aware, we planned for this undertaking by hiring a dedicated employee, one with banking experience, whose sole job is to work with banks in moving those accounts.

To date we have informed you of two accounts that can be closed. We have also submitted paperwork to other banks for 85 of the 115 locations that we currently bank with Chase. We have been moving forward in good faith to transition these accounts in a reasonable and appropriate way, and we have kept you informed of that progress.

We have certainly moved diligently, professionally, appropriately and in good faith to complete the task on the agreed timeline. We cannot, however, control the pace of the other banks processing our paperwork. **We need time for the banks to process the requests.** Our written agreement to move the accounts by June 30 gives us that time.

C.I.C.

In the midst of our ongoing efforts to move the accounts on the agreed timeline, you called me on Thursday. You informed me for the first time that Chase believed we had not been responsive to an earlier request for information about a single check cashing transaction that took place last year. This was the first time you had ever made me aware that Chase considered this matter open and unsatisfactory. It was in that call that you informed me these "Compliance problems" had caused Chase to decide to close our accounts early, perhaps as early as March 15. I told you in no uncertain terms that March 15 was unacceptably short and would cause a great disruption and significant damage to our business operations. It is without doubt that you were aware at least as early as February 13 that a March 15 date would cause a detrimental impact to our business. I asked you to arrange a call with a decision maker that would have some influence over this accelerated timeline.

Much to our frustration, you were not able to arrange such a call. To date, and despite my many and continuing requests, I have never been shown the courtesy of a conversation with any decision maker at your bank that has any influence over this issue. Instead, on the morning of February 14, you called back and told me the final decision was to close our accounts early, and again cited compliance issues as the reason.

I called you back that same morning in a call that included our VP of Compliance, our VP of Treasury and our Chief Legal Officer. We were all shocked to hear the bank's position that the compliance issue was our supposed unwillingness to provide information that the bank had requested. To the contrary, we discussed with you a November 27, 2013 email in which you requested information about a single large check cashing transaction (a transaction for which we had filed the appropriate CTR with the federal government). We discussed that, in response to your email, our VP of Compliance called you and discussed the matter with you the very next day, November 28, 2013. She invited you to have the bank's compliance group contact her if they had any more questions or needed any more information. She never heard from you, them, or anyone else with Chase. On that Friday morning call, we asked again that you have the bank's compliance team contact her for any more information they may need, and I asked you again if you could arrange a call for me with a decision maker to discuss the timeline.

Once again, we never heard from your compliance team. Once again, you did not arrange a call with a decision maker. Instead, to my shock and frustration, the response I received from you was the February 14 letter informing us that the bank was closing our accounts as of February 21! This letter was delivered at the close of business on Friday, February 14. With Monday, February 17 being a bank holiday, you graced us with four banking days' notice of this sudden, unreasonable and damaging change to our written understanding. And again, you yourself volunteered on our Saturday phone call that you recognize this decision by Chase is detrimental to our business.

[redacted], I do not know what has changed regarding the bank's view of our relationship and the timing of its termination on June 30, 2014, but our commitment to have the accounts moved and ready to close by that date has not changed. We have been moving forward under our written arrangement, in good faith and with your involvement and blessing. The process is moving forward. **However, arbitrarily and unilaterally moving the termination date forward from June 30 to February 21 creates a significant hardship for our business and conflicts with our written arrangement. It is detrimental to our**

**business and will cause us to incur significant damages. Accelerating the termination date also creates significant risk for our center employees, our customers, and ultimately for Chase.** From February 21st to the point we convert a location to another bank, our centers will be forced to hold much larger balances of cash. Larger cash balances in the centers increases the risk of theft and the risk of injury to our employees and customers. **These risks are being directly and proximately caused by Chase's unreasonable position.** This increased risk can be avoided by delaying the termination of our accounts.

Since our conversation last Thursday, I have repeatedly asked to speak to someone that is a decision maker in this situation. To date, that request has been ignored. Therefore, I am left no alternative but to ask our Chief Legal Officer to pursue legal action against the bank. He and I have discussed this matter at length. With time running out on us, and Chase's continuing unwillingness to even have a conversation with us about this important matter, I have asked him to proceed. I understand he has a plan developing to seek temporary but extraordinary equitable relief, to be followed by a claim for appropriate damages.

[redacted] this can all be avoided by simply working with us to achieve an orderly exit to our business relationship. We have tried to be reasonable, and we will continue to be reasonable in discussing with you an exit timeline shorter than June 30. But we need Chase to be reasonable with us.

Call me if the bank wants to take a more reasonable position and afford us a more reasonable time to move our business.

Sincerely,

Bill

William S. Lane

Chief Financial Officer

# EXHIBIT 81



February 20, 2014

Check Into Cash of Illinois LLC: 1[redacted]

Check Into Cash of Michigan[redacted]

Check Into Cash of Texas[redacted]

Creditcorp of Ohio LLC[redacted]

Check Into Cash of Arizona Inc[redacted]

Check Into Cash of Wisconsin[redacted]

Check Into Cash of Louisiana Inc[redacted]

Check Into Cash of Oklahoma LLC[redacted]

Check Into Cash of Indiana LLC[redacted]

Check Into Cash of Ohio LLC[redacted]

Check Into Cash of Kentucky[redacted]

c/o Check Into Cash

201 East Keith Street

Cleveland, TN 37311

ATTENTION: Bill Lane, CFO

Dear Bill:

Reference is made to our letters dated December 27, 2013 and February 14, 2014 (together the "Termination Letter"). All capitalized terms not otherwise defined herein have the meaning set forth in the Termination Letter.

Please be advised that the Bank will not terminate the Accounts and Services on February 21, 2014. However, the termination of the Agreement for Deposits of Third Party Checks remains effective.

Absent unusual circumstances regarding CIC's activities with respect to the Accounts, the Bank will provide fourteen (14) calendar days notice prior to terminating the Accounts and Services. The Bank anticipates that CIC will transition the Accounts and Services away from the Bank with a heightened sense of urgency, and further anticipates that CIC will take action to avoid the conduct of any transactions in the Accounts of an unusual nature.

JPMorgan Chase Bank, N.A. • Commercial Banking • OH3-4110, 8044 Montgomery Road, Suite 350, Cincinnati, OH 45236
Telephone: 513 985 5052 • Facsimile: 513 985 5025

All other terms and conditions of the Termination Letter remain applicable to all of the Accounts.

Very Truly Yours,

JPMORGAN CHASE BANK, N.A.

ITS: Market Manager

# EXHIBIT 82

CHASE

June 10, 2014

Check Into Cash of Illinois LLC: [redacted]

Check Into Cash of Michigan LLC: [redacted]

Check Into Cash of Texas LLC: 7[redacted]

Creditcorp of Ohio [redacted]

Check Into Cash of Arizona Inc: [redacted]

Check Into Cash of Wisconsin LLC: [redacted]

Check Into Cash of Louisiana Inc: [redacted]

Check Into Cash of Oklahoma LLC: [redacted]

Check Into Cash of Indiana LLC: [redacted]

Check Into Cash of Ohio [redacted]

Check Into Cash of Kentucky LLC: [redacted]

c/o Check Into Cash

201 East Keith Street

Cleveland, TN 37311

ATTENTION: Bill Lane, CFO

Dear Bill:

Reference is made to our letters dated December 27, 2013, February 14, 2014 and February 20, 2014 (together the "Termination Letter"). All capitalized terms not otherwise defined herein have the meaning set forth in the Termination Letter.

Thank you for your continued progress updates. Reference is made to your email message to Tom Reinhold dated May 27, 2014. In that message you indicated that you would continue to use selected Chase branches only through June 6, 2014, and asked that the Accounts remain open through June 25, 2015.

Please be advised that the Bank, in accordance with your request, will terminate the Accounts and Services on June 26, 2014.

The Bank anticipates that CIC will no longer initiate any transactions in the Accounts.

All other terms and conditions of the Termination Letter remain applicable to all of the Accounts.

Very Truly Yours,

JPMORGAN CHASE BANK, N.A.

ITS: Vice President

# EXHIBIT 83





November 10, 2016

VIA E-MAIL AND OVERNIGHT DELIVERY

Check Into Cash Inc.
201 Keith Street SW Suite #80
Cleveland, TN 37311
Attention: William S. Lane, CFO

Re: Notice of account closure and new account management

Dear Mr. Lane:

In accordance with your Deposit Account Terms and Conditions ("Account Terms") and U.S. Bank Services Terms and Conditions ("TM Terms"), please be advised that U.S. Bank has elected to close all accounts with Check Into Cash Inc. as referenced in the attached Exhibit A.

To provide ample time for you to obtain alternative banking services, and make this process as convenient for you as possible, the effective date of closing will be February 15, 2017. Accordingly, unless you choose to close your accounts prior to that time, effective February 15, 2017, your accounts will automatically close and the related treasury management services will cease. Please be aware that when your accounts are closed, you will no longer be able to conduct any transactions using these accounts, including making deposits into the accounts or payments out of the accounts. Any/all outstanding checks presented against the accounts after closure will be returned as unpaid. All SinglePoint treasury management products and services will cease on the February 15, 2017 closure date.

You may close your accounts prior February 15, 2017 by notifying me in writing. The collected balances in your accounts, after satisfying any outstanding service or other outstanding obligations that may be due us, if any, will be available as provided in the Account Terms. Alternatively, if we do not hear from you prior to February 15, 2017, we will mail any remaining balances to you in accordance with the Account Terms. U.S.

Bank reserves all rights available to it under the Account Terms, the TM Terms or otherwise.

Please be advised that the existing commercial banking relationship for Check Into Cash Inc. has been transferred to my attention within U.S. Bank's Special Assets Group for management. My contact information follows:

One U.S. Bank Plaza, SL-MO-T7CP
St. Louis, MO 63101
Direct phone: (314) 418-8503
E-mail: roger.p.gross@usbank.com

All correspondence or contact related to the commercial banking relationship should be directed to my attention.

Finally, all requests for new accounts or additional or modified treasury management products or services (whether pending or otherwise) will not be considered. This notice is provided to you so that you may begin making other arrangements.

If you have any questions concerning this letter, please do not hesitate to contact me.

Sincerely,

[REDACTED]

Vice President

[REDACTED]
Vice President
US Bank Plaza; 505 N. 7th; SL-MO-T7CP
St. Louis, Missouri 63101
Re: Letter dated November 10, 2016

Dear [REDACTED]

I am writing in regards to your letter dated November 10, 2016 (copy enclosed). To say that we are disappointed in US Bank's decision to end our relationship is a gross understatement. The relationship between Check Into Cash, Inc., and US Bank has existed for 20 years.

Over the years, our team has worked with the bank in a very professional and responsible manner and has paid US Bank millions of dollars in fees and interest. The fees paid to your bank currently average over $500,000 per year.

Over the years we have done business together, the bank has never expressed concerns regarding our company or our business practices. Like your bank, we operate in a highly regulated environment. We have an excellent reputation with the states regulators that over see our business and we are licensed in all states in which we conduct business. While our federal regulator, CFPB, is relatively new to regulating our company, they have conducted an audit of our company, with no actions taken against us.

Since the bank will not share the reasons for terminating our business relationship, I am not afforded the opportunity to provide information that might address any concerns. While years ago, our company may have considered itself to be a payday lender, our product offerings have become much more diverse. Now, payday lending revenue is **less than fifty percent** of our revenue and represents **less than thirty-five percent** of our receivables. By 2019, we expect payday revenue to represent approximately 5 percent of our total revenue.

Our company has approximately 214 locations that use US Bank centers. It has taken years to grow this business with the bank. It will take longer than 90 days to unwind it. In many markets where we use US Bank branches, we do not have other banking relationships. We must begin reaching out to banks in an effort to open new accounts. In some markets, we may be forced to look at treasury options such as armored car services. All of this takes time. Multiply that by 214 locations.

In addition to a transition away from your branches, all of our image cash letter services are provided by US Bank. We also process all of our centralized returns through US Bank. In total, we have 39 accounts with your bank.

While I am confident that you will quickly see progress in our transition away from US Bank, the task is not one that can be done overnight, or within 90 days.

While we do not agree with the decision the bank has made to end our relationship, we will work diligently to move our business and close our accounts. However, we ask that the bank recognize our 20

year relationship and the magnitude of what we are being asked to do. This is a daunting task. One for which we are not staffed to achieve within 90 days. Also, while we can make this a priority for our staff to execute, we cannot control the speed in which other banks or armored car services will move. We estimate that this project requires a minimum period of nine months to complete.

Over the past 20 years, the bank has promoted itself as our business partner. The bank's decision along with no explanation and a threat of increasing rates during the transition period doesn't feel like a partnership. However, we hope that US Bank will honor the years we have worked together and provide a more reasonable period of time for us to move our treasury business. We will provide updates on our progress, but it will take time.

You may contact me at 423 473-4062, if you want to discuss this matter.

Sincerely,


William S. Lane

Chief Financial Officer
Cc: Mr. Tim McMahan; Mr. Lou Beasley; Mr. Richard Davis; head of commercial banking

Exhibit A

CIC000519



60 Livingston Ave
Saint Paul, MN 55107

usbank.com

November 22, 2016

Check Into Cash, Inc.
William S. Lane
201 Keith Street SW
Suite #80
Cleveland, TN 37311

Dear Mr. Lane:

We received your letter to Chairman and CEO Richard Davis regarding the closure of your Business accounts. U.S. Bank is committed to the products and services we offer, but more importantly the customers we serve each and every day. Thank you for the opportunity to respond to your concerns.

We are truly sorry for any frustration that our decision may have caused you. As stated in the initial letter from Mr. Gross, per *Your Deposit Account Agreement* we can close your accounts for any reason or no reason at all. Please know that these decisions are not made without much consideration.

Mr. Lane, while we understand that transitioning to a new financial institution may be difficult, our position remains unchanged. Please keep Mr. Gross informed of the progress you make to close the accounts by February 15, 2017. By keeping open the communication, we will be better able to work with you through this transition. Mr. Gross can be reached directly at 314.418.8503.

Sincerely,

Executive Communications
U.S. Bancorp





usbank.com

January 26, 2017

VIA E-MAIL AND OVERNIGHT DELIVERY

Check Into Cash Inc.
201 Keith Street SW Suite #80
Cleveland, TN 37311
Attention: William S. Lane, CFO

Re: Notice of account closure extension

Dear Mr. Lane:

U.S. Bank is in receipt of your extension request made via e-mail on January 20, 2017. After more discussions internally, U.S. Bank hereby grants an extension of the account closure date from February 15, 2017 to March 31, 2017.

You may close these accounts prior to March 31, 2017 by notifying me in writing.

If you have any questions concerning this letter, please do not hesitate to contact me.

U.S. Bank continues to reserve all rights available to it under its Deposit Account Agreement, Master Services Agreement, Services Terms and Conditions, and any other applicable agreements.

Sincerely,

Vice President





March 22, 2017

VIA E-MAIL AND OVERNIGHT DELIVERY

Check Into Cash Inc.
201 Keith Street SW Suite #80
Cleveland, TN 37311
Attention: William S. Lane, CFO

Re: Notice of account closure extension

Dear Mr. Lane:

U.S. Bank is in receipt of your extension request made via e-mail on March 20, 2017. After more discussions internally, U.S. Bank hereby grants an extension of the account closure date from March 31, 2017 to May 15, 2017.

You may close these accounts prior to May 15, 2017 by notifying me in writing.

If you have any questions concerning this letter, please do not hesitate to contact me.

U.S. Bank continues to reserve all rights available to it under its Deposit Account Agreement, Master Services Agreement, Services Terms and Conditions, and any other applicable agreements.

Sincerely,

Vice President



usbank.com

May 12, 2017

VIA E-MAIL AND OVERNIGHT DELIVERY

Check Into Cash Inc.
201 Keith Street SW Suite #80
Cleveland, TN 37311
Attention: William S. Lane, CFO

Re: Notice of account closure extension

Dear Mr. Lane:

U.S. Bank is in receipt of your extension request made via e-mail on May 11, 2017. After more discussions internally, U.S. Bank hereby grants an extension of the remaining eleven accounts (x0933, x0520, x0526, x9261, x9246, x2244, x2236, x0791, x0053, x4932, and x9238) from May 15, 2017 to June 15, 2017.

You may close these accounts prior to June 15, 2017 by notifying me in writing.

If you have any questions concerning this letter, please do not hesitate to contact me.

U.S. Bank continues to reserve all rights available to it under its Deposit Account Agreement, Master Services Agreement, Services Terms and Conditions, and any other applicable agreements.

Sincerely,

Vice President

cc: Tim McMahan – VP Treasury Officer; Check Into Cash (via e-mail)

# FILED UNDER SEAL

# EXHIBIT 84

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 1 | STATE | ENTITY | EASURY PARTNER | | | LOSED | COMMENT |
| 2 | AL | Check into Cash of Alabama, LLC | | | | | |
| 3 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 4 | CA | Check into Cash of California, Inc. | | | | X | |
| 5 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 6 | FIN | CIC Financial Services, LLC | | | | X | |
| 7 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 8 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 9 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 10 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 11 | INC | Check into Cash, Inc. | | | | X | |
| 12 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 13 | JMS | Jones Management Services, LLC | | | | X | |
| 14 | KY | Check into Cash of Kentucky, LLC | | | | X | |
| 15 | KYCC | Creditcorp of Kentucky, Inc. | | | | X | |
| 16 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 17 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 18 | LBP | Loan By Phone.com, LLC | | | | X | |
| 19 | LBP | Loan By Phone.com, LLC | | | | X | |
| 20 | MI | Check into Cash of Michigan, LLC | | | | X | |
| 21 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 22 | MS | Check into Cash of Mississippi, Inc. | | | | X | |
| 23 | MS | Check into Cash of Mississippi, Inc. | | | | X | |
| 24 | MS | Check into Cash of Mississippi, Inc. | | | | X | |
| 25 | NC | Check into Cash of North Carolina, Inc. | | | | X | |
| 26 | ND | Check into Cash of North Dakota, LLC | | | | X | |
| 27 | NE | Check into Cash of Nebraska, Inc. | | | | X | |
| 28 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 29 | ORE | Check into Cash of Oregon, Inc. | | | | X | |
| 30 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 31 | SD | Check into Cash of South Dakota, LLC | | | | X | |
| 32 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 33 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 34 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 35 | TNFIN | CIC Financial Services of Tennessee, LLC | | | | X | |
| 36 | TNFIN | CIC Financial Services of Tennessee, LLC | | | | X | |
| 37 | UT | Check into Cash of Utah, Inc. | | | | X | |
| 38 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 39 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 40 | WA | Check into Cash of Washington, Inc. | | | | X | |
| 41 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 42 | WY | Check into Cash of Wyoming, LLC | | | | X | |
| 43 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 44 | SCPWN | US Money Shops of South Carolina, LLC | | | | X | |
| 45 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 46 | AIR | CIC Air Charters, LLC | | | | X | |
| 47 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 48 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 49 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 50 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 51 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 52 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 53 | CA | Check into Cash of California, Inc. | | | | X | |
| 54 | CA | Check into Cash of California, Inc. | | | | X | |
| 55 | CA | Check into Cash of California, Inc. | | | | X | |
| 56 | CA | Check into Cash of California, Inc. | | | | X | |
| 57 | CA | Check into Cash of California, Inc. | | | | X | |
| 58 | CA | Check into Cash of California, Inc. | | | | X | |
| 59 | CA | Check into Cash of California, Inc. | | | | X | |
| 60 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 61 | DE | Check into Cash of Delaware, LLC | | | | X | |
| 62 | FIN | CIC Financial Services, LLC | | | | X | |
| 63 | FL | Check into Cash of Florida, LLC | | | | X | |
| 64 | FL | Check into Cash of Florida, LLC | | | | X | |
| 65 | GA | Check into Cash of Georgia, LLC | | | | X | |
| 66 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 67 | GAFIN | CIC Financial Services of Georgia, LLC | | | | X | |
| 68 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 69 | ID | Check into Cash of Idaho, LLC | | | | X | |
| 70 | ID | Check into Cash of Idaho, LLC | | | | X | |
| 71 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 72 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 73 | INC | Check into Cash, Inc. | | | | X | |
| 74 | INC | Check into Cash, Inc. | | | | X | |
| 75 | INC | Check into Cash, Inc. | | | | X | |
| 76 | INC | Check into Cash, Inc. | | | | X | |
| 77 | INC | Check into Cash, Inc. | | | | X | |
| 78 | INC | Check into Cash, Inc. | | | | X | |
| 79 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 80 | INDCC | Creditcorp of Indiana, Inc. | | | | X | |
| 81 | JMS | Jones Management Services, LLC | | | | X | |
| 82 | KS | Check into Cash of Kansas, LLC | | | | X | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 83 | KS | Check into Cash of Kansas, LLC | | | | X | |
| 84 | KY | Check into Cash of Kentucky, LLC | | | | X | |
| 85 | KYCC | Creditcorp of Kentucky, Inc. | | | | X | |
| 86 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 87 | LBP | Loan By Phone.com, LLC | | | | X | |
| 88 | MI | Check into Cash of Michigan, LLC | | | | X | |
| 89 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 90 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 91 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 92 | MS | Check into Cash of Mississippi, Inc. | | | | X | |
| 93 | MT | Check into Cash of Montana, LLC | | | | X | |
| 94 | NC | Check into Cash of North Carolina, Inc. | | | | X | |
| 95 | NC | Check into Cash of North Carolina, Inc. | | | | X | |
| 96 | ND | Check into Cash of North Dakota, LLC | | | | X | |
| 97 | NE | Check into Cash of Nebraska, Inc. | | | | X | |
| 98 | NH | Check into Cash of New Hampshire, LLC | | | | X | |
| 99 | NM | Check into Cash of New Mexico, LLC | | | | X | |
| 100 | NM | Check into Cash of New Mexico, LLC | | | | X | |
| 101 | NV | Check into Cash of Nevada, LLC | | | | X | |
| 102 | NV | Check into Cash of Nevada, LLC | | | | X | |
| 103 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 104 | OK | Check into Cash of Oklahoma, LLC | | | | X | |
| 105 | OK | Check into Cash of Oklahoma, LLC | | | | X | |
| 106 | OK | Check into Cash of Oklahoma, LLC | | | | X | |
| 107 | ORE | Check into Cash of Oregon, Inc. | | | | X | |
| 108 | ORE | Check into Cash of Oregon, Inc. | | | | X | |
| 109 | ORE | Check into Cash of Oregon, Inc. | | | | X | |
| 110 | PA | Check into Cash of Pennsylvania, Inc. | | | | X | |
| 111 | RI | Check into Cash of Rhode Island, LLC | | | | X | |
| 112 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 113 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 114 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 115 | SCPWN | US Money Shops of South Carolina, LLC | | | | X | |
| 116 | SD | Check into Cash of South Dakota, LLC | | | | X | |
| 117 | TECH | Technology Center at the Village Green | | | | X | |
| 118 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 119 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 120 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 121 | TNFIN | CIC Financial Services of Tennessee, LLC | | | | X | |
| 122 | TNPWN | US Money Shops of Tennessee, LLC | | | | X | |
| 123 | TX | Check into Cash of Texas, LLC | | | | X | |
| 124 | TX | Check into Cash of Texas, LLC | | | | X | |
| 125 | UT | Check into Cash of Utah, Inc. | | | | X | |
| 126 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 127 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 128 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 129 | WA | Check into Cash of Washington, Inc. | | | | X | |
| 130 | WA | Check into Cash of Washington, Inc. | | | | X | |
| 131 | WA | Check into Cash of Washington, Inc. | | | | X | |
| 132 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 133 | WY | Check into Cash of Wyoming, LLC | | | | X | |
| 134 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 135 | TX | Check into Cash of Texas, LLC | | | | X | |
| 136 | NC | Check into Cash of North Carolina, Inc. | | | | X | |
| 137 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 138 | OK | Check into Cash of Oklahoma, LLC | | | | X | |
| 139 | NC | Check into Cash of North Carolina, Inc. | | | | X | |
| 140 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 141 | MI | Check into Cash of Michigan, LLC | | | | X | |
| 142 | TX | Check into Cash of Texas, LLC | | | | X | |
| 143 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 144 | KS | Check into Cash of Kansas, LLC | | | | X | |
| 145 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 146 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 147 | TX | Check into Cash of Texas, LLC | | | | X | |
| 148 | ALLBP | Loan By Phone of Alabama, LLC | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 149 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 150 | CALBP | LBP of California, LLC | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 151 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 152 | DELBP | Loan By Phone of Delaware, LLC | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 153 | FINOH | CIC Financial Services of Ohio, LLC | | | | X | |
| 154 | FL | Check into Cash of Florida, LLC | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 155 | IDLBP | Loan By Phone of Idaho, LLC | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 156 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 157 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 158 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 159 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 160 | ILLBP | Loan By Phone of Illinois, LLC | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 161 | INC | Check into Cash, Inc. | | | | X | |
| 162 | INC | Check into Cash, Inc. | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 163 | INC | Check into Cash, Inc. | | | | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 164 | IND | Check into Cash of Indiana, LLC | | | | X | |

| | A | B | F | G |
|---|---|---|---|---|
| 165 | IND | Check into Cash of Indiana, LLC | X | |
| 166 | IND | Check into Cash of Indiana, LLC | X | |
| 167 | IND | Check into Cash of Indiana, LLC | X | |
| 168 | IND | Check into Cash of Indiana, LLC | X | |
| 169 | IND | Check into Cash of Indiana, LLC | X | |
| 170 | IND | Check into Cash of Indiana, LLC | X | |
| 171 | IND | Check into Cash of Indiana, LLC | X | |
| 172 | IND | Check into Cash of Indiana, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 173 | KSLBP | Loan By Phone of Kansas, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 174 | KYCC | Creditcorp of Kentucky, Inc. | X | |
| 175 | LA-LBP | Check into Cash of Louisiana, Inc. | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 176 | LBP | Loan By Phone.com, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 177 | MILBP | Loan By Phone of Michigan, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 178 | MOLBP | Loan By Phone of Missouri, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 179 | MSLBP | Loan By Phone of Mississippi, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 180 | MTLBP | Loan By Phone of Montana, LLC | X | |
| 181 | NE | Check into Cash of Nebraska, Inc. | X | |
| 182 | NMLBP | Loan By Phone of New Mexico, LLC | X | |
| 183 | NV | Check into Cash of Nevada, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 184 | OH | Check into Cash of Ohio, LLC | X | |
| 185 | OH | Check into Cash of Ohio, LLC | X | |
| 186 | OH | Check into Cash of Ohio, LLC | X | |
| 187 | OH | Check into Cash of Ohio, LLC | X | |
| 188 | OH | Check into Cash of Ohio, LLC | X | |
| 189 | OH | Check into Cash of Ohio, LLC | X | |
| 190 | OH | Check into Cash of Ohio, LLC | X | |
| 191 | OH | Check into Cash of Ohio, LLC | X | |
| 192 | OH | Check into Cash of Ohio, LLC | X | |
| 193 | OH | Check into Cash of Ohio, LLC | X | |
| 194 | OH | Check into Cash of Ohio, LLC | X | |
| 195 | OH | Check into Cash of Ohio, LLC | X | |
| 196 | OH | Check into Cash of Ohio, LLC | X | |
| 197 | OH | Check into Cash of Ohio, LLC | X | |
| 198 | OH | Check into Cash of Ohio, LLC | X | |
| 199 | OH | Check into Cash of Ohio, LLC | X | |
| 200 | OHCC | Creditcorp of Ohio, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 201 | OHLBP | Loan By Phone of Ohio, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 202 | OK-LBP | Check into Cash of Oklahoma, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 203 | ORLBP | Loan By Phone of Oregon, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 204 | SDLBP | Loan By Phone of South Dakota, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 205 | TN | Check into Cash of Tennessee, Inc. | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 206 | TNLBP | Loan By Phone of Tennessee, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 207 | TXLBP | Loan By Phone of Texas, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 208 | UTLBP | Loan By Phone of Utah, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 209 | WA | Check into Cash of Washington, Inc. | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 210 | WILBP | Loan By Phone of Wisconsin, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 211 | WY | Check into Cash of Wyoming, LLC | X | DUE TO 2014 RELATIONSHIP CLOSURE |
| 212 | KYCC | Creditcorp of Kentucky, Inc. | X | |
| 213 | SC | Check into Cash of South Carolina, Inc. | X | |
| 214 | SCPWN | US Money Shops of South Carolina, LLC | X | |
| 215 | SCPWN | US Money Shops of South Carolina, LLC | X | |
| 216 | MO | Check into Cash of Missouri, Inc. | X | |
| 217 | IL | Check into Cash of Illinois, LLC | X | |
| 218 | IND | Check into Cash of Indiana, LLC | X | |
| 219 | GACC | Creditcorp of Georgia, LLC | X | |
| 220 | IL | Check into Cash of Illinois, LLC | X | |
| 221 | IL | Check into Cash of Illinois, LLC | X | |
| 222 | OK | Check into Cash of Oklahoma, LLC | X | CLOSED 3/23/17 |
| 223 | WY | Check into Cash of Wyoming, LLC | X | |
| 224 | SC | Check into Cash of South Carolina, Inc. | X | |
| 225 | SCPWN | US Money Shops of South Carolina, LLC | X | |
| 226 | FINLA | CIC Financial Services of Louisiana, LLC | X | |
| 227 | FINOH | CIC Financial Services of Ohio, LLC | X | |
| 228 | KY | Check into Cash of Kentucky, LLC | X | |
| 229 | LF | Lending Frog.com, LLC | X | |
| 230 | MS | Check into Cash of Mississippi, Inc. | X | |
| 231 | TECH | Technology Center at the Village Green | X | |
| 232 | TNFIN | CIC Financial Services of Tennessee, LLC | X | |
| 233 | NC | Check into Cash of North Carolina, Inc. | X | |
| 234 | SC | Check into Cash of South Carolina, Inc. | X | |
| 235 | NC | Check into Cash of North Carolina, Inc. | X | |
| 236 | MI | Check into Cash of Michigan, LLC | X | |
| 237 | KS | Check into Cash of Kansas, LLC | X | |
| 238 | LA | Check into Cash of Louisiana, Inc. | X | |
| 239 | MS | Check into Cash of Mississippi, Inc. | X | |
| 240 | IL | Check into Cash of Illinois, LLC | X | |
| 241 | FIN | CIC Financial Services, LLC | X | |
| 242 | INC | Check into Cash, Inc. | X | |
| 243 | OH | Check into Cash of Ohio, LLC | X | |
| 244 | TX | Check into Cash of Texas, LLC | X | |
| 245 | WY | Check into Cash of Wyoming, LLC | X | |
| 246 | AZ | Check into Cash of Arizona, Inc. | X | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 247 | FIN | CIC Financial Services, LLC | | | | X | |
| 248 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 249 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 250 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 251 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 252 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 253 | KY | Check into Cash of Kentucky, LLC | | | | X | |
| 254 | KYCC | Creditcorp of Kentucky, Inc. | | | | X | |
| 255 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 256 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 257 | MI | Check into Cash of Michigan, LLC | | | | X | |
| 258 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 259 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 260 | OHCC | Creditcorp of Ohio, LLC | | | | X | |
| 261 | OK | Check into Cash of Oklahoma, LLC | | | | X | |
| 262 | TX | Check into Cash of Texas, LLC | | | | X | |
| 263 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 264 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 265 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 266 | FIN | CIC Financial Services, LLC | | | | X | |
| 267 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 268 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 269 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 270 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 271 | UT | Check into Cash of Utah, Inc. | | | | X | |
| 272 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 273 | IND | Check into Cash of Indiana, LLC | | | | X | CLOSED 02/01/17 |
| 274 | LA | Check into Cash of Louisiana, Inc. | | | | X | CLOSED 3/23/17 |
| 275 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 276 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 277 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 278 | AIR | CIC Air Charters, LLC | | | | X | |
| 279 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 280 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 281 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 282 | ALLBP | Loan By Phone of Alabama, LLC | | | | X | |
| 283 | ALLBP | Loan By Phone of Alabama, LLC | | | | X | |
| 284 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 285 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 286 | AZLBP | LBP Financial of Arizona, LLC | | | | X | |
| 287 | AZLBP | LBP Financial of Arizona, LLC | | | | X | |
| 288 | CA | Check into Cash of California, Inc. | | | | X | |
| 289 | CA | Check into Cash of California, Inc. | | | | X | |
| 290 | CALBP | LBP of California, LLC | | | | X | |
| 291 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 292 | CO | Check into Cash of Colorado, Inc. | | | | X | |
| 293 | COLBP | Loan By Phone of Colorado, LLC | | | | X | |
| 294 | DE | Check into Cash of Delaware, LLC | | | | X | |
| 295 | DE | Check into Cash of Delaware, LLC | | | | X | |
| 296 | DELBP | Loan By Phone of Delaware, LLC | | | | X | |
| 297 | DELCC | Creditcorp of Delaware, LLC | | | | X | |
| 298 | FIN | CIC Financial Services, LLC | | | | X | |
| 299 | FIN | CIC Financial Services, LLC | | | | X | |
| 300 | FIN | CIC Financial Services, LLC | | | | X | |
| 301 | FL | Check into Cash of Florida, LLC | | | | X | |
| 302 | GA | Check into Cash of Georgia, LLC | | | | X | |
| 303 | GAFIN | CIC Financial Services of Georgia, LLC | | | | X | |
| 304 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 305 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 306 | ID | Check into Cash of Idaho, LLC | | | | X | |
| 307 | ID | Check into Cash of Idaho, LLC | | | | X | |
| 308 | IDLBP | Loan By Phone of Idaho, LLC | | | | X | |
| 309 | IDLBP | Loan By Phone of Idaho, LLC | | | | X | |
| 310 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 311 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 312 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 313 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 314 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 315 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 316 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 317 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 318 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 319 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 320 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 321 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 322 | INC | Check into Cash, Inc. | | | | X | |
| 323 | INC | Check into Cash, Inc. | | | | X | |
| 324 | INC | Check into Cash, Inc. | | | | X | |
| 325 | INC | Check into Cash, Inc. | | | | X | |
| 326 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 327 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 328 | IND | Check into Cash of Indiana, LLC | | | | X | |

| | A | B | F | G |
|---|---|---|---|---|
| 329 | IND | Check into Cash of Indiana, LLC | X | |
| 330 | IND | Check into Cash of Indiana, LLC | X | |
| 331 | IND | Check into Cash of Indiana, LLC | X | |
| 332 | IND | Check into Cash of Indiana, LLC | X | |
| 333 | IND | Check into Cash of Indiana, LLC | X | |
| 334 | IND | Check into Cash of Indiana, LLC | X | |
| 335 | INDCC | Creditcorp of Indiana, Inc. | X | |
| 336 | JMS | Jones Management Services, LLC | X | |
| 337 | KS | Check into Cash of Kansas, LLC | X | |
| 338 | KS | Check into Cash of Kansas, LLC | X | |
| 339 | KSLBP | Loan By Phone of Kansas, LLC | X | |
| 340 | KY | Check into Cash of Kentucky, LLC | X | |
| 341 | KY | Check into Cash of Kentucky, LLC | X | |
| 342 | KYCC | Creditcorp of Kentucky, Inc. | X | |
| 343 | KYCC | Creditcorp of Kentucky, Inc. | X | |
| 344 | LA | Check into Cash of Louisiana, Inc. | X | |
| 345 | LA-LBP | Check into Cash of Louisiana, Inc. | X | |
| 346 | LBP | Loan By Phone.com, LLC | X | |
| 347 | LBP | Loan By Phone.com, LLC | X | |
| 348 | LBP | Loan By Phone.com, LLC | X | |
| 349 | MI | Check into Cash of Michigan, LLC | X | |
| 350 | MI | Check into Cash of Michigan, LLC | X | |
| 351 | MI | Check into Cash of Michigan, LLC | X | |
| 352 | MO | Check into Cash of Missouri, Inc. | X | |
| 353 | MO | Check into Cash of Missouri, Inc. | X | |
| 354 | MO | Check into Cash of Missouri, Inc. | X | |
| 355 | MOLBP | Loan By Phone of Missouri, LLC | X | |
| 356 | MOLBP | Loan By Phone of Missouri, LLC | X | |
| 357 | MS | Check into Cash of Mississippi, Inc. | X | |
| 358 | MS | Check into Cash of Mississippi, Inc. | X | |
| 359 | MS | Check into Cash of Mississippi, Inc. | X | |
| 360 | MT | Check into Cash of Montana, LLC | X | |
| 361 | MT | Check into Cash of Montana, LLC | X | |
| 362 | MTLBP | Loan By Phone of Montana, LLC | X | |
| 363 | NC | Check into Cash of North Carolina, Inc. | X | |
| 364 | ND | Check into Cash of North Dakota, LLC | X | |
| 365 | NE | Check into Cash of Nebraska, Inc. | X | |
| 366 | NH | Check into Cash of New Hampshire, LLC | X | |
| 367 | NH | Check into Cash of New Hampshire, LLC | X | |
| 368 | NM | Check into Cash of New Mexico, LLC | X | |
| 369 | NM | Check into Cash of New Mexico, LLC | X | |
| 370 | NMLBP | Loan By Phone.com, LLC | X | |
| 371 | NMLBP | Loan By Phone of New Mexico, LLC | X | |
| 372 | NV | Check into Cash of Nevada, LLC | X | |
| 373 | NV | Check into Cash of Nevada, LLC | X | |
| 374 | NVLBP | Loan By Phone of Nevada, LLC | X | |
| 375 | OH | Check into Cash of Ohio, LLC | X | |
| 376 | OH | Check into Cash of Ohio, LLC | X | |
| 377 | OH | Check into Cash of Ohio, LLC | X | |
| 378 | OH | Check into Cash of Ohio, LLC | X | |
| 379 | OH | Check into Cash of Ohio, LLC | X | |
| 380 | OH | Check into Cash of Ohio, LLC | X | |
| 381 | OH | Check into Cash of Ohio, LLC | X | |
| 382 | OH | Check into Cash of Ohio, LLC | X | |
| 383 | OH | Check into Cash of Ohio, LLC | X | |
| 384 | OHLBP | Loan By Phone of Ohio, LLC | X | |
| 385 | OK | Check into Cash of Oklahoma, LLC | X | |
| 386 | OK-LBP | Check into Cash of Oklahoma, LLC | X | |
| 387 | ORE | Check into Cash of Oregon, Inc. | X | |
| 388 | ORE | Check into Cash of Oregon, Inc. | X | |
| 389 | ORLBP | Loan By Phone of Oregon, LLC | X | |
| 390 | PA | Check into Cash of Pennsylvania, Inc. | X | |
| 391 | RI | Check into Cash of Rhode Island, LLC | X | |
| 392 | SC | Check into Cash of South Carolina, Inc. | X | |
| 393 | SC | Check into Cash of South Carolina, Inc. | X | |
| 394 | SD | Check into Cash of South Dakota, LLC | X | |
| 395 | SD | Check into Cash of South Dakota, LLC | X | |
| 396 | SDLBP | Loan By Phone of South Dakota, LLC | X | |
| 397 | SDLBP | Loan By Phone of South Dakota, LLC | X | |
| 398 | TECH | Technology Center at the Village Green | X | |
| 399 | TN | Check into Cash of Tennessee, Inc. | X | |
| 400 | TN | Check into Cash of Tennessee, Inc. | X | |
| 401 | TNFIN | CIC Financial Services of Tennessee, LLC | X | |
| 402 | TNFIN | CIC Financial Services of Tennessee, LLC | X | |
| 403 | TNPWN | US Money Shops of Tennessee, LLC | X | |
| 404 | TX | Check into Cash of Texas, LLC | X | |
| 405 | TX | Check into Cash of Texas, LLC | X | |
| 406 | TXLBP | Loan By Phone of Texas, LLC | X | |
| 407 | UT | Check into Cash of Utah, Inc. | X | |
| 408 | UT | Check into Cash of Utah, Inc. | X | |
| 409 | UTLBP | Loan By Phone of Utah, LLC | X | |
| 410 | UTLBP | Loan By Phone of Utah, LLC | X | |

| | A | B | | | | F | G |
|---|---|---|---|---|---|---|---|
| 411 | VA | Check into Cash of Virginia, LLC | | | | X | |
| 412 | WA | Check into Cash of Washington, Inc. | | | | X | |
| 413 | WA | Check into Cash of Washington, Inc. | | | | | |
| 414 | | | | | | | |
| 415 | | | | | | X | |
| 416 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 417 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 418 | WY | Check into Cash of Wyoming, LLC | | | | X | |
| 419 | WY | Check into Cash of Wyoming, LLC | | | | X | |
| 420 | WYLBP | Loan By Phone of Wyoming, LLC | | | | X | |
| 421 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 422 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 423 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 424 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 425 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 426 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 427 | CA | Check into Cash of California, Inc. | | | | X | |
| 428 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 429 | CA | Check into Cash of California, Inc. | | | | X | |
| 430 | GAFIN | CIC Financial Services of Georgia, LLC | | | | X | |
| 431 | INC | Check into Cash, Inc. | | | | X | |
| 432 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 433 | KY | Check into Cash of Kentucky, LLC | | | | X | |
| 434 | KYCC | Creditcorp of Kentucky, Inc. | | | | X | |
| 435 | LBP | Loan By Phone.com, LLC | | | | X | |
| 436 | LBP | Loan By Phone.com, LLC | | | | X | |
| 437 | LBP | Loan By Phone.com, LLC | | | | X | |
| 438 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 439 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 440 | FL | Check into Cash of Florida, LLC | | | | X | |
| 441 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 442 | INC | Check into Cash, Inc. | | | | X | |
| 443 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 444 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 445 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 446 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 447 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 448 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 449 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 450 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 451 | FIN | CIC Financial Services, LLC | | | | X | |
| 452 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 453 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 454 | TN | Check into Cash of Tennessee, Inc. | | | | X | CLOSED 02/01/07 |
| 455 | WI | Check into Cash of Wisconsin, LLC | | | | X | |
| 456 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 457 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 458 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 459 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 460 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 461 | LA | Check into Cash of Louisiana, Inc. | | | | X | |
| 462 | SC | Check into Cash of South Carolina, Inc. | | | | X | |
| 463 | GACC | Creditcorp of Georgia, LLC | | | | X | |
| 464 | CA | Check into Cash of California, Inc. | | | | X | |
| 465 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 466 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 467 | IND | Check into Cash of Indiana, LLC | | | | X | |
| 468 | MO | Check into Cash of Missouri, Inc. | | | | X | |
| 469 | MS | Check into Cash of Mississippi, Inc. | | | | X | |
| 470 | TN | Check into Cash of Tennessee, Inc. | | | | X | |
| 471 | TNFIN | CIC Financial Services of Tennessee, LLC | | | | X | |
| 472 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 473 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 474 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 475 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 476 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 477 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 478 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 479 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 480 | IA | Check into Cash of Iowa, Inc. | | | | X | |
| 481 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 482 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 483 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 484 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 485 | IL | Check into Cash of Illinois, LLC | | | | X | |
| 486 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 487 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 488 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 489 | OH | Check into Cash of Ohio, LLC | | | | X | |
| 490 | AL | Check into Cash of Alabama, LLC | | | | X | |
| 491 | AZ | Check into Cash of Arizona, Inc. | | | | X | |
| 492 | CA | Check into Cash of California, Inc. | | | | X | |

| | A | B | F | G |
|---|---|---|---|---|
| 493 | CO | Check into Cash of Colorado, Inc. | X | |
| 494 | CO | Check into Cash of Colorado, Inc. | X | |
| 495 | FL | Check into Cash of Florida, LLC | X | |
| 496 | GA | Check into Cash of Georgia, LLC | X | |
| 497 | GAFIN | CIC Financial Services of Georgia, LLC | X | |
| 498 | IA | Check into Cash of Iowa, Inc. | X | |
| 499 | IA | Check into Cash of Iowa, Inc. | X | |
| 500 | ID | Check into Cash of Idaho, LLC | X | |
| 501 | IL | Check into Cash of Illinois, LLC | X | |
| 502 | IL | Check into Cash of Illinois, LLC | X | |
| 503 | IL | Check into Cash of Illinois, LLC | X | |
| 504 | INC | Check into Cash, Inc. | X | |
| 505 | INC | Check into Cash, Inc. | X | |
| 506 | INC | Check into Cash, Inc. | X | |
| 507 | IND | Check into Cash of Indiana, LLC | X | |
| 508 | IND | Check into Cash of Indiana, LLC | X | |
| 509 | IND | Check into Cash of Indiana, LLC | X | |
| 510 | KS | Check into Cash of Kansas, LLC | X | |
| 511 | KY | Check into Cash of Kentucky, LLC | X | |
| 512 | KYCC | Creditcorp of Kentucky, Inc. | X | |
| 513 | KYCC | Creditcorp of Kentucky, Inc. | X | |
| 514 | LA | Check into Cash of Louisiana, Inc. | X | |
| 515 | LF | Lending Frog.com, LLC | X | |
| 516 | MI | Check into Cash of Michigan, LLC | X | |
| 517 | MO | Check into Cash of Missouri, Inc. | X | |
| 518 | MO | Check into Cash of Missouri, Inc. | X | |
| 519 | MO | Check into Cash of Missouri, Inc. | X | |
| 520 | MS | Check into Cash of Mississippi, Inc. | X | |
| 521 | MT | Check into Cash of Montana, LLC | X | |
| 522 | ND | Check into Cash of North Dakota, LLC | X | |
| 523 | NE | Check into Cash of Nebraska, Inc. | X | |
| 524 | NM | Check into Cash of New Mexico, LLC | X | |
| 525 | NV | Check into Cash of Nevada, LLC | X | |
| 526 | OH | Check into Cash of Ohio, LLC | X | |
| 527 | OH | Check into Cash of Ohio, LLC | X | |
| 528 | OH | Check into Cash of Ohio, LLC | X | |
| 529 | OHCC | Creditcorp of Ohio, LLC | X | |
| 530 | OK | Check into Cash of Oklahoma, LLC | X | |
| 531 | ORE | Check into Cash of Oregon, Inc. | X | |
| 532 | SC | Check into Cash of South Carolina, Inc. | X | |
| 533 | SCPWN | US Money Shops of South Carolina, LLC | X | |
| 534 | SD | Check into Cash of South Dakota, LLC | X | |
| 535 | TN | Check into Cash of Tennessee, Inc. | X | |
| 536 | TN | Check into Cash of Tennessee, Inc. | X | |
| 537 | TNPWN | US Money Shops of Tennessee, LLC | X | |
| 538 | TX | Check into Cash of Texas, LLC | X | |
| 539 | UT | Check into Cash of Utah, Inc. | X | |
| 540 | VA | Check into Cash of Virginia, LLC | X | |
| 541 | WA | Check into Cash of Washington, Inc. | X | |
| 542 | WI | Check into Cash of Wisconsin, LLC | X | |
| 543 | WI | Check into Cash of Wisconsin, LLC | X | |
| 544 | WI | Check into Cash of Wisconsin, LLC | X | |
| 545 | WI | Check into Cash of Wisconsin, LLC | X | |
| 546 | WY | Check into Cash of Wyoming, LLC | X | |
| 547 | CO | Check into Cash of Colorado, Inc. | X | |
| 548 | AL | Check into Cash of Alabama, LLC | X | |
| 549 | CA | Check into Cash of California, Inc. | X | |
| 550 | FL | Check into Cash of Florida, LLC | X | |
| 551 | GAFIN | CIC Financial Services of Georgia, LLC | X | |
| 552 | IND | Check into Cash of Indiana, LLC | X | |
| 553 | KY | Check into Cash of Kentucky, LLC | X | |
| 554 | MO | Check into Cash of Missouri, Inc. | X | |
| 555 | MS | Check into Cash of Mississippi, Inc. | X | |
| 556 | NC | Check into Cash of North Carolina, Inc. | X | |
| 557 | SC | Check into Cash of South Carolina, Inc. | X | |
| 558 | SCPWN | US Money Shops of South Carolina, LLC | X | |
| 559 | TN | Check into Cash of Tennessee, Inc. | X | |
| 560 | TX | Check into Cash of Texas, LLC | X | |
| 561 | VA | Check into Cash of Virginia, LLC | X | |
| 562 | VA | Check into Cash of Virginia, LLC | X | |
| 563 | AZ | Check into Cash of Arizona, Inc. | X | |
| 564 | AZ | Check into Cash of Arizona, Inc. | X | |
| 565 | AZPWN | US Money Shops of Arizona LLC | X | |
| 566 | CA | Check into Cash of California, Inc. | X | |
| 567 | CA | Check into Cash of California, Inc. | X | |
| 568 | CALBP | LBP of California, LLC | X | |
| 569 | CO | Check into Cash of Colorado, Inc. | X | |
| 570 | FV | FirstView, LLC | X | |
| 571 | GAFIN | CIC Financial Services of Georgia, LLC | X | |
| 572 | IND | Check into Cash of Indiana, LLC | X | |
| 573 | IND | Check into Cash of Indiana, LLC | X | |
| 574 | KSLBP | Loan By Phone of Kansas, LLC | X | |

| | A | B | E | F | G |
|---|---|---|---|---|---|
| 575 | LF | Lending Frog.com, LLC | | | |
| 576 | LF | Lending Frog.com, LLC | | | |
| 577 | MOLBP | Loan By Phone of Missouri, LLC | | | |
| 578 | MSLBP | Loan By Phone of Mississippi, LLC | | | |
| 579 | MT | Check into Cash of Montana, LLC | | | |
| 580 | MT | Check into Cash of Montana, LLC | | | |
| 581 | ND | Check into Cash of North Dakota, LLC | | | |
| 582 | ND | Check into Cash of North Dakota, LLC | | | |
| 583 | ORE | Check into Cash of Oregon, Inc. | | | |
| 584 | ORE | Check into Cash of Oregon, Inc. | | | |
| 585 | TNLBP | Loan By Phone of Tennessee, LLC | | | |
| 586 | TNPWN | US Money Shops of Tennessee, LLC | | | |
| 587 | WA | Check into Cash of Washington, Inc. | | | |
| 588 | WA | Check into Cash of Washington, Inc. | | | |
| 589 | WA | Check into Cash of Washington, Inc. | | | |
| 590 | INC | Check into Cash, Inc. | | | |
| 591 | KYCC | Creditcorp of Kentucky, Inc. | | | |
| 592 | TNPWN | US Money Shops of Tennessee, LLC | | | |
| 593 | IA | Check into Cash of Iowa, Inc. | | | |
| 594 | KY | Check into Cash of Kentucky, LLC | | | |
| 595 | SC | Check into Cash of South Carolina, Inc. | | | |
| 596 | TN | Check into Cash of Tennessee, Inc. | | | |
| 597 | VA | Check into Cash of Virginia, LLC | | | |
| 598 | OK | Check into Cash of Oklahoma, LLC | | | |
| 599 | AL | Check into Cash of Alabama, LLC | | | |
| 600 | MS | Check into Cash of Mississippi, Inc. | | | |
| 601 | TN | Check into Cash of Tennessee, Inc. | | | |
| 602 | OK | Check into Cash of Oklahoma, LLC | | | |
| 603 | WI | Check into Cash of Wisconsin, LLC | | | |
| 604 | IL | Check into Cash of Illinois, LLC | | | |
| 605 | KY | Check into Cash of Kentucky, LLC | | | |
| 606 | MS | Check into Cash of Mississippi, Inc. | | | |
| 607 | KY | Check into Cash of Kentucky, LLC | | | |
| 608 | IL | Check into Cash of Illinois, LLC | | | |
| 609 | TNPWN | US Money Shops of Tennessee, LLC | | | |
| 610 | LA | Check into Cash of Louisiana, Inc. | | | |
| 611 | MO | Check into Cash of Missouri, Inc. | | | |
| 612 | MS | Check into Cash of Mississippi, Inc. | | | |
| 613 | WI | Check into Cash of Wisconsin, LLC | | | |
| 614 | LA | Check into Cash of Louisiana, Inc. | | | |
| 615 | AL | Check into Cash of Alabama, LLC | | | |
| 616 | AZ | Check into Cash of Arizona, Inc. | | | |
| 617 | CA | Check into Cash of California, Inc. | | | |
| 618 | IL | Check into Cash of Illinois, LLC | | | |
| 619 | INC | Check into Cash, Inc. | | | |
| 620 | IND | Check into Cash of Indiana, LLC | | | |
| 621 | KY | Check into Cash of Kentucky, LLC | | | |
| 622 | KY | Check into Cash of Kentucky, LLC | | | |
| 623 | MI | Check into Cash of Michigan, LLC | | | |
| 624 | MO | Check into Cash of Missouri, Inc. | | | |
| 625 | MS | Check into Cash of Mississippi, Inc. | | | |
| 626 | OHCC | Creditcorp of Ohio, LLC | | | |
| 627 | OHCC | Creditcorp of Ohio, LLC | | | |
| 628 | SC | Check into Cash of South Carolina, Inc. | | | |
| 629 | TN | Check into Cash of Tennessee, Inc. | | | |
| 630 | KY | Check into Cash of Kentucky, LLC | | | |
| 631 | TN | Check into Cash of Tennessee, Inc. | | | |
| 632 | TNPWN | US Money Shops of Tennessee, LLC | | | |
| 633 | IND | Check into Cash of Indiana, LLC | | | |
| 634 | IND | Check into Cash of Indiana, LLC | | | |
| 635 | LA | Check into Cash of Louisiana, Inc. | | | |
| 636 | WI | Check into Cash of Wisconsin, LLC | | | |
| 637 | IA | Check into Cash of Iowa, Inc. | | | |
| 638 | TN | Check into Cash of Tennessee, Inc. | | | |
| 639 | KS | Check into Cash of Kansas, LLC | | | |
| 640 | OK | Check into Cash of Oklahoma, LLC | | | |
| 641 | AL | Check into Cash of Alabama, LLC | | | |
| 642 | CO | Check into Cash of Colorado, Inc. | | | |
| 643 | AL | Check into Cash of Alabama, LLC | | | |
| 644 | AZ | Check into Cash of Arizona, Inc. | | | |
| 645 | CA | Check into Cash of California, Inc. | | | |
| 646 | CO | Check into Cash of Colorado, Inc. | | | |
| 647 | FL | Check into Cash of Florida, LLC | | | |
| 648 | GA | Check into Cash of Georgia, LLC | | | |
| 649 | GAFIN | CIC Financial Services of Georgia, LLC | | | |
| 650 | IA | Check into Cash of Iowa, Inc. | | | |
| 651 | ID | Check into Cash of Idaho, LLC | | | |
| 652 | IL | Check into Cash of Illinois, LLC | | | |
| 653 | INC | Check into Cash, Inc. | | | |
| 654 | INC | Check into Cash, Inc. | | | |
| 655 | INC | Check into Cash, Inc. | | | |
| 656 | INC | Check into Cash, Inc. | | | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 657 | IND | Check into Cash of Indiana, LLC | | | | | |
| 658 | KS | Check into Cash of Kansas, LLC | | | | | |
| 659 | KY | Check into Cash of Kentucky, LLC | | | | | |
| 660 | LA | Check into Cash of Louisiana, Inc. | | | | | |
| 661 | LF | Lending Frog.com, LLC | | | | | |
| 662 | MI | Check into Cash of Michigan, LLC | | | | | |
| 663 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 664 | MS | Check into Cash of Mississippi, Inc. | | | | | |
| 665 | NE | Check into Cash of Nebraska, Inc. | | | | | |
| 666 | NM | Check into Cash of New Mexico, LLC | | | | | |
| 667 | NV | Check into Cash of Nevada, LLC | | | | | |
| 668 | OHCC | Creditcorp of Ohio, LLC | | | | | |
| 669 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 670 | SC | Check into Cash of South Carolina, Inc. | | | | | |
| 671 | SCPWN | US Money Shops of South Carolina, LLC | | | | | |
| 672 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 673 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 674 | TNPWN | US Money Shops of Tennessee, LLC | | | | | |
| 675 | TX | Check into Cash of Texas, LLC | | | | | |
| 676 | VA | Check into Cash of Virginia, LLC | | | | | |
| 677 | WA | Check into Cash of Washington, Inc. | | | | | |
| 678 | WI | Check into Cash of Wisconsin, LLC | | | | | |
| 679 | WY | Check into Cash of Wyoming, LLC | | | | | |
| 680 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 681 | AL | Check into Cash of Alabama, LLC | | | | | |
| 682 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 683 | AZ | Check into Cash of Arizona, Inc. | | | | | |
| 684 | NE | Check into Cash of Nebraska, Inc. | | | | | |
| 685 | IL | Check into Cash of Illinois, LLC | | | | | |
| 686 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 687 | KY | Check into Cash of Kentucky, LLC | | | | | |
| 688 | IL | Check into Cash of Illinois, LLC | | | | | |
| 689 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 690 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 691 | IND | Check into Cash of Indiana, LLC | | | | | |
| 692 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 693 | IND | Check into Cash of Indiana, LLC | | | | | |
| 694 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 695 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 696 | LA | Check into Cash of Louisiana, Inc. | | | | | |
| 697 | KS | Check into Cash of Kansas, LLC | | | | | |
| 698 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 699 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 700 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 701 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 702 | TNPWN | US Money Shops of Tennessee, LLC | | | | | |
| 703 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 704 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 705 | IND | Check into Cash of Indiana, LLC | | | | | |
| 706 | IL | Check into Cash of Illinois, LLC | | | | | |
| 707 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 708 | AL | Check into Cash of Alabama, LLC | | | | | |
| 709 | MS | Check into Cash of Mississippi, Inc. | | | | | |
| 710 | IA | Check into Cash of Iowa, Inc. | | | | | |
| 711 | OHCC | Creditcorp of Ohio, LLC | | | | | |
| 712 | CO | Check into Cash of Colorado, Inc. | | | | | |
| 713 | AKLBP | Loan By Phone of Alaska, LLC | | | | | |
| 714 | AL | Check into Cash of Alabama, LLC | | | | | |
| 715 | AL | Check into Cash of Alabama, LLC | | | | | |
| 716 | AL | Check into Cash of Alabama, LLC | | | | | |
| 717 | AL | Check into Cash of Alabama, LLC | | | | | |
| 718 | ALLBP | Loan By Phone of Alabama, LLC | | | | | |
| 719 | AZ | Check into Cash of Arizona, Inc. | | | | | |
| 720 | AZ | Check into Cash of Arizona, Inc. | | | | | |
| 721 | CA | Check into Cash of California, Inc. | | | | | |
| 722 | CA | Check into Cash of California, Inc. | | | | | |
| 723 | CA | Check into Cash of California, Inc. | | | | | |
| 724 | CA | Check into Cash of California, Inc. | | | | | |
| 725 | CO | Check into Cash of Colorado, Inc. | | | | | |
| 726 | CO | Check into Cash of Colorado, Inc. | | | | | |
| 727 | CO | Check into Cash of Colorado, Inc. | | | | | |
| 728 | CRD | Creditcorp | | | | | |
| 729 | CRD | Creditcorp | | | | | |
| 730 | CRDTTL | Creditcorp Title Company, LLC | | | | | |
| 731 | CRDTTLAL | Creditcorp Title of Alabama, LLC | | | | | |
| 732 | CRDTTLGA | Creditcorp Title of Georgia, LLC | | | | | |
| 733 | CRDTTLMS | Creditcorp Title of Mississippi, LLC | | | | | |
| 734 | CRDTTLSC | Creditcorp Title of South Carolina, LLC | | | | | |
| 735 | CRDTTLTN | Creditcorp Title of Tennessee, LLC | | | | | |
| 736 | DELBP | Loan By Phone of Delaware, LLC | | | | | |
| 737 | FL | Check into Cash of Florida, LLC | | | | | |
| 738 | FL | Check into Cash of Florida, LLC | | | | | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 739 | FL | Check into Cash of Florida, LLC | | | | | |
| 740 | GA | Check into Cash of Georgia, LLC | | | | | |
| 741 | GA | Check into Cash of Georgia, LLC | | | | | |
| 742 | GAFIN | CIC Financial Services of Georgia, LLC | | | | | |
| 743 | GAFIN | CIC Financial Services of Georgia, LLC | | | | | |
| 744 | GAPWN | US Money Shops of Georgia, LLC | | | | | |
| 745 | HILBP | Loan By Phone of Hawaii, LLC | | | | | |
| 746 | IA | Check into Cash of Iowa, Inc. | | | | | |
| 747 | IA | Check into Cash of Iowa, Inc. | | | | | |
| 748 | IA | Check into Cash of Iowa, Inc. | | | | | |
| 749 | ID | Check into Cash of Idaho, LLC | | | | | |
| 750 | ID | Check into Cash of Idaho, LLC | | | | | |
| 751 | IDLBP | Loan By Phone of Idaho, LLC | | | | | |
| 752 | IL | Check into Cash of Illinois, LLC | | | | | |
| 753 | IL | Check into Cash of Illinois, LLC | | | | | |
| 754 | IL | Check into Cash of Illinois, LLC | | | | | |
| 755 | IL | Check into Cash of Illinois, LLC | | | | | |
| 756 | ILLBP | Loan By Phone of Illinois, LLC | | | | | |
| 757 | INC | Check into Cash, Inc. | | | | | |
| 758 | INC | Check into Cash, Inc. | | | | | |
| 759 | INC | Check into Cash, Inc. | | | | | |
| 760 | INC | Check into Cash, Inc. | | | | | |
| 761 | INC | Check into Cash, Inc. | | | | | |
| 762 | INC | Check into Cash, Inc. | | | | | |
| 763 | IND | Check into Cash of Indiana, LLC | | | | | |
| 764 | IND | Check into Cash of Indiana, LLC | | | | | |
| 765 | IND | Check into Cash of Indiana, LLC | | | | | |
| 766 | IND | Check into Cash of Indiana, LLC | | | | | |
| 767 | JMS | Jones Management Services, LLC | | | | | |
| 768 | KS | Check into Cash of Kansas, LLC | | | | | |
| 769 | KS | Check into Cash of Kansas, LLC | | | | | |
| 770 | KS | Check into Cash of Kansas, LLC | | | | | |
| 771 | KY | Check into Cash of Kentucky, LLC | | | | | |
| 772 | KY | Check into Cash of Kentucky, LLC | | | | | |
| 773 | LA | Check into Cash of Louisiana, Inc. | | | | | |
| 774 | LA | Check into Cash of Louisiana, Inc. | | | | | |
| 775 | LA | Check into Cash of Louisiana, Inc. | | | | | |
| 776 | LA-LBP | Check into Cash of Louisiana, Inc. | | | | | |
| 777 | LBP | Loan By Phone.com, LLC | | | | | |
| 778 | LBP | Loan By Phone.com, LLC | | | | | |
| 779 | LF | Lending Frog.com, LLC | | | | | |
| 780 | LF | Lending Frog.com, LLC | | | | | |
| 781 | LF | Lending Frog.com, LLC | | | | | |
| 782 | LFMO | Lending Frog of Missouri, LLC | | | | | |
| 783 | MELBP | Loan By Phone of Maine, LLC | | | | | |
| 784 | MI | Check into Cash of Michigan, LLC | | | | | |
| 785 | MI | Check into Cash of Michigan, LLC | | | | | |
| 786 | MI | Check into Cash of Michigan, LLC | | | | | |
| 787 | MICC | Creditcorp of Michigan, LLC | | | | | |
| 788 | MILBP | Loan By Phone of Michigan, LLC | | | | | |
| 789 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 790 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 791 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 792 | MO | Check into Cash of Missouri, Inc. | | | | | |
| 793 | MS | Check into Cash of Mississippi, Inc. | | | | | |
| 794 | MS | Check into Cash of Mississippi, Inc. | | | | | |
| 795 | MS | Check into Cash of Mississippi, Inc. | | | | | |
| 796 | MS | Check into Cash of Mississippi, Inc. | | | | | |
| 797 | NC | Check into Cash of North Carolina, Inc. | | | | | |
| 798 | NDLBP | Loan by Phone of North Dakota, LLC | | | | | |
| 799 | NE | Check into Cash of Nebraska, Inc. | | | | | |
| 800 | NE | Check into Cash of Nebraska, Inc. | | | | | |
| 801 | NH | Check into Cash of New Hampshire, LLC | | | | | |
| 802 | NM | Check into Cash of New Mexico, LLC | | | | | |
| 803 | NM | Check into Cash of New Mexico, LLC | | | | | |
| 804 | NMLBP | Loan By Phone of New Mexico, LLC | | | | | |
| 805 | NV | Check into Cash of Nevada, LLC | | | | | |
| 806 | NV | Check into Cash of Nevada, LLC | | | | | |
| 807 | NV | Check into Cash of Nevada, LLC | | | | | |
| 808 | OH | Check into Cash of Ohio, LLC | | | | | |
| 809 | OH | Check into Cash of Ohio, LLC | | | | | |
| 810 | OHCC | Creditcorp of Ohio, LLC | | | | | |
| 811 | OHCC | Creditcorp of Ohio, LLC | | | | | |
| 812 | OHCC | Creditcorp of Ohio, LLC | | | | | |
| 813 | OHLBP | Loan By Phone of Ohio, LLC | | | | | |
| 814 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 815 | OK | Check into Cash of Oklahoma, LLC | | | | | |
| 816 | OK-LBP | Check into Cash of Oklahoma, LLC | | | | | |
| 817 | ORLBP | Loan By Phone of Oregon, LLC | | | | | |
| 818 | PWN | US Money Shops, LLC | | | | | |
| 819 | SC | Check into Cash of South Carolina, Inc. | | | | | |
| 820 | SC | Check into Cash of South Carolina, Inc. | | | | | |

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 821 | SC | Check into Cash of South Carolina, Inc. | | | | | |
| 822 | SCPWN | US Money Shops of South Carolina, LLC | | | | | |
| 823 | SCPWN | US Money Shops of South Carolina, LLC | | | | | |
| 824 | SCPWN | US Money Shops of South Carolina, LLC | | | | | |
| 825 | SD | Check into Cash of South Dakota, LLC | | | | | |
| 826 | SD | Check into Cash of South Dakota, LLC | | | | | |
| 827 | SDLBP | Loan By Phone of South Dakota, LLC | | | | | |
| 828 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 829 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 830 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 831 | TN | Check into Cash of Tennessee, Inc. | | | | | |
| 832 | TNPWN | US Money Shops of Tennessee, LLC | | | | | |
| 833 | TX | Check into Cash of Texas, LLC | | | | | |
| 834 | TX | Check into Cash of Texas, LLC | | | | | |
| 835 | TXLBP | Loan By Phone of Texas, LLC | | | | | |
| 836 | UKCIC | Cheque Into Cash UK, LTD | | | | | |
| 837 | USD | US Debit Card Company | | | | | |
| 838 | UT | Check into Cash of Utah, Inc. | | | | | |
| 839 | UT | Check into Cash of Utah, Inc. | | | | | |
| 840 | UTLBP | Loan By Phone of Utah, LLC | | | | | |
| 841 | VA | Check into Cash of Virginia, LLC | | | | | |
| 842 | VA | Check into Cash of Virginia, LLC | | | | | |
| 843 | VACC | Creditcorp of Virginia, LLC | | | | | |
| 844 | VACC | Creditcorp of Virginia, LLC | | | | | |
| 845 | VAFIN | CIC Financial Services of Virginia LLC | | | | | |
| 846 | VALBP | Loan By Phone of Virginia, LLC | | | | | |
| 847 | WA | Check into Cash of Washington, Inc. | | | | | |
| 848 | WA | Check into Cash of Washington, Inc. | | | | | |
| 849 | WI | Check into Cash of Wisconsin, LLC | | | | | |
| 850 | WI | Check into Cash of Wisconsin, LLC | | | | | |
| 851 | WI | Check into Cash of Wisconsin, LLC | | | | | |
| 852 | WI | Check into Cash of Wisconsin, LLC | | | | | |
| 853 | WILBP | Loan By Phone of Wisconsin, LLC | | | | | |
| 854 | WY | Check into Cash of Wyoming, LLC | | | | | |
| 855 | WY | Check into Cash of Wyoming, LLC | | | | | |
| 856 | WY | Check into Cash of Wyoming, LLC | | | | | |
| 857 | KY | Check into Cash of Kentucky, LLC | | | | | |
| 858 | AKLBP | Loan By Phone of Alaska, LLC | | | | | MM Investment |
| 859 | AL | Check into Cash of Alabama, LLC | | | | | MM Investment |
| 860 | ALLBP | Loan By Phone of Alabama, LLC | | | | | MM Investment |
| 861 | CALBP | LBP of California, LLC | | | | | MM Investment |
| 862 | DELBP | Loan By Phone of Delaware, LLC | | | | | MM Investment |
| 863 | ID | Check into Cash of Idaho, LLC | | | | | MM Investment |
| 864 | IDLBP | Loan By Phone of Idaho, LLC | | | | | MM Investment |
| 865 | ILLBP | Loan By Phone of Illinois, LLC | | | | | MM Investment |
| 866 | MELBP | Loan By Phone of Maine, LLC | | | | | MM Investment |
| 867 | MILBP | Loan By Phone of Michigan, LLC | | | | | MM Investment |
| 868 | NDLBP | Loan by Phone of North Dakota, LLC | | | | | MM Investment |
| 869 | NMLBP | Loan By Phone of New Mexico, LLC | | | | | MM Investment |
| 870 | OHLBP | Loan By Phone of Ohio, LLC | | | | | MM Investment |
| 871 | TNPWN | US Money Shops of Tennessee, LLC | | | | | MM Investment |
| 872 | USD | US Debit Card Company | | | | | MM Investment |
| 873 | WILBP | Loan By Phone of Wisconsin, LLC | | | | | MM Investment |
| 874 | CRD | Creditcorp | | | | | MM Investment |
| 875 | TX | Check into Cash of Texas, LLC | | | | | MM Investment |
| 876 | TXLBP | Loan By Phone of Texas, LLC | | | | | MM Investment |
| 877 | VACC | Creditcorp of Virginia, LLC | | | | | MM Investment |

# EXHIBIT 85

# FILED UNDER SEAL

# EXHIBIT 86

# FILED UNDER SEAL

# EXHIBIT 87

# FILED UNDER SEAL

# EXHIBIT 88



Wells Fargo Bank N.A.
MSB Control Center
P.O. Box 15438
Sacramento, CA 95851-0438

October 13, 2015

NORTHSTATE CHECK X-CHANGE
1353 FEATHER RIVER BLVD
OROVILLE, CA 959654508

Subject: Action required – information needed for money services business
Reference #: [redacted]

Dear NORTHSTATE CHECK X-CHANGE:

On 09/16/15, Wells Fargo sent you a letter requesting information about your money services business. Today we are writing to let you know that, as of October 13, 2015, we have not received the requested information or the information provided was incomplete. These processes are important aspects of Wells Fargo's anti-money laundering program and help to ensure that account activity is consistent with operational and risk parameters established by the Bank. To comply with federal regulatory expectations and continue providing financial services for your money services business, we need you to send the information listed below.

**What you need to do**

To ensure you can continue banking with Wells Fargo, please send us the information below by **11/7/15**.

1. Completed and signed copy of the enclosed *Money Services Business Customer Information Form* (MSB002)
2. A current copy of your MSB Registration with Financial Crimes Enforcement Network (FinCEN).
3. A current copy of your state licenses and/or registration for each state in which you conduct money services business activity or a written explanation stating the reason(s) why you are not required to obtain a license and/or register.
4. Business Formation Documentation
5. Agent verification letters for all principals you are an agent of.
6. Company's Anti-Money Laundering (AML) Program covering the following areas:
   a. Written policies, procedures, and internal controls reasonably designed to assure compliance with BSA requirements
   b. Designation of an individual ensuring day-to-day compliance with program.
   c. Training of AML program and personnel responsibilities
   d. Independent review process to monitor and maintain adequate program.
7. Current Independent Review of your AML program.
8. Written plan to address deficiencies noted in the Independent Review (if applicable)

Together we'll go far

1

9. BSA/AML Transaction monitoring process.
10. OFAC policy and screening practices.

**Note:** We need to receive this information by 11/7/15. Please include the reference number on all correspondence and have it available when calling Money Services Business Control Center. You can **fax, email, or mail** your information to:

**Fax:** **1-866-748-3069**
**Email:** wandra.dixon@wellsfargo.com
**Mail:** Wells Fargo Bank, N.A.
MSB Control Center
MAC mail D1114-038
1525 West WT Harris Blvd
Charlotte, NC 28262

## What you need to know

- Your business has been assigned to me for review, and I will be contacting you to review requested items and help answer any questions you may have. I can be contacted at (704) 590-1857 and the email listed above. I am available Monday –Friday 7:30 a.m. – 4:00 p.m. Eastern Time.
- **Important**: If we have not received the requested information by 11/7/15, we will close your account and all related accounts and services associated with these accounts under the same legal name and Taxpayer Identification Number (TIN). Your deposit account(s) will be closed as of the close of business on **11/12/15 or therefore after.** Or, you can opt to close your account(s) before this date.
- Based on the information you send us, we may need to contact you again to obtain additional clarification or documentation such as OFAC policies and procedures, transaction monitoring practices, or other supporting documents. Wells Fargo may also conduct a site visit and a background investigation of your business and its principal owners.
- Please note: New and existing deposit accounts under the same legal name and Taxpayer Identification Number (TIN) that are used to conduct Money Services Business are subject to a $75.00 monthly service charge.
- **Please note:** Regardless of any information you provide to the bank, until you receive written notice from Wells Fargo advising you that we will *not* be closing your account(s), you should presume that your deposit account(s) will be closed on **11/12/15.**

#2

- If your account is closed, we will mail you a cashier's check for the amount in your account(s) within 10 business days of the date your account is closed.
- Note that checks drawn against your checking account(s) that are presented to the bank on or after the closure date will be returned unpaid.
- If you have any payments directly deposited to your account(s), these payments will no longer be accepted after your account(s) have been closed. You'll need to make other arrangements to receive these payments. Similarly, any payments you make to others that are automatically withdrawn from your checking account(s) will be discontinued after your account(s) have been closed. If you currently have automatic payments withdrawn from your account(s), you should also make other arrangements to ensure these payments continue to be made on time.

**If you have questions**

- If you have questions outside of my hours listed above about this letter or if you believe we have incorrectly identified you as a money services business, please contact our Money Services Business Control Center at 1-866-453-7610, Monday through Friday, 7:00 a.m. – 9:00 p.m. Eastern Time.
- For more information about requirements for money services businesses, please see the MSB website at FinCEN.gov.
- For questions about your compliance program, contact an experienced compliance professional or your primary regulator.

Thank you for choosing Wells Fargo. We appreciate your business.

Sincerely,

**Money Services Business Control Center**
Wells Fargo Bank, N.A.

13

# EXHIBIT 89



Check Cashing • Payday Loans • Western Union • Money Orders
PG&E Payment Center • Bill Pay

October 16, 2015

[REDACTED]
Money Service Business Control Center
Wells Fargo Bank
wandra.dixon@wellsfargo.com

Subject: Reference [REDACTED], Northstate Check Exchange

Dear [REDACTED]

We have been waiting for the arrival of the overnight envelope you are sending to us with the highlighted MSB002 form we had discussed, to date we have not received it. I know time is at the essence so my compliance officer and I reviewed everything you and I spoke about in regards to changes to the MSB002 form and added the other items you requested and will mail today. Corrections and requested items are as follows:

Updated Corrected MSB002 Form

1. Page 4, question 3, corrected.
2. Page 6, question c, corrected
3. Page 6, question 8, open loop checked
4. Page 7, question J, seller checked
5. Page 7, question K, Western union/Netspend selected
6. Page 9, question B, Western Union/100% selected
7. Page 9, question 12a, Yes selected
8. Page 10, question H, updated
9. Page 10, question I, updated

Requested items:

1. Copy of Signed Original Partnership Agreement with new partner Addendum
2. Current Western Union Agent Verification Letter with FinCEN MSB Registration Letter
3. Current Fictitious Business Name Document
4. Current Business License
5. Current Check Cashier License

Money Order Procedures are located in attachment F, pages 29-30, also attachment G, pages 22-23.

I am E-mailing this cover letter to you showing what will be added to the overnight package. I will be mailing today 10/16/15, since it is Friday you probably won't receive until Monday. Should there be anything else you need please don't hesitate to contact me anytime.

Again, thank you [REDACTED]

Glenn Bassett

Glenn Bassett, Managing Partner,
Northstate Check Exchange

2555 Bechelli Lane
Redding, CA 96002
(530) 223-1611 • Cell (530) 262-8430

**Supporting Documentation**

Prior to the approval of any MSB account, all of the documentation listed below must be provided, reviewed and approved.

1. Please provide a Business Customer Due Diligence form filled out in its entirety.
2. Please provide the Name, Title and resume of the AML (Title 31 Compliance) Officer including all relevant AML experience and training
3. Please provide a copy of the company's formation documents (Articles of Incorporation, Articles or Organization, etc.)
4. Please provide a copy of the company's Title 31 compliance policy
5. Please provide a copy of the company's Title 31 Compliance Procedures
6. If the company is an Agent for an MSB for funds Transfer, please provide a copy of the Agent Agreement.
7. Please provide a copy of the most recent audit of the Company's Title 31 AML Compliance program.
8. If the Company has been cited for violations of law pertaining to its Title 31 Compliance Program, please provide a detailed description of the violation(s) and the remediation steps taken to correct the violation.
9. Please provide a copy of the most recent Anti-Money Laundering (Title 31) Risk Assessment for the Company.
10. If the company uses an automated system to aggregate transactions for reporting and suspicious activity monitoring please provide screen shots of the system to evidence existence of the system.
11. If the company uses an automated system to aggregate transactions for reporting and suspicious activity monitoring, please provide the procedures on use of the system.
12. If the company employs third parties to carry out some of the AML (Title 31 Compliance) functions please provide a detailed explanation of the services rendered.
13. Please provide a copy of the company's most recent 2 years tax returns
14. Please provide most recent 3 Months of Account Analysis statements for all business accounts pertaining to this business, from your previous/current bank.

# FILED UNDER SEAL

# EXHIBIT 90

# FILED UNDER SEAL

# EXHIBIT 91

Anti-Money Laundering Compliance Policies & Procedures Manual

Northstate Check-X-Change
(Insert Company Name)

# ANTI-MONEY LAUNDERING POLICIES & PROCEDURES MANUAL

Northstate Check-X-Change
(Company Name)
2555 Bechelli Lane
(Address)
Redding, CA. 96002

223-1611
(Telephone)

"2011"
(Date of Adoption)

Member:

FiSCA

FINANCIAL SERVICE CENTERS OF AMERICA, INC.
A NATIONAL TRADE ASSOCIATION

(FiSCA/2015)

Protected NS000592

# TABLE OF CONTENTS

ADOPTION OF POLICIES AND PROCEDURES .......... 1

POLICY STATEMENT .......... 2

A. BSA/AML RISK ASSESSMENT .......... 3

B. APPOINTMENT OF COMPLIANCE OFFICER .......... 6

C. COMPANY EMPLOYEE TRAINING PROGRAM .......... 9

D. INDEPENDENT REVIEW PROCEDURES .......... 12

E. MSB REGISTRATION AND RENEWAL PROCEDURES .......... 16

F. COMPANY "KNOW YOUR CUSTOMER" (KYC) POLICIES & PROCEDURES .......... 18

G. CHECK CASHING PROCEDURES .......... 19

H. CURRENCY TRANSACTION REPORTS (CTRs) .......... 22

I. SUSPICIOUS ACTIVITY REPORTS (SARs) .......... 25

J. MONETARY INSTRUMENT SALES RECORDS .......... 29

K. FUNDS TRANSFER PROCEDURES .......... 31

L. PREPAID ACCESS REQUIREMENTS .......... 33

M. TRANSACTION MONITORING .......... 37

N. MAINTAINING RECORDS AND RESPONDING TO LAW ENFORCEMENT REQUESTS .......... 41

O. CUSTOMER PRIVACY POLICIES .......... 43

P. OFFICE OF FOREIGN ASSETS CONTROL (OFAC) .......... 46

CONCLUSION .......... 49

GLOSSARY OF KEY TERMS AND DEFINITIONS .......... 50

EMPLOYEE ACKNOWLEDGEMENT OF RECEIPT .......... 53

## ADOPTION OF POLICIES AND PROCEDURES

NORTHSTATE Check-x-Change
(Name of Company)

**It is hereby certified that the Company, having duly reviewed its internal operations and controls, and having conducted a risk assessment of the Company's products, services, customer base and geographic areas served, formally adopts the anti-money laundering policies and procedures as set forth in this Compliance Policies and Procedures Manual.**

[signature]
(Signature)

MANAGING PARTNER
(Title)

5-22-2015
(Date)

## POLICY STATEMENT

It is the express policy of the Company to comply with all applicable anti-money laundering laws and regulations, including, but not limited to, the Bank Secrecy Act (BSA) as amended, and the USA PATRIOT Act of 2001, in addition to applicable state laws and regulations.

Criminals are known to exploit MSBs and other financial institutions by using them to "launder" money derived from criminal activity. Money laundering conceals the source or ownership of criminal profits so that the funds can be used without detection or interference by law enforcement.

Money laundering causes incalculable harm to the public as a whole and undermines confidence in the financial services industry. The war against money laundering and financial crime is a never-ending, evolving process that requires the commitment of all U.S. financial institutions. The Company is fully committed to this effort. It is the policy of the Company to maintain an effective Bank Secrecy Act/Anti-Money Laundering (BSA/AML) compliance program.

It is the Company's policy that no customer relationship is worth compromising our integrity and commitment to combating money laundering, terrorist financing and other financial criminal activity. The Company is committed to the highest of standards of BSA/AML compliance and we require that management, tellers and other personnel likewise adhere to these standards in preventing our services and products from being used to facilitate money laundering, terrorist financing and other financial criminal activity.

## A. BSA/AML RISK ASSESSMENT

In accordance with FinCEN guidelines, it is the Company's policy to ensure that a risk assessment is conducted at the inception of the BSA/AML program, and periodically thereafter based on the Company's adoption of any new financial services or products, or substantial changes to our operations, systems or geographic areas served.

FinCEN guidelines for the industry stress that all MSBs must develop an AML program that is commensurate with the risks posed by the size of the MSB and its unique combination of products, services, customers and geographic location. Once identified, MSBs must take reasonable steps to manage them. Each MSB should focus resources on the areas of its business that management believes pose the greatest risk.

The risk assessment process enables Company Management to better identify and mitigate gaps in BSA/AML controls.

In accordance with this guidance from FinCEN, it is the Company's policy to ensure that a risk assessment is conducted at the inception of the BSA/AML program, and periodically thereafter based on the Company's adoption of any new financial services or products, or substantial changes to our operations, systems or areas served.

Risk assessment can be documented by completion of the FiSCA Risk Assessment Matrix. This document is available through FiSCA. The Company may also utilize other appropriate means to perform and document risk assessment.

### Risk Categories

The Company's risk categories include, but are not necessarily limited to, product risk, customer risk, geographic risk, and operational risk. The risk categories identified below are not exhaustive. They do, however, provide examples of risk categories considered by the Company in conducting our risk assessment.

1. *Product Risk*. Offering certain products and services such as those that offer customers more anonymity or involve handling of high dollar volumes of currency, may pose greater risk of money laundering or terrorist financing to the Company. For example, sales of money

orders, prepaid card services and money transfer services may potentially be vulnerable to structuring (the breaking up of transactions into multiple transactions to avoid filing of CTRs or recordkeeping). As such, these potential risks shall be considered as part of our risk assessment.

2. *Customer Risk*. Although any customer could conceivably be engaged in money laundering or terrorist financing, certain types of customers may pose a heightened risk because of the nature of their business, occupation, or anticipated transaction activity. In assessing customer risk, the Company will consider variables such as the type of financial services sought and the geographic locations involved in the transactions. Potential questions that the Company should consider when assessing their customer risk may include:

   - What is the typical customer profile and what is atypical?
   - What do they use the service or product for?
   - How do they pay for the service or product?
   - What is an average transaction and what is atypical?
   - How frequently does the customer purchase the service or product?
   - What is the typical daily or monthly volume?

3. *Geographic Risk*. The Company should also consider its geographic location as part of its overall risk assessment. Management should understand and evaluate the specific risks associated with doing business in, processing transactions for customers from, or facilitating transactions involving certain geographic locations.

   High-risk geographic locations can either be international or domestic.

   Domestic high-risk locations may include U.S. Government-designated High Intensity Drug Trafficking Areas (HIDTAs) and High Intensity Financial Crime Areas (HIFCAs).

   International high-risk locations generally include countries, jurisdictions and governments subject to OFAC sanctions, including state sponsors of terrorism, countries identified as being "of primary money laundering concern" by the U.S. Treasury Department, and

major money laundering countries as identified by the U.S. State Department.

4. *Operational Risk*. Operational risk is the risk that an MSB will fail to detect or prevent money laundering or terrorist financing as a result of inadequate internal processes or systems, or as a result of human failure. As such, the Company's evaluation of operational risk should include:

- The Company's systems used to process transactions, including cash controls and transaction limitations.
- The frequency of employee turnover.
- The Company's recordkeeping system.
- The internal reporting systems, including the method by which qualifying transactions (CTR, SAR) are detected and reported.
- The Company's business and management structure, and lines of reporting.
- The involvement of senior management in BSA/AML matters.

Management should consider the staffing resources and the level of training necessary to promote adherence with the Company's policies, procedures and processes. To the extent that heightened risks are revealed, Management should address this in the risk assessment and respond by providing a more robust program that specifically monitors and controls the higher risks identified.

Management may also utilize outside guidance materials, including the FiSCA Risk Assessment Matrix (available on the Members section of the FiSCA website at fisca.org), in helping to assess risks.

## B. APPOINTMENT OF COMPLIANCE OFFICER

The Company has created the position of Compliance Officer as described herein, and has appointed the following individual to serve in such position on a daily basis, until otherwise removed or terminated:

Christina Pritchett
(Name)

Compliance Manager
(Title)

Sept. 12, 2012
(Date of Appointment)

### Compliance Officer Qualifications and Experience

Management shall ensure that the individual appointed to serve as the Company's Compliance Officer has sufficient training and experience to effectively serve in this capacity and oversee the operations of the Anti-Money Laundering (AML) Program.

### Compliance Officer Duties and Responsibilities

The Compliance Officer shall maintain and assure on a day-to-day basis effective and proper functioning of the Company's AML Program. The duties and responsibilities of this position will include:

1. Ensuring that the Company files reports and retains records in accordance with the BSA. This includes ensuring that the Company is properly enrolled with FinCEN's E-Filing system for the electronic filing of CTRs, SARs, MSB registration, and other required forms.

2. Ensuring that the Company maintains Money Services Business (MSB) registration with FinCEN, and that registration is renewed every 2 years.

3. Ensuring that the Company's compliance program is updated as necessary to reflect current requirements of the BSA.

4. Ensuring that the Company maintains an effective, ongoing employee training program, including training on identification and reporting of suspicious activities.

5. Establishing and enforcing customer identification (KYC) policies and procedures.

6. Establishing and enforcing transaction recordkeeping policies and procedures, including check cashing, money order sales, funds transfers, prepaid card services and other qualifying transactions.

7. Establishing and enforcing procedures to ensure that currency transactions exceeding $10,000 are identified, and CTRs on behalf of the Company are accurate and filed in a timely manner.

8. Establishing and enforcing procedures to ensure that suspicious transactions are identified, properly investigated, and, where appropriate, reported on behalf of the Company.

9. Ensuring that all SARs on behalf of the Company are accurate and filed in a timely manner.

10. Ensuring that the Company's compliance program is the subject of periodic independent examinations.

11. Ensuring that recommendations and deficiencies noted in independent examinations are reported to Management and properly addressed.

12. Ensuring compliance with all government subpoenas, summons, or other government requests relating to BSA reports and records.

13. Coordinating compliance with IRS and state examinations, including producing records for review by examiners.

14. Ensuring that recommendations and deficiencies noted in federal or state examinations are reported to Management and properly addressed.

Anti-Money Laundering Compliance Policies & Procedures Manual

## ADDITIONAL COMPLIANCE OFFICER FUNCTIONS

The Company has implemented the following additional Compliance Officer functions and/or procedures:

8

Protected NS000601

## C. COMPANY EMPLOYEE TRAINING PROGRAM

The Company has implemented the following internal training program for all existing and new employees. Administration of the training program shall be the duty of the Company Compliance Officer, who is primarily responsible for employee training. Specific training functions may be delegated by the Compliance Officer to appropriate personnel.

The program includes the following components:

1. Mandatory attendance by all existing and new employees at an initial, comprehensive AML training session.

2. Mandatory attendance by all existing and new employees at periodic and as-needed training sessions.

> **Note:** FiSCA makes various training materials and Internet-based courses available, including the following courses offered by FiSCA/OTT (www.fisca.org):
> - ***MSB/FiSCA Compliance for Tellers***
> - ***MSB/FiSCA Mandatory Compliance Programs: for Management and Compliance Officers***

3. Mandatory reading by all existing and new employees of ***The FiSCA Employee Training Manual (2015)***.

4. Mandatory completion of a ***FiSCA Anti-Money Laundering Compliance Examination*** or other acceptable testing program, with a score sufficient to demonstrate an understanding of the applicable AML requirements.

5. Review of such training materials and publications from the Company's Money Transmitter, as designated by the Compliance Officer and/or Management.

6. Attendance at such additional training seminars, workshops, etc., as required by the Compliance Officer and/or Management.

  
Employees must receive training on the following topics:

- customer ID and verification procedures
- suspicious activities identification and reporting (SARs)
- structured transactions
- currency transaction reporting (CTRs) and reporting thresholds
- check cashing procedures
- wire transfer reporting requirements
- money order sales recording requirements
- prepaid access customer verification and reporting requirements
- confidentiality of customer information
- teller procedures and cash controls
- such other topics as designated by the Compliance Officer and/or Management.

Management and the Compliance Officer may modify and update the requirements of the program as may be necessary based on BSA regulatory changes and/or changes in the Company's risk profile, such as modification in the products and services provided by the Company.

## ADDITIONAL EMPLOYEE TRAINING PROCEDURES

The Company has implemented the following additional employee training procedures:

The additional Employee training is as followed:

- We do a AML Training though Checkfree pay & we get a certification of completion.
- We Alsodo our FISCA Examination #1 & #2 for another tool of training.
- We also do a AML Compliance programe though WESTERN UNION

Every new Hire goes through All this training before working the frontLine.

All Emplayee Always recieve on-going training, thaughout the year.

## D. INDEPENDENT REVIEW PROCEDURES

The Bank Secrecy Act requires that the Company's AML program must be the subject of a periodic independent review to ensure that the program is properly monitored and maintained. The scope and frequency of the review must be commensurate with the risk of the financial services provided by the Company, and the geographic area served.

The independent examination should be conducted in accordance with guidelines set forth in the FinCEN ***MSB Examination Manual*** published in December 2008 (available at www.fincen.gov), and in accordance with any further guidance materials as set forth by FinCEN, IRS and other applicable regulatory authorities.

### Examination Personnel

The independent review function may be performed by a properly trained management-level employee within the Company, as long as the reviewer is not the Company's designated Compliance Officer, and is not otherwise responsible for regular administration or maintenance of the compliance program.

Alternatively, the review function may be performed by a properly qualified professional, accounting firm or other outside consultant.

The Company has appointed the following individual to serve as the Independent Examiner, until otherwise removed or terminated:

Donald R Hardesty III
(Name)

(Title)

May 29, 2015
(Date of Appointment)

## Examination Areas

The independent review function should include, but is not limited to, a review of the following items:

1. That the Company maintains an appropriate overall AML program, developed on a risk-assessed basis, which effectively helps prevent the Company from being vulnerable to money laundering and financial crime.

2. That the Company maintains appropriate written policies and procedures for compliance with the BSA.

3. That the Compliance Officer is properly administering and monitoring the compliance program.

4. That the Company maintains an ongoing employee training program, including training in the identification of suspicious transactions.

5. That the Company maintains appropriate internal controls to help prevent it from being used to launder money or facilitate other financial criminal activity.

6. That CTRs filed on behalf of the Company are accurate and filed in a timely manner.

7. That suspicious activities are properly investigated, and that any resulting SARs filed on behalf of the Company are accurate and filed in a timely manner.

8. That qualifying monetary instrument (money order) sales are properly recorded.

9. That the Company, in its capacity as a funds transfer agent, adheres to all applicable verification and recordkeeping requirements established by the Company's money transfer company.

10. That the Company follows adequate customer verification procedures and recordkeeping, as required by federal law.

11. Other such items, including sufficient transaction analysis, as determined to be appropriate by the examiner.

Frequency of the periodic examination shall be determined based on an assessment of the risks to the Company and exposure to potential money laundering and financial criminal activity.

**Examination Findings**

The reviewer's findings, including any BSA violations, deficiencies or recommendations concerning the Compliance Program should be reported in a timely manner to Management and the Compliance Officer.

Any BSA violations or deficiencies are to be remedied immediately by Management and the Compliance Officer.

The review report shall become part of the Compliance record of the Company, and shall be maintained for a period of not less than five (5) years.

The review process can be documented by completion of the FiSCA Independent Review Checklist (available on the Members section of the FiSCA website at fisca.org). The Company may also utilize other appropriate means of documenting the review process.

Anti-Money Laundering Compliance Policies & Procedures Manual

## ADDITIONAL INDEPENDENT REVIEW PROCEDURES

The Company has implemented the following additional independent review procedures:

15

Protected

NS000608